No. 25-2516

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

**MOHAMMED HOQUE,**

*Petitioner – Appellee,*

**v.**

**DONALD J. TRUMP, *et al.*,**

*Respondents – Appellants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
District Court Case No. 25-cv-1576-JWB-DTS**

**APPELLANTS' MOTION FOR VACATUR AND DISMISSAL
UNDER *UNITED STATES V. MUNSINGWEAR*, 340 U.S. 36 (1950), AND
MOTION TO STAY BRIEFING SCHEDULE**

**BRETT A. SHUMATE**
**Assistant Attorney General**
**Civil Division**

**YAAKOV M. ROTH**
**Principal Deputy Assistant
Attorney General**

**DREW C. ENSIGN**
**Deputy Assistant Attorney General**
**Office of Immigration Litigation**

**MELISSA NEIMAN-KELTING**
**Assistant Director**

**CRAIG A. NEWELL, JR.**
**Senior Litigation Counsel**

**ZACHARY A. CARDIN**
**Trial Attorney**
**Office of Immigration Litigation**
**Civil Division**
**U.S. Department of Justice**

## INTRODUCTION

Appellants, through undersigned counsel, respectfully move this Court to vacate the underlying district court order and dismiss the case as moot under *United States v. Munsingwear*, 340 U.S. 36 (1950). Appellants also respectfully request that the Court stay the briefing schedule pending the resolution of this motion.

In this appeal, Appellants are challenging the district court's June 17, 2025 order, which granted the petition for a writ of habeas corpus filed by Petitioner - Appellee Mohammed Hoque ("Hoque") and ordered his release from detention subject to the conditions previously imposed by the Immigration Judge, including the $7,500 bond. *See Mohammed H. v. Trump*, 786 F. Supp. 3d 1149 (D. Minn. 2025) (attached as Exhibit A). During the pendency of this appeal, the Board of Immigration Appeals ("Board") affirmed on the merits the Immigration Judge's order granting Hoque's release from custody on $7,500 bond. *See* Exhibit B (Board's Aug. 27, 2025 order).

Because of this intervening circumstance, there is no longer any dispute over whether Hoque may be detained during his pending removal proceedings; the Board's decision precludes the Department of Homeland Security ("DHS") from re-detaining Hoque while those proceedings remain pending, regardless of the outcome of this appeal. Therefore, Hoque's habeas action has become moot

2

pending appeal through happenstance and no fault of the Government, and it is in the public interest to vacate the district court's order. *See Munsingwear*, 340 U.S. at 39-40; *Panera, LLC v. Dobson*, 999 F.3d 1154, 1158 (8th Cir. 2020). The Court should grant Appellants' motion for vacatur and dismissal under *Munsingwear*.

On December 5, 2025, Hoque's counsel of record, Anu Sreekanth, Esq., informed undersigned counsel that Appellee opposes this motion. If the Court denies the motion, Appellants respectfully request that the briefing schedule be reset to allow 30 days from the date of the Court's order for Appellants to file the opening brief.

## BACKGROUND

Hoque is a native and citizen of Bangladesh, who was first admitted to the United States on August 12, 2021, on a non-immigrant student visa. ECF No. 20-1 at 1-2; ECF No. 20-5 at 1.[1] His most recent admission into the United States as a non-immigrant student visitor was on August 12, 2023, following a trip abroad to his native Bangladesh. ECF No. 1 at 20; No. 20 at 2.

On August 23, 2023, Hoque was convicted pursuant to his guilty plea to the offense of disorderly conduct under Minn. Stat. § 609.72.1, and he was sentenced to 90 days in county jail, stayed for one year. ECF No. 20-2. His other charged

---

[1] Citations to the electronic case files ("ECF") refer to the district court docket in the underlying action.

3

offense of assault in the fifth degree under Minn. Stat. § 609.224.1 was dismissed as part of his guilty plea. ECF No. 20-2 at 1.

On March 23, 2025, the Department of State, exercising its discretionary authority under 8 U.S.C. § 1201(i), revoked Hoque's student visa based upon information provided by DHS regarding the above-mentioned criminal charges and its assessment that Hoque posed a threat to U.S. public safety. ECF No. 20-3 at 2. Because of this revocation, Hoque is subject to removal from the United States under 8 U.S.C. § 1227(a)(1)(B), as an alien "whose nonimmigrant visa . . . has been revoked under section 1201(i)." 8 U.S.C. § 1227(a)(1)(B). ECF No. 20-6.

On March 28, 2025, DHS arrested Hoque for the purpose of taking him into custody for removal proceedings, and DHS accordingly placed him in detention at Freeborn County Jail in Albert Lea, Minnesota,. ECF No. 20 at 2-3; ECF No. 20-1 at 2-3; ECF. No. 20-4. That same day, DHS served Hoque with a Notice to Appear in removal proceedings, and DHS commenced removal proceedings by filing the Notice to Appear in the immigration court in Fort Snelling, Minnesota. ECF No. 20-5. Hoque's removal proceedings before the Immigration Judge remain pending.

On April 9, 2025, after holding a hearing on Hoque's request for bond, the Immigration Judge issued a bond redetermination decision. ECF No. 21-2 at 4-9; *see* 8 C.F.R. § 1003.19 (regulation governing custody and bond redeterminations).

4

The Immigration Judge determined that Hoque was not a danger to persons or property, but did present a flight risk, and thus ordered his release from custody on $7,500 bond. ECF No. 21-2 at 4-9, 34-35. One day later, however, DHS filed an administrative appeal of the immigration judge's order with the Board, and it also filed the required notice to invoke the authority in 8 C.F.R. § 1003.19(i)(2), which had the effect of automatically staying the immigration judge's order granting release on bond. ECF No. 21-2 at 13-26.

On April 18, 2025, Hoque filed his habeas petition with the district court. ECF No. 1. He alleged a First Amendment retaliation claim, a violation of his Fifth Amendment right to due process, a violation of the Administrative Procedures Act ("APA") based on the termination of his Student And Exchange Visitor Information System ("SEVIS") record, and a request for the district court to exercise its alleged inherent and equitable authority to authorize his release from immigration custody. ECF No. 1 at 27-31.

On April 21, 2025, the district court granted Hoque's motion for a temporary restraining order. ECF. No. 15. On May 5, 2025, the district court issued an order granting Hoque's request for temporary release pending adjudication. ECF No. 29; *see Mohammed H. v. Trump*, 781 F. Supp. 3d 886 (D. Minn. 2025). One day later, Hoque posted the $7,500 bond and DHS released him from custody. ECF No. 32 at 2.

5

On June 17, 2025, the district court granted Hoque's habeas petition and ordered that he shall remain released from custody subject to the conditions previously imposed by the Immigration Judge, including the $7,500 bond. *See* Ex. A; ECF No. 36. On June 18, 2025, the district court entered its final judgment in the case. ECF No. 37. This timely appeal followed. ECF No. 38; *see* 28 U.S.C. § 1291; Fed. R. App. P. 4(a)(1)(B).

