No. 25-2516

# United States Court of Appeals for the Eighth Circuit

**Mohammed Hoque**

*Petitioner-Appellee,*

v.

**Donald J. Trump, *et al.*,**

*Respondent-Appellant.*

---

**APPELLEES' OPPOSITION TO APPELLANT'S MOTION FOR VACATUR AND DISMISSAL**

---

On Appeal from the United States District Court for the District of Minnesota
Case No. 0:25-cv-01576-JWB

**FREDRIKSON & BYRON, P.A.**
Joseph T. Dixon, III (#0283903)
Anupama D. Sreekanth (#0393417)
Amanda M. Mills (#0397685)
Rachel L. Dougherty (#0399947)
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Tel: (612) 492-7000

**ACLU OF MINNESOTA**
Teresa Nelson (#0269736)
Benjamin Casper (#0276145)
P.O. Box 14720
Minneapolis, MN 55414
Tel: (651) 529-1692

**THE ADVOCATES FOR HUMAN RIGHTS**
Zachary Albun (IL #6323553)
330 Second Ave South Ste. 800
Minneapolis MN, 55041
Tel: (612) 252-4444

# INTRODUCTION

This appeal is not moot. Although the Board of Immigration Appeals ("BIA") affirmed that Petitioner-Appellee Mohammed Hoque should be released on bond, that decision does not preclude the named Respondents-Appellants (collectively, "the Government") from unlawfully detaining him again. Under existing immigration laws and regulations, Respondent-Appellant Attorney General Pamela Bondi can refer Appellee's case to herself and revoke bond during the pendency of his removal proceedings, the BIA's decision notwithstanding. Therefore, if the District Court's judgment is vacated, the Government's efforts to detain Appellee in violation of his rights can continue unabated.

Even if the Government explicitly agreed not to revoke bond or otherwise detain Appellee during the pendency of his removal proceedings, or if the appeal were otherwise moot, the Government is not entitled to the equitable remedy of *Munsingwear* vacatur. Both the fault and public interest factors weigh against the Government. The Government was the losing party below and is responsible for any mootness issues here. In addition, the Government cannot overcome the compelling public interest in having a body of judicial precedents affirming the First Amendment rights of non-citizens speaking out on matters of public concern.

Accordingly, the Court should deny the Government's motion to dismiss and vacate.

- 1 -

# BACKGROUND

## I. Appellee Was Unlawfully Arrested and Detained.

This appeal arises out of the Government's arrest and detention of Appellee, a 20-year old Bangladeshi national and F-1 student at Minnesota State University, Mankato in retaliation for his speech on matters of public concern—namely, his social media posts regarding the violence in Gaza and in support of Palestinian human rights. (Doc. No. 1-1, Decl. of Mohammed Hoque, ¶¶ 2, 5, 6, 12.)

On or around March 5, 2025, the Government began implementing a Policy of retaliation against international students' protected speech and association through the initiation of removal proceedings. (Doc. No. 1, Pet. ¶¶ 17-37; *see also* Doc. No. 29, Order for Release on Bail Pending Adjudication, at 3 ("Executive Orders and public statements from federal officials indicate that the Government views commentary on Palestinian human rights as a foreign policy threat and a reason to initiate deportation proceedings against international students.").) In part, the Policy purports to apply the "Foreign Policy Ground," 8 U.S.C. § 1227(a)(4)(C)(i), Immigration and Nationality Act ("INA") § 237(a)(4)(C), to revoke the visas of international students based on their protected speech and to render noncitizens deportable. (*See* Doc. No. 1 ¶¶ 22–27.) Further, once students who have been detained pursuant to the Policy have been granted bond in immigration court based on the findings of an Immigration Judge ("IJ"), the Department of Homeland Security ("DHS") has been invoking an automatic stay

- 2 -

regulation to block the IJ's order while DHS appeals the decision to the BIA. *See* 8 C.F.R. § 1003.19(i)(2); *see e.g.* Doc. No. 1 ¶¶ 72–73.

On March 28, 2025, after expressing his political views on social media, Appellee was detained by plain-clothed federal officers while on his way home from class. (Doc. No. 29 at 3; Doc. No. 1-1 ¶ 42.) When arrested, Appellee was on track to graduate in 2026 with a major in Management Information Systems and met all of the requirements necessary to maintain his student status, including by being enrolled in the minimum required number of credits.  (Doc. No. 1-1 at ¶¶ 5–9.)