On August 27, 2025, during the pendency of this appeal, the Board issued a final order for Hoque's bond proceedings in which it dismissed DHS's appeal and affirmed on the merits the immigration judge's order granting release from custody on $7,500 bond. *See* Ex. B.

## ARGUMENT

This Court should vacate the underlying district court's order and dismiss Hoque's habeas case as moot under *Munsingwear*. "'Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies.'" *Missouri v. Craig*, 163 F.3d 482, 484 (8th Cir. 1998) (quoting *Lewis v. Continental Bank. Corp.*, 494 U.S. 472, 477 (1990)). "A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc*, 568 U.S. 85, 90-91, 13 (2013) (internal quotation marks and citation omitted). An "actual controversy" must

6

exist throughout "*all stages*" of the litigation; if not, the case has become moot, and the Court must dismiss it for lack of jurisdiction.  *Id.* (emphasis added); *see Craig*, 163 F.3d at 484 ("'It is of no consequence that the controversy was live at earlier stages in this case; it must be live when we decide the issues.'") (quoting *South Dakota v. Hazen*, 914 F.2d 147, 150 (8th Cir. 1990)).  To do otherwise, would amount to "issu[ing] an advisory opinion." *Perficient, Inc. v. Munley*, 973 F.3d 914, 916 (8th Cir. 2020); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'") (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)).

When a case becomes moot "through happenstance" before this Court issues a decision on appeal, the Court will generally vacate the district court's judgment below and remand with directions to dismiss the case. *Munsingwear*, 340 U.S. at 39-40; *see Panera*, 999 F.3d at 1158 ("In similar cases of mootness, both our precedent and that of the Supreme Court typically favor vacating the lower court's judgment.").  While "vacatur is an equitable remedy, not an automatic right," granting vacatur is this Court's "normal practice" because "doing so 'clears the path for future litigation' by eliminating a judgment the loser was stopped from opposing on direct review." *Moore v. Thurston*, 928 F.3d 753, 758 (8th Cir. 2019)

(quoting *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 71 (1997), which in turn was quoting *Munsingwear*, 340 U.S. at 40); *see Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 22 (2023) (stating that the Supreme Court's "*Munsingwear* practice is well settled," and declining an "invitation to reconsider it"); *Panera*, 999 F.3d at 158 ("Doing so enables the parties to litigate their issues on a clean slate.").

Vacatur of the lower court judgment is appropriate if the case was rendered moot through no fault of the party seeking relief from the judgment below and if vacatur serves the public interest. *See Panera*, 999 F.3d at 1158; *Moore*, 928 F.3d at 758. "The consideration of fault concerns 'whether the party seeking relief from the judgment below caused the mootness by voluntary action.'" *Panera*, 999 F.3d at 1158 (quoting *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (2021)). Voluntary action occurs when the losing party declines to pursue its appeal, enters a settlement that moots the case, or takes some other action that "closely resembles settlement." *Panera*, 999 F.3d at 1158 (citing *Alvarez v. Smith*, 558 U.S. 87, 93-96 (2009); *Bancorp*, 513 U.S. at 25). "By contrast, '[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstances, ought not in fairness by forced to acquiesce in the judgment.'" *Panera*, 999 F.3d at 1158 (quoting *Bancorp*, 513 U.S. at 25).

8

Here, vacatur is appropriate because Hoque's habeas case has become moot because of the happenstance occurrence of the Board's decision affirming the Immigration Judge's bond redetermination on the merits. *See Munsingwear*, 340 U.S. at 39-40; *Panera*, 999 F.3d at 1158. Hoque's habeas petition challenged, primarily on constitutional grounds, the lawfulness of his detention for purposes of his removal proceedings. *See* ECF. No. 1; *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody."); 8 U.S.C. § 1226(a) (statutory authority to arrest and detain "pending a decision on whether the alien is to be removed from the United States"). The Board's affirmance of the Immigration Judge's grant of release on bond for his removal proceedings, *see* Ex. B, however, ended any actual controversy over whether Hoque may be detained for the remaining pendency of those proceedings, *see Already, LLC*, 568 U.S. at 90-91 (explaining that an actual controversy must exist "through all stages of the litigation"). Indeed, the Board provided Hoque with essentially the same relief from custody that he obtained from the district court, and its intervening order precludes DHS from re-detaining Hoque for the remainder of his removal proceedings, just like the district court's order does. *See Riley v. INS*, 310 F.3d 1253, 1256-57 (10th Cir. 2002) (holding that INS's release of petitioner "from detention moots his challenge to the legality of his extended detention," where petitioner requested "immediate release from

9

custody under adequate and reasonable supervision"); *Simpson v. Camper*, 974 F.2d 1030, 1031 (8th Cir. 1992) (concluding that habeas petition was moot because of intervening state court decision "granting petitioner essentially the same relief that she had obtained in the District Court below," and vacating the district court's decision).

Therefore, the Board's intervening decision renders it "impossible" for this Court to grant "any effectual relief whatever" to the Government if it were to prevail on appeal, and Hoque's habeas action and this appeal are consequently moot. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992); *see, e.g.*, *Riley*, 310 F.3d at 1256-57; *Camper*, 974 F.2d at 1031.  Any change in circumstances that would potentially permit DHS to detain Hoque sometime in the future does not obviate the mootness of this present case.  Such future developments are speculative at this moment, and any future decision by DHS to detain Hoque would require a different factual and statutory predicate for detention, consequently raising different controversies than the ones that were at issue before the district court. *See, e.g.*, 8 U.S.C. § 1226(c) (mandatory detention for certain criminal aliens); 8 U.S.C. § 1231(a) (detention authority for aliens with final orders of removal); *Rodney v. Mukasey*, 340 F. App'x 761, 764 (3d Cir. 2009) (concluding that habeas petition challenging detention under 8 U.S.C. § 1226(c) was moot, where petitioner was "no longer in custody pursuant to this statute" and

10

any challenge to his post-removal order detention under 8 U.S.C. § 1231(a) "would be premature and unfounded"); *cf. Banyee v. Bondi*, 115 F.4th 928 (8th Cir. 2024), *reh'g denied,* 131 F.4th 823 (8th Cir. 2025) (panel denied petitioner's motion to vacate based on mootness in an unpublished order where, unlike here, petitioner remained in custody and the intervening event of his final removal order occurred after the panel issued its decision).