The Government's stated basis for its arrest and detention of Appellee shifted repeatedly. At the time of his arrest, officers informed Appellee that his visa had been revoked. (Doc. No. 1-1 ¶ 42.) Hours later, the Government terminated his Student and Exchange Visitor Information System ("SEVIS") record, citing different grounds: (1) Section 237(a)(1)(C)(i) of the INA, which addresses failure to maintain status; and (2) the Foreign Policy Ground. (Doc. No. 29 at 3.) On March 28, 2025, the Government initiated removal proceedings, charging failure to maintain status under INA § 237(a)(1)(C)(i) only. (*Id.* at 4.)  Days later, on April 1, 2025, Appellee received an undated, unmarked letter purporting to revoke his visa. (*Id.*) Then, on April 8, 2025, Appellee's SEVIS record was revised to state that the termination reason was: "Individual identified in criminal records check and/or has had their visa revoked." (Doc. No. 36 at 14 (quoting Doc. No. 1-6 at 2).)

Appellate Case: 25-2516     Page: 4     Date Filed: 12/18/2025 Entry ID: 5590022

## II. The IJ Ordered Appellee Released on Bond.

On April 9, 2025, an IJ conducted a bond hearing on the then-pending charge of failure to maintain status. (Doc. No. 29 at 5.) The IJ found that Appellee was not a danger to the community and that a $7,500 bond would mitigate any flight-risk concerns. (*Id.*) The Government did not present any evidence of flight risk or danger. (*Id.*)

The next day, DHS filed a notice of intent to appeal and invoked the automatic stay under 8 C.F.R. § 1003.19(i)(2), precluding Appellee's release. (*Id.*)

On April 18, 2025—the same day that Appellee filed his Petition for Writ of Habeas Corpus—the Government shifted the stated bases for its actions again, this time adding a removal charge under INA § 237(a)(1)(B)—visa revocation. (Doc. No. 27 ¶¶ 7, 10; Doc. No. 29 at 5.) Days later, on April 23, 2025, the Government withdrew its original charge of failure to maintain status without explanation and proceeded with visa revocation as the sole charge of removability. (Doc. No. 29 at 6.)

## III. Appellee Filed a Petition for Writ of Habeas Corpus.

On April 18, 2025, Appellee filed a Petition for Writ of Habeas Corpus and on April 21, 2025, Appellee filed a Motion for a Temporary Restraining Order alleging his detention was part of the broader Policy of the Executive Branch to target international students engaged in pro-Palestinian speech, and to chill such speech nationwide, in violation of the First Amendment, Fifth Amendment, and the

Appellate Case: 25-2516    Page: 5    Date Filed: 12/18/2025 Entry ID: 5590022

Administrative Procedure Act ("APA") warranting habeas relief and immediate release. (Doc. Nos. 1, 6.)

On April 22, 2025, the District Court granted in part the motion for a Temporary Restraining Order and ordered the Government to answer the Petition. (Doc. Nos. 15, 16.)

In its response, the Government argued that the District Court lacked jurisdiction and that Appellee's detention was lawful based on the Secretary of State's purported revocation of his visa. (Doc No. 17 at 14–26, 31–41.) In support of its second contention, the Government submitted pretextual evidence about its basis for detaining Appellee. (Doc. No. 36 at 14.) One of the Government's declarations relied heavily on a supposed "written communication" regarding the revocation of Appellee's visa, (Doc. No. 19 ¶ 4), but such a document was never provided by the Government. While the Government claimed this communication showed DHS asking the Department of State ("DOS") to determine whether Appellee's visa should be revoked, (*id.*), a different memorandum (which the Government *did* file) showed that DHS had already decided to detain Appellee and subsequently asked DOS to create a record to do so. (*See* Doc. No. 1-8.)