Furthermore, the Board's decision constitutes an event of "happenstance" rendering the case moot through no fault of the Government. *Munsingwear*, 340 U.S. at 39-40; *see Panera*, 999 F.3d at 1158-59. The Board's decision does not amount to unilateral voluntary action by the Government that "essentially arranges an appeal's dismissal by settlement," *Panera*, 999 F.3d at 1158, nor was it intended as a basis "to employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment [that] would—quite apart from any considerations of fairness to the parties—disturb the orderly operation of the federal judicial system," *Bancorp*, 513 U.S. at 27. Instead, the Board's decision simply "resulted from the typical progression of events" for bond proceedings as established by regulation and agency precedent. *Hassoun v. Searls*, 976 F.3d 121, 131 (2d Cir. 2020) (internal quotation marks and citations omitted); *see Alvarez*, 558 U.S. at 87-88 (ordering vacatur where "Plaintiffs' [state court] forfeiture cases took place with no procedural link to the case before this Court," and where those

11

state court cases were "apparently terminated on substantive grounds in their ordinary course"); *see also* 8 C.F.R. § 1003.19 (regulation governing custody and bond redeterminations); *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 804-05 (BIA 2020) (describing bond proceedings and delineating factors for determining whether alien's release on bond is merited during removal proceedings).

The Board is an impartial administrative appellate body that exercises delegated authority from the Attorney General. *See* 8 U.S.C. § 1103(g)(2); 8 C.F.R. § 1003.1(a)(1), (d)(1); *see also Liadov v. Mukasey*, 518 F.3d 1003, 1008 (8th Cir. 2008) ("[T]he BIA's jurisdiction is defined by the powers delegated to it by the Attorney General, who has broad power to establish regulations governing immigration proceedings.") (internal quotation marks and citations omitted). DHS vigorously pursued an appeal of the Immigration Judge's bond redetermination before the Board. *See* ECF No. 21-2 at 13-26. And the Board carried out its delegated duties as an impartial agency adjudicator when it dismissed that appeal, resolving the issue of release on bond in Hoque's favor based on the particular facts and applicable law in his case. *See* Ex. B. Given these circumstances, the Board's decision constitutes a "happenstance" event that mooted Hoque's habeas case through no fault of the Government, and this Court should follow the established practice of vacating the district court's order under *Munsingwear*. *See Acheson Hotels*, 601 U.S. at 22; *Alvarez*, 558 U.S. at 87-88; *Munsingwear*, 340

12

U.S. at 39-40; *Panera*, 999 F.3d at 1158-59; *see also Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005) (vacating under *Munsingwear* the district court's judgment in a habeas case where Court found case to be moot); *Camper*, 974 F.2d at 1031 (vacating under *Munsingwear* the district court's judgment in a habeas case where Court found case to be moot).

The public interest also weighs in favor of a vacatur. *See Panera*, 999 F.3d at 1158; *Moore*, 928 F.3d at 758. The "vagaries of circumstances" have now frustrated the Government's efforts to obtain appellate review of the district court's adverse ruling, and "fairness" counsels that the Government should not "be forced to acquiesce in [that] judgment." *Bancorp*, 513 U.S. at 25. Vacating the district court's order "enables the parties to litigate their issues on a clean slate" in other cases. *Panera*, 999 F.3d at 1158.

For these reasons, this Court should vacate the district court's order and remand the case to the district court with directions to dismiss the action as moot. *See Munsingwear*, 340 U.S. at 39-40; *Panera*, 999 F.3d at 1158-59; *Ali*, 419 F.3d at 724; *Camper*, 974 F.2d at 1031. In the alternative, if the Court disagrees with Appellants' mootness argument and denies this motion, Appellants respectfully request 30 days from the date of the entry of the Court's order to file the opening brief.

## CONCLUSION

For the foregoing reasons, the Court should grant Appellants' motion, vacate the district court's decision, and remand the case directing the district court to dismiss the case. In the alternative, the Court should grant Appellants 30 days to file the opening brief if it denies this motion.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General
Office of Immigration Litigation

MELISSA NEIMAN-KELTING
Assistant Director

/s/ Craig A. Newell, Jr.
CRAIG A. NEWELL, JR.
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 514-0298
Craig.Newell@usdoj.gov

ZACHARY A. CARDIN
Trial Attorney

Date: December 8, 2025          Attorneys for Appellants

14

# EXHIBIT A

786 F.Supp.3d 1149
United States District Court, D. Minnesota.

MOHAMMED H., Petitioner,

v.

Donald J. TRUMP, in his official capacity as President of
the United States; Pamela Bondi, in her official capacity
as Attorney General of the United States; Peter Berg, in
his official capacity as Saint Paul Field Office Director,
United States Immigration and Customs Enforcement;
Jamie Holt, in her official capacity as St. Paul Agent
in Charge for Homeland Security Investigations for
U.S. Immigration and Customs Enforcement; Todd
Lyons, in his official capacity as Acting Director,
United States Immigration and Customs Enforcement;
Kristi Noem, in her official capacity as Secretary of
the United States Department of Homeland Security;
Marco Rubio, in his official capacity as Secretary of
State; Ryan Shea, in his official capacity as Freeborn
County Sheriff; and Mike Stasko, in his official capacity
as Freeborn County Jail Administrator, Respondents.

Civ. No. 25-1576 (JWB/DTS)
|
Signed June 17, 2025

**Synopsis**

**Background:** Noncitizen, a national of Bangladesh enrolled
in college in the United States, brought petition for
habeas corpus against President, various federal officials,
county sheriff, and county jail administrator, alleging
that noncitizen's detention in Immigration and Customs
Enforcement (ICE) custody in county jail violated the First
and Fifth Amendments and the Administrative Procedure
Act (APA) because he was being unlawfully targeted for
deportation in retaliation for having spoken out against
violence in Gaza and having expressed support for Palestinian
human rights on social media. The District Court, Jerry
W. Blackwell, J., 2025 WL 1170448, granted a temporary
restraining order (TRO) barring noncitizen's removal from the
United States, 2025 WL 1334847, ordered that noncitizen be
released on bail, and, 2025 WL 1336390, extended the TRO.

**Holdings:** The District Court, Jerry W. Blackwell, J., held
that:

federal law did not preclude exercising habeas jurisdiction;

noncitizen's pro-Palestinian speech was speech on a matter of
public concern and was protected under the First Amendment;

noncitizen's detention in ICE custody was action that
prevented speech and would reasonably chill an ordinary
person from continuing to speak;

noncitizen showed a causal connection between his detention
and the government's motive of retaliating against him for
protected speech, in violation of the First Amendment;

noncitizen's Fifth Amendment right to due process was
violated by his detention because it was not based on
legitimate immigration-detention purposes;

noncitizen's Fifth Amendment right to due process was
violated by government's invocation of automatic-stay
provision of immigration regulations to keep noncitizen in
custody despite an immigration judge's (IJ) order that he be
released on bond; and

government violated APA when it terminated noncitizen's
record in the Student and Exchange Visitor Information
System (SEVIS) database.