In reply, Appellee submitted evidence and argument that (1) the revocation of an F-1 visa does not, by itself, terminate a student's lawful status inside the United States, (2) DHS's own guidance states that visa revocation is not a basis to terminate

Appellate Case: 25-2516    Page: 6    Date Filed: 12/18/2025 Entry ID: 5590022

a SEVIS record, and (3) regulations strictly limit when DHS may terminate nonimmigrant status, which DHS had not satisfied here. (Doc. No. 24 at 6, 41; Doc. Nos. 27, 28.)

## IV. The District Court Ordered Appellee Released Pending Adjudication on the Merits.

On May 5, 2025, the District Court granted Appellee's emergency motion for release on bail pending adjudication on the merits. (*See* Doc. No. 29 at 17.) The District Court held that habeas jurisdiction was not barred because Appellee sought relief from allegedly unlawful confinement—not review of discretionary executive actions or a final removal order—and that his claims presented "substantial" First and Fifth Amendment questions supported by the factual record. (*See generally, id.* at 6–16.) The District Court also found that Appellee's commentary on violence in Gaza and support for Palestinian human rights constituted protected speech, that detention would chill such expression, and that the Government's shifting, *post hoc* justifications and absence of contemporaneous evidence of lawful rationale supported a causal connection between retaliatory motive and detention. (*Id.* at 7–11, 15.) The District Court further concluded that continued detention effected through the automatic stay, without individualized justification, presented a substantial due process problem because it operated "by fiat," prolonged confinement despite the IJ's bond order, and deprived Appellee of notice and opportunity to rebut the Government's case for detention. (*Id.* at 12–13.) The District

Appellate Case: 25-2516    Page: 7    Date Filed: 12/18/2025 Entry ID: 5590022

Court also determined that Appellee made "a clear case that the Government violated the [APA]" because visa revocation does not constitute a status violation warranting SEVIS termination. (*Id.* at 13–15.) Finally, the District Court found exceptional circumstances existed—including Appellee's documented medical needs, educational disruption, impaired access to counsel, and the risk of transfer—and ordered immediate release on the bond conditions imposed by the IJ. (*Id.* at 15–17.)

Following the May 5 Order, Appellee posted bond. (Doc. No. 32 ¶ 7; *see also* Doc. 36 at 4.) DHS released him from detention on May 6, 2025. (*Id.*)

## V. The District Court Granted Appellee's Petition.

On June 17, 2025, the District Court issued its order granting Appellee's Petition and ordering that Appellee "shall remain released from custody" subject to the conditions previously imposed by the IJ. (Doc. No. 36 at 17.) The District Court entered final judgment the next day. (Doc. No. 37.)

The District Court incorporated the factual background set forth in its May 5 Order and summarized procedural developments thereafter. (Doc. No. 36 at 2–4.) The District Court held, among other things, that (1) the "more plausible inference" from the record is that Appellee was "arrested and detained because he expressed pro-Palestinian views and criticized violence in Gaza[,]" (*id.* at 10), (2) Appellee's detention was illegitimate in purpose and effect in violation of the Fifth Amendment (*id.* at 11–12), and (3) Appellee's SEVIS termination violated the APA (*id.* at 13–

- 7 -

17). The District Court ordered that Appellee remain released pending his removal proceedings. (*Id.* at 17.)

## VI. The Government Appealed.

The Government filed its Notice of Appeal on July 29, 2025. (Doc. No. 38.)

On August 27, 2025, the BIA dismissed DHS's bond appeal and affirmed the IJ's bond redetermination on the merits. (*See* Gov. Mot., Ex. B.)

The Government's brief and appendix were originally due on September 9, 2025. The Government moved for extensions of those deadlines on August 26, October 1, October 24, and November 24, 2025. The Government's brief and appendix are currently due on December 22, 2025.

On December 8, 2025—over one hundred days after the BIA's order affirming the IJ's bond redetermination—the Government filed the present motion requesting that this Court dismiss its appeal as moot and vacate the District Court's Orders.

## <u>ARGUMENT</u>

The Government's untimely motion violates Eighth Circuit Rule 47A(b) and should not be resolved prior to full merits briefing. If considered now, the motion fails because the Government has not carried its heavy burden to establish mootness or entitlement to the equitable remedy of vacatur.

## I. The Government's Motion is Untimely in Violation of Rule 47A(b) and Should Be Reserved for a Determination on the Merits.