Petition granted.

**Procedural Posture(s):** Petition for Writ of Habeas Corpus.

**Attorneys and Law Firms**

Amanda M. Mills, Esq., Anupama D. Sreekanth, Esq., Joseph
T. Dixon, III, Esq., and Rachel Dougherty, Esq., Fredrikson
& Byron, P.A.; Benjamin Casper, Esq., and Teresa J. Nelson,
Esq., American Civil Liberties Union of Minnesota; Hanne
Margit Sandison, Esq., The Advocates for Human Rights; and
Linus Chan, Esq., University of Minnesota Detainee Rights
Clinic, counsel for Petitioner.

Ana H. Voss, Esq., United States Attorney's Office, counsel
for Respondents Donald J. Trump, Pamela Bondi, Peter Berg,
Jamie Holt, Todd Lyons, Kristi Noem, and Marco Rubio.

David John Walker, Esq., Freeborn County Attorney's Office,
counsel for Respondent Ryan Shea.

Appellate Case: 25-2516     Page: 16     Date Filed: 12/08/2025 Entry ID: 5585711

### ORDER ON PETITION FOR
### WRIT OF HABEAS CORPUS

JERRY W. BLACKWELL, United States District Judge

 **\*1**  **\*1153** This case tests the constitutional limits of Executive Branch power: Can the federal government detain and move to deport a lawful noncitizen student for his political speech? At issue is not merely the legality of a single student's detention, but whether the First and Fifth Amendments retain their full force when invoked by arguably the most vulnerable—noncitizens in federal custody. The record reflects a coordinated series of executive actions—retaliatory in focus, opaque in their justification, and deficient in process—that collectively offend foundational constitutional protections.

On April 18, 2025, Petitioner Mohammed H. filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, claiming he was being held in Immigration and Customs Enforcement ("ICE") custody as part of a campaign by federal executive agencies to arrest, detain, and deport international college students based on their protected speech.

Petitioner specifically claimed that his detention violated the First Amendment, the Fifth Amendment, and the Administrative Procedure Act. (Doc. No. 1 ¶¶ 83–101.) The named Respondents (collectively, "the Government") included the federal and state officials allegedly responsible for the immigration enforcement campaign and for applying it against Petitioner. (*Id.* ¶¶ 8–15.) The record includes the Petition, the Government's Response, Petitioner's Reply, document exhibits, and witness declarations.

### BACKGROUND

The full factual background of this matter has been detailed in the Court's May 5, **\*1154** 2025 Order for Release on Bail Pending Adjudication. (Doc. No. 29 at 3–6.) Those facts are incorporated here by reference, and only a summary of the procedural history follows.

Petitioner filed his habeas petition and a motion for a temporary restraining order on April 18, 2025. (Doc. Nos. 1, 6.) He asserted four claims. First, he alleged that he was detained because he exercised his free speech rights under the First Amendment. (Doc. No. 1 ¶¶ 83–88.) Second, he alleged that his detention violated his Fifth Amendment due process rights because it stemmed from an impermissibly vague enforcement policy, deprived him of his property interests without notice and an opportunity to respond, and served no purpose other than punishment. (*Id.* ¶¶ 89–96.) Third, he alleged that the Government violated the Administrative Procedure Act when it terminated his record in the Student and Exchange Visitor Information System ("SEVIS") database without a proper justification and in violation of the federal agencies' own rules. (*Id.* ¶¶ 97–101.) And fourth, he requested release pending adjudication of his claims. (*Id.* ¶¶ 102–05.)

The parties appeared at a status conference before United States Magistrate Judge David T. Schultz on April 21, 2025. (Doc. No. 14.) The next day, Petitioner's motion for a temporary restraining order was granted, and this Court ordered the Government not to remove or transfer Petitioner outside the District of Minnesota. (Doc. No. 15.) The Court also ordered the Government to file its answer by April 25, 2025. (Doc. No. 16.) Petitioner was allowed to file a reply by April 29, 2025. (*Id.*)

 **\*\*2** Both sides filed their materials by the required deadlines. (*See* Doc. Nos. 17, 24.) The Government asserted that no evidentiary hearing is needed and that the matter could be resolved based on the written submissions. (Doc. No. 17 at 42 n.10.) Petitioner requested a hearing only if the Court were inclined to deny relief. (Doc. No. 24 at 2 n.1.)

On May 5, 2025, the Court granted Petitioner's request for release pending adjudication of his claims and extended the temporary restraining order for two weeks. (Doc. Nos. 29, 30.) As required, the Government confirmed it had released Petitioner on May 7, 2025. (Doc. No. 32.) On May 20 and June 3, 2025, the Court extended the temporary restraining order while the matter has been under review. (Doc. Nos. 34, 35.)

Having reviewed the submissions from both sides, the record is sufficient to decide Petitioner's claims without an evidentiary hearing. For the reasons that follow, Petitioner's request for a writ of habeas corpus is granted.

### DISCUSSION

### I. Legal Standard

A writ of habeas corpus may be granted to any petitioner who demonstrates he is in custody in violation of the Constitution or federal law. 🚩 28 U.S.C. § 2241(c)(3). It is the petitioner's burden to prove illegal detention by a preponderance of evidence. *See Aditya W. H. v. Trump,* Civ. No. 25-1976 (KMM/JFD), 782 F.Supp.3d 691, 702 – 03 (D. Minn. May 14, 2025) (collecting cases).

## II. Analysis

### A. Habeas jurisdiction

As this Court has previously reasoned, none of the statutes cited by the Government applies to bar habeas review here. (*See* Doc. No. 29 at 6–7.) Accurate jurisdictional analysis requires clarity about what Petitioner seeks to review and what he does not. He is seeking to review of the legality of his detention, nothing more. He **\*1155** is not seeking to reverse or invalidate any discretionary decisions. He is not seeking to pause or end his removal proceeding. And he is not challenging a final removal order as none has been issued. Instead, Petitioner asks this Court to review evidence of the Government's actions as proof that his detention is illegal—not to evaluate those acts on their merits. *See* 🚩 *Jennings v. Rodriguez,* 583 U.S. 281, 294–95, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018).

The Government overstates Petitioner's claims to make its jurisdictional arguments. And most of the cited statutes could apply only if read as broadly as the Government wants. *See* 🚩 *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 482–83, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (reasoning that § 1252(g) is strictly limited to reviewing discrete acts of commencing proceedings, adjudicating cases, or executing removal orders—not the many other decisions or actions that are part of the deportation process); *see also* 🚩 *Jennings,* 583 U.S. at 293, 138 S.Ct. 830 (rejecting expansive interpretation of § 1252(b)(9) that would render prolonged detention claims "effectively unreviewable"). The statutes cannot be stretched so far that they entirely preclude any habeas jurisdiction over constitutional challenges to immigration detention.