Appellate Case: 25-2516    Page: 9    Date Filed: 12/18/2025 Entry ID: 5590022

This appeal was docketed on July 31, 2025, and the BIA decision was issued on August 27, 2025. The Government did not file the instant Motion until December 8, 2025—nearly four months later. The Motion is untimely under Rule 47(A)(b) because it was brought more than 14 days after the Court docketed the appeal and the Government has not addressed, let alone established, good cause. *See* 8th Cir. R. 47A(b) ("Except for good cause or on the motion of the court, a motion to dismiss based on jurisdiction must be filed within 14 days after the court has docketed the appeal."); *cf. Robinson v. Pfizer, Inc.*, 855 F.3d 893, 896 (8th Cir. 2017) (finding good cause when appellee moved to dismiss six days after case presented mootness issue).

Although mootness is a jurisdictional issue that the Court must address, *Faysound Ltd. v. Falcon Jet Corp.*, 940 F.2d 339, 341 n.2 (8th Cir. 1991), the Government's lack of timeliness renders this issue unsuitable for disposition through Rule 47A(b). Instead, the issues raised by the Government should be resolved after full merits briefing has been completed. *See Michigan v. Doran*, 439 U.S. 813 (1978) ("Further consideration of the suggestion of mootness deferred to the hearing of the case on the merits."); *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998) ("There is a judicial preference for adjudication on the merits." (citation

- 9 -

Appellate Case: 25-2516    Page: 10    Date Filed: 12/18/2025 Entry ID: 5590022

modified)). Accordingly, Appellee requests that the Court deny the Motion and proceed to full merits briefing.[1]

**II.  The Government Has Not Met its "Heavy" Burden of Establishing that the Appeal is Moot Because Appellee Remains at Risk of Losing the Relief Entered by the District Court.**

The Government's "burden of demonstrating mootness is a heavy one." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (internal quotation marks omitted). To meet its heavy burden, the Government must establish that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks omitted). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307–08 (2012) (alteration accepted).

If the Government had truly represented, in no uncertain terms, that it would not revoke bond or otherwise re-detain Appellee during the pendency of his removal proceedings, then it may have an argument that the appeal is moot. But that has not happened. Accordingly, the appeal is not moot for three independent reasons.

---

[1] Appellee does not oppose the Government's request for an additional 30 days to file its opening brief.

- 10 -

First, contrary to the Government's position, the BIA's decision does not eliminate the possibility that Appellee may be further detained in violation of his First and Fifth Amendment rights because the Government may reverse its decision and seek to detain him. Second, the District Court's judgment afforded Appellee greater relief than the BIA's decision. Third, the issues raised on appeal are capable of repetition yet evading review.

### A. The BIA's Decision Does Not Protect Appellee from Unlawful Government Detention.

Although the Government represents that the BIA's affirmance effectively shields Appellant from detention, this is not so. The Government can, at any time, reverse or vacate the BIA's decision. The only relief Appellant has from further unlawful detention is the judgment that the Government is asking this Court to vacate. As a result, the judgment is not moot, and the appeal should not be dismissed.

Under immigration law, Respondent-Appellant Attorney General Bondi has the discretion to, at any time, order the BIA to refer Appellee's immigration matter to herself, reverse its decision, and order that Appellee be detained. 8 C.F.R. § 1003.1(h)(1)(i) (stating that the BIA must "refer to the Attorney General for review of its decision all cases that . . . [t]he Attorney General directs the Board to refer to h[er]."); 8 C.F.R. § 1003.1(d)(7)(i) (noting that the finality of a BIA decision is subject to an exception for "cases reviewed by the Attorney General").

- 11 -

There are no procedural or temporal limitations on the exercise of this authority. *See id.*; *see also Edwards v. U.S. Att'y Gen.*, 97 F.4th 725, 735–36 (11th Cir. 2024) ("[T]he Attorney General can review and overrule BIA decisions upon his own initiative, as he did here." (internal citation omitted)); *Ren v. Gonzales*, 440 F.3d 446, 448 (7th Cir. 2006) ("[I]f the Attorney General wants to withdraw a decision by the Board, whether thinking it erroneous or on any other ground, he can direct the Board to refer the case to him for review, thereby rendering the Board's decision nonfinal and hence not judicially reviewable." (internal citations omitted)). Indeed, the Attorney General has used this authority to reopen cases that are up to 13 years old. *See Matter of A-M-R-C*, 28 I&N Dec. 7 (A.G. 2020).