As other recent courts have determined in similar cases, federal law does not preclude habeas jurisdiction here. *See, e.g., Aditya W. H.,* 782 F.Supp.3d at 702 – 06; 🏴 *Mahdawi v. Trump,* No. 2:25-cv-389, 781 F.Supp.3d 214, 223 – 29 (D.Vt.

Apr. 30, 2025); 🚩 *Ozturk v. Trump,* No. 2:25-cv-374, 779 F.Supp.3d 462, 480 – 87 (D.Vt. Apr. 18, 2025). Accordingly, it is proper to consider whether Petitioner is detained lawfully, and if not, relieve the unlawful detention. 🚩 *Zadvydas v. Davis,* 533 U.S. 678, 699, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (describing such consideration as being the "historic purpose" of habeas review); 🚩 *Deng Chol A. v. Barr,* 455 F. Supp. 3d 896, 901 (D. Minn. 2020) ("Although the court may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution.").

### B. First Amendment violation (First Claim)

**\*\*3** Petitioner's first claim is that his arrest and detention violated his First Amendment rights. The First Amendment generally precludes government officials from taking retaliatory action against an individual for their protected speech. *See* 🚩 *Hartman v. Moore,* 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006). This protection applies equally to citizens and noncitizens. 🚩 *Bridges v. Wixon,* 326 U.S. 135, 148, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945).

The elements of a First Amendment retaliation claim are (1) the speech or conduct at issue was protected, (2) the defendant took an adverse action against the plaintiff, and (3) there was a causal connection between the retaliatory motive and the adverse action. *See Watson v. Boyd,* 119 F.4th 539, 550 (8th Cir. 2024). Petitioner claims he was targeted by the Government because he spoke out against violence in Gaza and expressed support for Palestinian human rights on social media.

There is no dispute here that speech on Palestinian human rights is protected speech on a matter of public concern. *See* 🚩 *Snyder v. Phelps,* 562 U.S. 443, 451–52, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011) (recognizing matters of public concern include any matter of political, social, or other community concern, or a subject of legitimate news interest). There is also **\*1156** no dispute that being held in ICE detention prevents speech and would reasonably chill an ordinary person from continuing to speak. *See Thurairajah v. City of Fort Smith, Ark.,* 925 F.3d 979, 985 (8th Cir. 2019). The dispute here is over proving causation, which depends on the details of the case. *See* 🚩 *Nieves v. Bartlett,* 587 U.S. 391, 399–400, 139 S.Ct. 1715, 204 L.Ed.2d 1 (2019). Causation

fails if the Government would have arrested and detained Petitioner even in the absence of his protected speech. *See* 🚩 *id.* at 398–99, 139 S.Ct. 1715.

Petitioner offers evidence that the Trump administration has publicly stated its disfavor for international students who express support for Palestine or criticize Israel. (*See* Doc. No. 1 ¶¶ 18–20 (citing Exec. Order No. 14161, 90 Fed. Reg. 8451 (Jan. 30, 2025); Exec. Order No. 14188, 90 Fed. Reg. 8847 (Jan. 29, 2025)); *see also* Doc. No. 1-9; Doc. No. 10, Sreekanth Decl., Exs. 2, 11, 13, 16–20.) The same executive orders, public statements, and social media posts that Petitioner offers here have been found to be evidence of retaliatory intent in similar cases. *See Aditya W. H.*, 782 F.Supp.3d at 707 – 09; 🚩*Mahdawi*, 781 F.Supp.3d at 230 – 31. The record shows executive agencies acting in accordance with these objectives by arresting, detaining, and pursuing removal of an international student who expressed support for Palestine. Thus, Petitioner's evidence shows by a preponderance that his speech prompted the enforcement and detention.

In response, the Government points to "the Secretary of State's determination that [Petitioner's] criminal activities create a public safety risk, and therefore his visa was revoked under 🚩8 U.S.C. § 221(g)." (Doc. No. 17 at 38.) It specifically cites the March 23, 2025 memo from the Department of State that revoked Petitioner's F-1 visa with immediate effect. (Doc. No. 1-8.) But the March 23 memo lacks reliability and does not sufficiently rebut Petitioner's evidence. The memo indicates that (1) DHS—not the State Department—initiated the scrutiny of Petitioner's visa eligibility; (2) DHS—not the State Department—supplied the information that Petitioner had been "charged by U.S. law enforcement officials with Assault-5th Degree-Misdemeanor" and "now poses a threat to U.S. public safety"; and (3) the State Department understood at the time of revocation that DHS "intends to immediately pursue removal." (*See* Doc. No. 1-8 at 3.) That intention was either communicated at or before the time of revocation. Without more evidence about the agency interactions, the March 23 memo alone does not refute the claim that DHS had already formed its intent to pursue removal, even before Petitioner's visa was revoked.

**\*\*4** The memo oddly considers Petitioner a current threat to public safety for being charged with misdemeanor assault two years in the past. The memo also does not reflect any

consideration of the facts underlying the charge, nor does it accurately represent that it was filed in 2023, that Petitioner was never arrested, and that he pled guilty and completed a stayed sentence in 2024. Instead of providing a lawful basis for enforcement, the memo's deficiencies do not disprove Petitioner's claim that DHS targeted him for removal, and then sought the visa revocation as the purported legal justification.

The Government's justification also falls short because other international students who have been flagged in a "criminal records search" and had their SEVIS records terminated have not been arrested or detained like Petitioner. (*See* Doc. No. 24 at 10; Doc. No. 1-6 at 2.) A purportedly valid basis for enforcement fails when similarly situated individuals have not been treated the same. *See* 🚩 **\*1157** *Nieves*, 587 U.S. at 402, 139 S.Ct. 1715 (stating probable cause defeats retaliation claim in § 1983 context unless "otherwise similarly situated individuals not engaged in the same sort of protected speech had not been arrested").

The justification is further undermined because the Government cited different reasons at different times for its actions. The arresting agents cited visa revocation, while Petitioner's initial removal charge was failure to maintain status under § 237(a)(1)(A)(i). That charge was withdrawn without explanation and replaced with visa revocation under § 237(a)(1)(B) nearly a month later. The Government has not explained its rationale at the time of visa revocation or its rationale for altering the charges against Petitioner. On this record, these events appear to be reverse-engineered justifications for speech-based targeting and enforcement.

Moreover, Petitioner was allowed to re-enter the United States while charged with the 2023 misdemeanor (Doc. No. 1-1 ¶¶ 33–34), even though that same charge supposedly raised a public safety threat and warranted visa revocation in 2025, according to DHS and the State Department. Petitioner supplies evidence of what caused the change in treatment: targeted speech retaliation in accordance with the Trump administration's policies. The Government does not supply enough reliable evidence to dispel that connection.