If Respondent-Appellant Bondi refers the matter to herself, she has broad discretion to reverse the BIA's decision or otherwise order the revocation of Appellee's bond. *See* 8 C.F.R. § 1003.1(h)(1)(i); *Matter of Thomas*, 27 I&N Dec. 674 (A.G. 2019) (overruling BIA precedent); *In re Jean*, 23 I&N Dec. 373 (A.G. 2002) (reversing BIA's grant of adjustment of status and asylum).

At least one court has recognized that the Attorney General's referral authority under §1003.1(h)(1) can result in non-citizens being detained "indefinitely" while their removal proceedings progress. *Arce v. Trump*, No. 8:25-CV-520, 2025 WL 2675934, at *4 (D. Neb. Sept. 18, 2025) (emphasis in original); *see* 8 C.F.R § 1003.19(i)(2). If this happens, "[t]he petitioner's detention, then, could last for

Appellate Case: 25-2516     Page: 13     Date Filed: 12/18/2025 Entry ID: 5590022

months or years under the automatic stay regulation, notwithstanding his significant interest in freedom from physical confinement." *Arce*, 2025 WL 2675934, at \*4.

Moreover, DHS's regulations purport to give DHS the authority to "revoke[]" the release of a non-citizen "at any time," re-detain him, and cancel his bond. 8 C.F.R. § 1236.1(c)(9).

Because the Government has not unequivocally represented that it will abstain from these actions if this appeal is dismissed, this controversy is not moot. *Compare Already, LLC v. Nike, Inc.*, 568 U.S. 85, 93 (2013) (mootness established because covenant not to sue was "unconditional and irrevocable"), *with Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016) (rejecting mootness where state regulators retained authority over plaintiff and provided only general assurances against future retaliation); *In re Interstate Bakeries Corp.*, 751 F.3d 955, 960–61 (8th Cir. 2014) (rejecting mootness argument because mootness proponent had "not given ironclad assurances" about recurrence of unlawful conduct); *Sierra Club v. U.S. Dep't of Transp.*, 125 F.4th 1170, 1180 (D.C. Cir. 2025) (rejecting mootness because agency did "not promise that it will never enforce the Rule"). Stated differently, absent the District Court judgment, the Government is completely "free to return to [its] old ways." *U.S. v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953).

For this reason, the Fourth and Sixth Circuits have rejected the exact argument the Government is making here. *Rosales-Garcia v. Holland*, 322 F.3d 386, 395–96

- 13 -

(6th Cir. 2003); *Miranda v. Garland*, 34 F.4th 338, 357 n.7 (4th Cir. 2022). In *Miranda*, the Fourth Circuit held that the release of a non-citizen during removal proceedings did not moot the government's appeal from an order granting a habeas petition because the government could revoke a bond "at any time" and "could rearrest" the non-citizen. 34 F.4th at 357 n.7 (internal quotation marks omitted). As explained by the Sixth Circuit, because a non-citizen's release can "be revoked" by the Attorney General "at any time for almost any reason," the BIA's affirmance of a bond order does not moot an appeal in a parallel habeas petition. *Rosales-Garcia*, 322 F.3d at 395–96. That is because the BIA's affirmance of the IJ's release decision "does not constitute a <u>termination</u> of detention; it simply constitutes a <u>reprieve</u> from detention." *Id.* at 396 (emphasis added). The Attorney General's ability to revoke Appellee's release means that he "is threatened with an actual injury traceable to [him] and likely to be redressed by a favorable judicial decision." *Id.* Accordingly, the "appeal is not moot." *Id.*

In arguing otherwise, the Government relies primarily on *Riley v. INS*, 310 F.3d 1253, 1257 (10th Cir. 2002), and *Simpson v. Camper*, 974 F.2d 1030 (8th Cir. 1992). Both are distinguishable.

In *Riley*, the Tenth Circuit was "somewhat concerned about the circumstances surrounding Appellant's release and the potential for the INS to resume Appellant's detention," explaining that the mootness "exception of voluntary cessation may be

- 14 -

applicable[.]" 310 F.3d at 1257. However, because the appellant did not provide any "development," the record was inadequate to support that proposition. *Id.* Accordingly, *Riley* is not helpful to the Court's analysis.