Most critically, the Government offers no evidence explaining why Petitioner was selected for a criminal records search in the first place. It has not described how such searches are typically initiated, nor has it explained what triggered DHS's outreach to the State Department about Petitioner on March 22, 2025. One declaration attests that the ICE officials who issued the warrant and arrested Petitioner

were unaware of his speech, but does not provide the basis for the statement. (Doc. No. 20 ¶ 8.) The declaration is also silent or lacking specifics about any supervisors, legal officers, or decisionmakers higher up the chain—those who in fact approved the records search, the outreach to the State Department, and the steps between revocation and arrest. That evidentiary void matters. It leaves unrebutted the strong temporal and circumstantial link between the Government's statements regarding international students, Petitioner's public expression, and the enforcement actions taken against him. On this record, the Government has not shown—by any evidence, let alone a preponderance—that it would have taken the same steps against Petitioner had he not engaged in protected speech.

The more plausible inference, supported by timing, context, and the Government's own public statements, is that Petitioner was arrested and detained because he expressed pro-Palestinian views and criticized violence in Gaza. That is core political speech. Targeting Petitioner for it violates the First Amendment. Accordingly, Petitioner's first habeas claim is granted.

### C. Fifth Amendment due process violation (Second Claim)

**\*\*5** Petitioner also claims his detention violated Fifth Amendment due process. Under the Fifth Amendment, no citizen or noncitizen may be deprived of life, liberty, or property without due process of law. *See* U.S. Const. amend. V; *Mathews v. Diaz*, 426 U.S. 67, 78, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976); *see also Zadvydas*, 533 U.S. at 690, 121 S.Ct. 2491 (civil detention violates due process unless special, nonpunitive circumstances outweigh an individual's interest in avoiding restraint); *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (due process is flexible, and the protections depend on the situation, considering the private **\*1158** interest at issue, the risk of erroneous deprivation of interest through the procedures used, and the Government's interest). These protections extend to deportation proceedings. *Reno v. Flores*, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993).

Punishing Petitioner for protected speech or using him as an example to intimidate other students into self-deportation is abusive and does not reflect legitimate immigration detention

purposes. *See, e.g.,* *Mahdawi*, 781 F.Supp.3d at 231 – 32 (recognizing that immigration detention cannot be motivated by the desire to punish speech or to deter others from speaking). Valid immigration detention purposes include ensuring future appearances and preventing danger to the community. *See* *Zadvydas*, 533 U.S. at 690, 121 S.Ct. 2491 (stating that immigration detention must remain "nonpunitive in purpose and effect"). The Government's public safety rationale here—that a 2023 misdemeanor charge or guilty plea represents a current public safety threat—is insufficient and falls well below the bar. The Immigration Judge agreed. He determined that a $7,500 bond would ensure Petitioner's court appearances and mitigate a possible flight risk. Notably, that court made no finding that Petitioner posed a danger to the community. The record lacks sufficient proof of special, nonpunitive factors outweighing Petitioner's interest in being free of improper detention. Instead, the preponderance of evidence shows that Petitioner's detention was illegitimate in both purpose (punishment of protected speech) and effect (intimidation of other international students).

Petitioner's case presents a second, independent due process issue. Prior to being released by this Court's May 5, 2025 Order, Petitioner remained in custody only because the Government invoked the automatic stay provision in 8 C.F.R. § 1003.19(i)(2). Although the Immigration Judge had ordered Petitioner to be released on bond, the Government stayed that order without making any showing of dangerousness, flight risk, or any other factor justifying detention. Simply by fiat—without introducing any proof and without immediate judicial review—the Government effectively overruled the bond decision and kept Petitioner detained. In doing so, the automatic stay rendered Petitioner's continued detention arbitrary and gave him no chance to contest the Government's case for detention. *Mathews*, 424 U.S. at 348–49, 96 S.Ct. 893 ("The essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.") Invoking the automatic stay as the Government did here contorts § 1003.19(i)(2) into an unfair procedure. *Cf.* *Bridges*, 326 U.S. 135, 152–53, 65 S.Ct. 1443 (administrative rules are designed to afford due process and to serve as "safeguards against essentially unfair procedures"). Under the circumstances of this case, invoking the automatic stay violated Petitioner's due process rights.

The Government has wide—but not unlimited—discretion in the immigration realm. *See* *Zadvydas*, 533 U.S. at 700, 121 S.Ct. 2491 (recognizing that Executive Branch's wide discretion regarding immigration remains subject to constitutional limitations); *Ali v. Sessions*, Civ. No. 18-2617 (DSD/LIB), 2019 WL 13216940, at *3 (D. Minn. July 30, 2019) (recognizing that attorney general's discretionary detention authority is "subject to the constitutional requirement of due process"). At its foundation, due process prohibits detaining an individual without justification. Petitioner has established, and the Government has not sufficiently rebutted, that his detention is rooted in improper purposes **\*1159** and lacks an individualized legal justification.

**\*\*6** Therefore, Petitioner's second habeas claim is granted.

### D. Administrative Procedure Act violation (Third Claim)

Petitioner's third claim is that he was confined in violation of the Administrative Procedure Act because DHS terminated his student status and SEVIS record without a legal basis. Under the Act, an agency action may be set aside if it is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). An action is arbitrary and capricious if the agency fails to examine relevant evidence or articulate a satisfactory explanation. *See* *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 42–43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Post-hoc rationalizations will not suffice; agency action must be upheld, if at all, on the basis articulated by the agency itself. *See* *id.* at 50, 103 S.Ct. 2856. An agency ought to lead by example and follow its own regulations. *See* *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *see also* *Webster v. Doe*, 486 U.S. 592, 602 n.7, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988).

Terminating Petitioner's SEVIS record is subject to review as a final agency action because it is the end of a decision-making process which implicates rights and carries legal consequences. *See* *Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 182 (3d Cir. 2019); *Sisseton-Wahpeton Oyate of Lake Traverse Rsrv. v. U.S. Corps of Eng'rs*, 888 F.3d 906, 915 (8th Cir. 2018). Multiple other courts have reached a similar determination on preliminary review. *See, e.g.*, *Doe v.*

*Noem*, No. 3:25-CV-00042RGE-WPK, 2025 WL 1203472, at *4–6 & n.1 (S.D. Iowa Apr. 24, 2025) (recognizing that visa revocation is not itself a failure to maintain status that justifies SEVIS termination and collecting recent cases awarding injunctive relief); *Arizona Student DOE #1 v. Trump*, No. CV-25-00174-TUC-JGZ, 785 F.Supp.3d 575, 585 – 86 (D. Ariz. Apr. 24, 2025); *Shaik v. Noem*, Civ. No. 25-1584 (JRT/ DJF), 2025 WL 1170447, at *3 (D. Minn. Apr. 22, 2025).