*Simpson* is even further afield. For one, it involved a state prisoner, not an immigrant in removal proceedings. *Simpson*, 974 F.2d at 1030. Moreover, the habeas petitioner in *Simpson* did not oppose the motion to dismiss as moot. *Id.* at 1031. More importantly, unlike in *Simpson*, the BIA decision here does not give Appellee "essentially the same relief that []he obtained in the District Court below." *Id.* The BIA decision simply affirms Appellee's release under a $7,500 bond. (Mot. at Ex. B.) Absent the judgment, the Government could still revoke Appellee's bond "at any time," including for reasons that the District Court already held unlawful. *See* 8 U.S.C. § 1226(b); 8 C.F.R. § 1236(c)(9). Unlike the judgment, the BIA decision does not purport to prevent the Government from revoking Appellee's bond based on his constitutionally-protected speech.

Because the judgment is the only judicially-binding Order preventing the Government from seeking Appellee's unlawful detainment—which it has never promised (or even suggested) that it would not pursue—this appeal is not moot.

### B. The Judgment Has Continuing Effect That is Not Mooted by the BIA Decision.

Further, a case is not moot when the judgment being challenged "will have a continuing effect" on the parties. *Firefighters Loc. Union No. 1784 v. Stotts*, 467

Appellate Case: 25-2516    Page: 16    Date Filed: 12/18/2025 Entry ID: 5590022

U.S. 561, 571 (1984); *U.S. v. Rhone*, 647 F.3d 777, 779 n.2 (8th Cir. 2011) (rejecting mootness because judgments created continuing legal consequences extending beyond immediate relief); *Townes v. Jarvis*, 577 F.3d 543, 547 (4th Cir. 2009) (rejecting mootness in habeas appeal because of continuing effects).

Here, the District Court judgment does not merely order Appellee released from confinement, it ordered that he "shall <u>remain</u> released from custody" during the pendency of his removal proceedings. (Doc. No. 36 at 17 (emphasis added).) This has a continuing effect on the Government because it precludes the Government from revoking bond during Appellee's removal proceedings absent his noncompliance with the bond conditions.

Moreover, the District Court's judgment provides substantially broader constitutional protection than the BIA's administrative bond decision, creating a live controversy that prevents mootness. While the BIA decision affirms release under bond that can be revoked at any time by the Attorney General, the District Court's constitutional ruling establishes that Appellee's detention violated the First and Fifth Amendments and the APA. The District Court's findings of constitutional violations provide precedential value and ongoing protection against future retaliatory enforcement that the administrative bond decision cannot provide. In addition, the District Court found that the Government has engaged in a systematic pattern of retaliatory immigration enforcement targeting international students for their

- 16 -

protected political speech. This pattern establishes that Appellee's detention was not an isolated incident, but part of a broader policy that could reasonably be expected to recur absent the judgment. These findings will ultimately bear on the outcome of the removal proceedings themselves, including that the Government initiated the removal proceedings based on First Amendment-protected speech. Accordingly, the appeal is not moot.

### C. The Issues Raised Are Capable of Repetition Yet Evading Review.

"A case that would otherwise be moot is not if (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Whitfield v. Thurston*, 3 F.4th 1045, 1047 (8th Cir. 2021) (citation modified). Both prongs are satisfied here.

First, BIA appeals are too short to allow noncitizens to fully litigate their wrongful detention through the habeas petition process, particularly when considering the lengthy appeal period involved. *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 227–28 (3d Cir. 2011) (applying the exception because "mootness would likely doom almost any attempt to challenge the lawfulness of pre-removal detention" in immigration cases), *overruling on other grounds recognized by Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018). Second, as set forth above, there is a reasonable expectation that Appellee would be subjected

- 17 -

to the same unlawful confinement if the district court judgment were vacated. *See Diop*, 656 F.3d at 228 ("[I]t is reasonable for Diop to fear that he might once again be the subject of lengthy removal proceedings and pre-removal detention at any time.").

Accordingly, both elements of the exception are satisfied, and the appeal is not moot.