The record shows that DHS's reason for terminating Petitioner's SEVIS record was a shifting sand, changing weeks after he was detained. Immediately after his arrest, Petitioner's SEVIS record showed that it was terminated for failure to maintain status under 237(a)(1)(C)(i) and foreign policy under § 237(a)(4)(C). (Doc. No. 1-4 at 4.) But then weeks later, his SEVIS record listed the termination reason as "OTHER - Individual identified in criminal records check and/or has had their visa revoked." (Doc. No. 1-6 at 2.) The shift is not adequately explained in the record. The Government's claim that the SEVIS record was simply "corrected" (Doc. No. 17 at 7 n.2, 30) is not supported by the cited declarations and exhibit. Neither declarant characterizes the initial entry as an error or the change as a correction. The evidence at most shows that the foreign policy ground was inconsistent with State Department records. It still does not explain why foreign policy was cited or even address the citation for failure to maintain status.

Upon review, none of the proffered reasons (failure to maintain status, foreign policy, criminal records, or visa revocation) provides a satisfactory explanation for terminating Petitioner's SEVIS record. Petitioner's 2023 misdemeanor conviction does not constitute a failure to maintain status because it is not a disqualifying crime. 8 C.F.R. § 214.1(g). The vague "foreign policy" ground requires notification **\*1160** in the Federal Register, 8 C.F.R. § 214.1(d), and the record here reflects that it was utilized as pretext to target students who expressed views favoring Palestinian human rights. And visa revocation, standing alone, does not justify SEVIS termination. *See* *Doe*, 2025 WL 1203472, at *4 (recognizing that revoking an F-1 visa does not itself demonstrate a failure to maintain status justifying SEVIS termination).

**\*\*7** Federal regulations provide that working without authorization, providing false information to DHS, or committing a qualifying crime constitutes a failure to maintain status. *See* 8 C.F.R. § 214.1(e)—(g).

Noncitizen students like Petitioner are also required to maintain a qualifying course of study. *Id.* § 214.2(f)(6), (9). The record contains no evidence that Petitioner violated any of these requirements. It also lacks evidence that DHS cited or fully complied with one of the three bases justifying termination of visa status in ⚑8 C.F.R. § 214.1(d): (1) waiver revocation; (2) introduction of a private bill to confer permanent resident status, or (3) pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons. *Jie Fang*, 935 F.3d at 176 (quoting ⚑8 C.F.R. § 214.1(d)). The record lacks evidence that the Government relied on any of these legitimate bases for terminating Petitioner's SEVIS record.

At most, the evidence shows that DHS found Petitioner after running a search that flagged his 2023 misdemeanor, which DHS somehow elevated into a present public safety threat. Terminating Petitioner's status and SEVIS record based on public safety suffers from multiple flaws. First, the March 23 State Department memo indicates that DHS considered Petitioner a threat to public safety merely due to being *charged* with—not convicted of—a misdemeanor in 2023. (*See* Doc. No. 1-8 at 3; Doc. No. 19, Armstrong Decl. ¶¶ 4–5.) Second, like the foreign policy ground, there is no evidence that DHS provided notice in the Federal Register as required by ⚑8 C.F.R. § 214.1(d). Third, Petitioner's 2023 misdemeanor legally cannot justify terminating his status, even assuming it was the conviction and not merely the charge that DHS considered a threat to public safety. While being convicted of a crime that carries more than one year imprisonment constitutes a failure to maintain status according to ⚑8 C.F.R. § 214.1(g), the maximum sentence for Petitioner's misdemeanor was only 90 days. On the record presented here, the termination of Petitioner's student status and SEVIS record for his 2023 misdemeanor lacked a lawful basis.

The record separately establishes that Petitioner's SEVIS termination violates DHS policies. The first is a policy against targeting protected speech. (*See* Sreekanth Decl. Ex. 1, Kevin K. McAleenan, *Information Regarding First Amendment Protected Activities*, DEP'T OF HOMELAND SECURITY, (May 17, 2019) ("DHS does not profile, target, or discriminate against any individual for exercising his or her First Amendment rights."); Sreekanth Decl. Ex. 23, Alejandro N. Mayorkas, *Guidelines for the Enforcement of Civil Immigration Law*, DEP'T OF HOMELAND SECURITY (Sept. 30, 2021) (stating that a noncitizen's exercise of their

First Amendment rights should not factor into an enforcement action decision).) The same record evidence that establishes Petitioner's First Amendment claim also establishes the DHS policy violation.

The second is a policy that visa revocation does not justify SEVIS termination. (*See* Sreekanth Decl. Ex. 22, ICE Policy Guidance No. 1004-04 (June 7, 2010) (noting that visa revocation alone does not justify SEVIS record termination).) Not only does agency policy preclude the practice, **\*1161** it contravenes federal law. *See John Roe, et al. v. Noem, et al.*, No. 25-cv-00040-BU-DLC, 2025 WL 1114694, at \*3 (D. Mont. Apr. 15, 2025) ("⚑8 C.F.R. § 214.1(d) does not provide statutory or regulatory authority to terminate F-1 student status in SEVIS based upon revocation of a visa."). If visa revocation is the true reason that DHS has decided justifies terminating Petitioner's SEVIS record, then the termination violates agency policy and exceeds lawful authority.

Petitioner's SEVIS termination violates the Administrative Procedure Act because it was not done in accordance with law or agency policy. To the extent that SEVIS termination provides a basis for Petitioner's detention, the detention is unlawful. Therefore, Petitioner's third habeas claim is granted.

## CONCLUSION

**\*\*8** The Constitution prohibits arbitrary detention, even in the immigration context. This case is not about open borders or executive discretion. It is about whether a young man can be jailed and nearly deported because of what he said. The law answers no.

These proceedings do not question the Government's general authority to enforce immigration law. But that authority is not a blank check. The Constitution still governs—even, and especially, when the target is unpopular or politically disfavored.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that Petitioner Mohammed H.'s Petition for a Writ of

Habeas Corpus under 🚩 28 U.S.C. § 2241 (Doc. No. 1) is **GRANTED**. Petitioner shall remain released from custody, subject to the conditions previously imposed by the Immigration Judge, including the $7,500 bond.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

**All Citations**

786 F.Supp.3d 1149, 2025 WL 1692739

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT B



## U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*



*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**Huynh, Loan**
**Fredrikson& Byron, P.A.**
**60 South Sixth St Suite 1500**
**Minneapolis MN 55402**

**DHS/ICE OFFICE OF CHIEF COUNSEL** – BLM
**1 Federal Drive, Suite 1800**
**Ft. Snelling MN 55111**

**Name: HOQUE, MOHAMMED MONJURU**

**Date of this Notice:** **8/27/2025**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

John Seiler
Acting Chief Clerk

Enclosure

Userteam: Docket





**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**HOQUE, MOHAMMED MONJURUL**

██████████████████

**DHS/ICE OFFICE OF CHIEF COUNSEL – BLM**
**1 Federal Drive, Suite 1800**
**Ft. Snelling MN 55111**

Name: **HOQUE, MOHAMMED MONJURU** ████████████

Date of this Notice:  **8/27/2025**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. § 1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