## III. The *Munsingwear* Factors Weigh Against Vacatur.

Even if the appeal were moot, the Government has not established that the judgment should be vacated.

*Munsingwear* vacatur "is an equitable remedy, not an automatic right." *Moore v. Thurston*, 928 F.3d 753, 758 (8th Cir. 2019). Whether to grant vacatur "will depend heavily on the circumstances involved in each case." *Reid v. BCBSM, Inc.*, 787 F.3d 892, 895 (8th Cir. 2015). The party seeking relief from the judgment bears the "burden . . . to demonstrate not merely equivalent responsibility for the mootness, but equitable entitlement to the extraordinary remedy of vacatur." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994). "In determining whether vacatur is appropriate, absent unusual circumstances, [the Court's] decision is informed almost entirely, if not entirely, by the twin considerations of fault and public interest." *Moore*, 928 F.3d at 758 (internal quotation marks and citation omitted).

Appellate Case: 25-2516     Page: 19     Date Filed: 12/18/2025 Entry ID: 5590022

**A.  Any Perceived Mootness is the Fault of the Government.**

*Munsingwear*'s primary purpose is to prevent a party from obtaining a favorable judgment in the District Court and then mooting the appeal, effectively locking in a favorable judgment over which the losing party cannot obtain appellate review. *Azar v. Garza*, 584 U.S. 726, 729 (2018); *U.S. Bancorp Mortg. Co.*, 513 U.S. at 24 ("The principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action"); *see also Teter v. Lopez*, 125 F.4th 1301, 1311 (9th Cir. 2025) (VanDyke, J., dissenting in part). That concern is not present where, as here, the prevailing party (Appellee) is undisputedly not responsible for mootness.

Indeed, the Government is responsible for any mootness here. Vacatur is inappropriate when the losing party "decline[s] to pursue its appeal," settles the case, engages in something that "resembles settlement," or is otherwise responsible for mootness. *Panera, LLC v. Dobson*, 999 F.3d 1154, 1158 (8th Cir. 2021); *see also U.S. Bancorp Mortg. Co.*, 513 U.S. at 25–26. In such situations, "the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice." *U.S. Bancorp Mortg. Co.*, 513 U.S. at 25.

Appellate Case: 25-2516    Page: 20    Date Filed: 12/18/2025 Entry ID: 5590022

Here, the Government invoked a rarely used automatic stay provision to delay the BIA's review of the IJ's bond order and to keep Appellee detained during the appeal. Then, after the District Court granted Appellee's Petition, the Government sought—and obtained—90 days of extensions to file its appellate brief. Similarly, the Government waited more than one hundred days after the BIA issued its decision before filing this motion. These deliberate delays in adjudicating this case make vacatur inappropriate. *See Banyee v. Bondi*, 131 F.4th 823, 825 (8th Cir. 2025) (Stras, J., concurring) ("[W]iping the slate clean would create an obvious incentive for unhappy litigations to drag out" the appeal process).

Moreover, to the extent the Government were to represent that it will not revoke Appellee's bond—which it has never expressly done and is contrary to its previous position—such a representation would be tantamount to an abandonment of the Government's appeal or a settlement. *See, e.g., U.S. v. Payton*, 593 F.3d 881, 885 (9th Cir. 2010) (government's dismissal of charges following adverse decision was a "voluntary act of the party losing the decision now sought to be vacated," precluding vacatur). The Government has not been prevented from obtaining this Court's review of the adverse judgment below by "happenstance," (Mot. at 9), but rather by its own apparent conduct.

Thus, the Government created the circumstances that it now contends moot the appeal, and this factor weighs against vacatur.

**B.      The Public Interest is Served by Leaving the Judgment in Place.**

The public interest is also served by leaving the judgment in place, because it protects constitutional rights of non-citizens subject to removal proceedings. *U.S. Bancorp Mortg. Co.*, 513 U.S. at 26 ("Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." (internal quotation marks and citation omitted)).