John Seiler
Acting Chief Clerk

Enclosure

Userteam:  Docket

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

---

MATTER OF:

Mohammed Monjurul HOQUE, █████████

Respondent

**FILED**
Aug 27, 2025

---

ON BEHALF OF RESPONDENT: Loan Huynh, Esquire

ON BEHALF OF DHS: Justin J. Lee, Assistant Chief Counsel

IN BOND PROCEEDINGS
On Appeal from a Decision of the Immigration Court, Fort Snelling, MN

Before: McCloskey, Temporary Appellate Immigration Judge[1]

MCCLOSKEY, Temporary Appellate Immigration Judge

The Department of Homeland Security ("DHS") appeals the Immigration Judge's April 9, 2025, order[2] granting the respondent's release upon the payment of a $7,500 bond. The respondent has filed a brief opposing the appeal. We will dismiss DHS's appeal.

We review the findings of fact, including the determination of credibility, made by the Immigration Judge under the "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review all other issues, including issues of law, discretion, or judgment, under the de novo standard. 8 C.F.R. § 1003.1(d)(3)(ii).

DHS did not assert that the respondent was subject to mandatory detention under section 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a). The Immigration Judge found that the respondent demonstrated that his release would not pose a danger to the community and that a bond of $7,500 would be sufficient to mitigate any flight risk and reasonably ensure his presence at future hearings (IJ at 1 n.2, 3-6). *See* INA § 236(a), 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d); *see also Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006) (holding that the respondent bears the burden that he "merits release on bond").

We will affirm the Immigration Judge's bond determination as it is not clearly erroneous. *See Matter of Guerra*, 24 I&N Dec. at 40 ("An Immigration Judge has broad discretion in deciding the

---

[1] Temporary Appellate Immigration Judges sit pursuant to appointment by the Attorney General. *See generally* 8 C.F.R. § 1003.1(a)(1), (4).

[2] On April 15, 2025, the Immigration Judge issued a written memorandum in support of her bond order.

A220-936-388

factors that he or she may consider in custody redeterminations."); *Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009) (holding that only if a respondent has established that he would not pose a danger to property or persons should an Immigration Judge decide the amount of bond necessary to ensure the respondent's presence at future hearings).

The Immigration Judge found that on August 23, 2023, the respondent was convicted of Disorderly Conduct–Offensive/Abusive/Boisterous/Noisy/Obscene in violation of Minn. Stat. § 609.72.1(3) (IJ at 3; Exh. B). The Immigration Judge found that this conviction stemmed from a March 3, 2023, incident during which the complainant called the respondent numerous times and insulted his family members before inviting him to her residence to speak further (IJ at 4; Exh. B). Upon his arrival, the respondent confronted the complainant and pushed her husband after he made sexually inappropriate comments about the respondent's mother (IJ at 4; Exh. B).

The Immigration Judge noted that the respondent had no prior criminal record, and he has not engaged in criminal activity since the incident (IJ at 4; Exh. B). The Immigration Judge also found that the respondent was truthful and compliant with law enforcement; his claim was corroborated by video provided to the police by the complainant; he complied with the terms of his probation and took responsibility for his actions; and there was no violence, threats of violence, nor injuries reported (IJ at 4; Exhs. B, F). The Immigration Judge thoroughly considered and analyzed the facts of the case and applied the proper legal standard in determining that the respondent met his burden to show that he was not a danger to the community (IJ at 3-4).

On appeal, DHS argues that the Immigration Judge erred in her finding that there was no evidence of "the use of any violence or threats of violence" because the parties agree that the respondent struck the victim (DHS's Br. at 4). DHS argues that this is sufficient to demonstrate that the respondent poses a danger to public safety upon his release (DHS's Br. at 4). However, contrary to DHS's assertion, the Immigration Judge reasonably concluded that this incident was not violent in nature and did not render the respondent a danger to public safety upon his release (IJ at 3-4; Exh. B). *See Matter of D-R-*, 25 I&N Dec. 445, 454-55 (BIA 2011) (holding that an Immigration Judge may make reasonable inferences from direct and circumstantial evidence in the record and is not required to accept a party's interpretation where other plausible views of the evidence are supported by the record). DHS does not cite any other evidence demonstrating that the Immigration Judge clearly erred in her dangerousness finding, and as such, we will affirm the Immigration Judge's conclusion that the respondent does not represent a danger to public safety (IJ at 3-4). *See Matter of R-A-V-P-*, 27 I&N Dec. 803, 804-05 (BIA 2020) (finding that an "Immigration Judge is in the best position to analyze" whether the respondent's release on bond is warranted).

DHS also argues that the Immigration Judge, in ordering twice the amount of bond than requested by the respondent, attempted to mitigate the respondent's perceived dangerousness with a higher bond amount (DHS's Br. at 5). DHS points to no statement in the Immigration Judge's order or evidence in the record to support this argument. The Immigration Judge clearly analyzed the respondent's dangerousness and, only upon finding that he posed no danger to public safety, did she analyze the respondent's flight risk and set an appropriate bond amount to mitigate such risk (IJ at 4-6). *See Matter of Urena*, 25 I&N Dec. at 141. As DHS does not argue that the

2

Immigration Judge clearly erred in determining this bond amount, we will affirm that the bond amount of $7,500 is sufficient to ensure the respondent's appearance at future hearings (IJ at 4-6). *See, e.g., Matter of Guerra*, 24 I&N Dec. at 40 (describing the factors relevant to determining flight risk); *Matter of Urena*, 25 I&N Dec. at 141 (noting that bond ensures a respondent's presence at future hearings).

Accordingly, the following order will be issued.

ORDER: DHS's appeal is dismissed.

Appellate Case: 25-2516    Page: 29    Date Filed: 12/08/2025    Entry ID: 5585711

# CERTIFICATE OF COMPLIANCE

I certify, pursuant to Fed. R. App. P. 27(d), the foregoing motion is proportionally-spaced, has a Times-Roman typeface of 14-points, and contains 2,916 words.

 /s/ Craig A. Newell, Jr.
CRAIG A. NEWELL, JR.
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C.  20044
(202) 514-0298

Date:  December 8, 2025     Craig.Newell@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 8, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

         <u> /s/ Craig A. Newell, Jr.</u>
         CRAIG A. NEWELL, JR.
         Senior Litigation Counsel
         Office of Immigration Litigation
         Civil Division, Department of Justice
         P.O. Box 878, Ben Franklin Station
         Washington, D.C. 20044
         (202) 514-0298
         Craig.Newell@usdoj.gov