In *SD Voice v. Noem*, this Court held that the public interest factor disfavored vacatur because the district court judgment "work[ed] to protect . . . core political speech where First Amendment protection is at its zenith." 987 F.3d 1186, 1190–91 (8th Cir. 2021) (citation modified). Similarly, in *Moore*—cited by the Government's motion—this Court rejected *Munsingwear* vacatur in a case challenging restrictions on voter speech, explaining that "the public interest is best served by a substantial body of judicial precedents limiting the burden" that may be placed on First Amendment rights. 928 F.3d at 758–59; *see also In re CenturyLink Sales Practices & Sec. Litig.*, 843 Fed. Appx. 825, 825–29 (8th Cir. 2021) (applying *Moore* and denying vacatur).

As the District Court explained, the issue in this case "is not merely the legality of a single student's detention, but whether the First and Fifth Amendments retain their full force when invoked by arguably the most vulnerable—noncitizens

- 21 -

Appellate Case: 25-2516     Page: 22     Date Filed: 12/18/2025 Entry ID: 5590022

in federal custody." (Doc. No. 36 at 2.) The District Court's judgment does not only affect Appellee; it contributes to a body of law invalidating the Government's unlawful retaliation against noncitizens for exercising their First Amendment rights. Indeed, the judgment addresses a matter of first impression and is being cited by courts across the country. *See, e.g.*, *Noori v. LaRose*, No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *11 (S.D. Cal. Oct. 1, 2025); *De Leon Hernandez v. Bondi*, No. 25-CV-1384, 2025 WL 3217037, at *2 (W.D. La. Nov. 18, 2025); *Leal-Hernandez v. Noem*, No. 1:25-CV-02428-JRR, 2025 WL 2430025, at *13 (D. Md. Aug. 24, 2025). Accordingly, the judgment serves the public interest and should not be vacated. *SD Voice*, 987 F.3d at 1191; *Moore*, 928 F.3d at 758–59; *In re CenturyLink Sales Practices & Sec. Litig.*, 843 Fed. Appx. at 828–29.

The Government does not argue otherwise. Although it uses the words "public interest" in its motion, its only argument is that the public interest is served because alleged "vagaries of circumstances" frustrate its ability to obtain appellate review. (Mot. at 13.) In other words, the Government "offer[s] no argument as to how vacatur here serves the public interest, instead arguing only how vacatur serves them." *SD Voice*, 987 F.3d at 1191. Accordingly, the Government has failed to establish its entitlement to vacatur.

Appellate Case: 25-2516    Page: 23    Date Filed: 12/18/2025 Entry ID: 5590022

<u>**CONCLUSION**</u>

For the foregoing reasons, the District Court's judgment is not moot and is, in fact, essential to the public interest. The Court should deny the Government's motion.

Dated: December 18, 2025

*/s/ Anupama D. Sreekanth*
**FREDRIKSON & BYRON, P.A.**
Joseph T. Dixon, III (#0283903)
Anupama D. Sreekanth (#0393417)
Amanda M. Mills(#0397685)
Rachel L. Dougherty (#0399947)
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Tel: (612) 492-7000

**ACLU OF MINNESOTA**
Teresa Nelson (#0269736)
Benjamin Casper (#0276145)
P.O. Box 14720
Minneapolis, MN 55414
Tel: (651) 529-1692

**THE ADVOCATES FOR HUMAN RIGHTS**
Zachary Albun (IL #6323553)
330 Second Ave South Ste. 800
Minneapolis MN, 55041
Tel: (612) 252-4444

*Attorneys for Petitioner-Appellee Mohammed Hoque*

- 23 -

Appellate Case: 25-2516    Page: 24    Date Filed: 12/18/2025 Entry ID: 5590022

# CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of December 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

Dated: December 18, 2025     By:  */s/ Anupama D. Sreekanth*
                                  Anupama D. Sreekanth

Appellate Case: 25-2516     Page: 25     Date Filed: 12/18/2025 Entry ID: 5590022

# CERTIFICATE OF COMPLIANCE

I hereby certify that on this document complies with the length limit of Fed. R. App. P. 27(d)(2)(A) because it contains 5,178 words. This document also complies with the requirements of Fed. R. App. P. 27(d)(1)(D)-(E). It was prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

Dated: December 18, 2025     By:    */s/ Anupama D. Sreekanth*
                              Anupama D. Sreekanth

25

Appellate Case: 25-2516    Page: 26    Date Filed: 12/18/2025 Entry ID: 5590022