No. 25-2516

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

MOHAMMED HOQUE,

Petitioner – Appellee,

v.

DONALD J. TRUMP, *et al.*,

Respondents – Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
District Court Case No. 25-cv-1576-JWB-DTS

APPELLANTS' REPLY TO APPELLEE'S OPPOSITION TO
APPELLANT'S MOTION FOR VACATUR AND DISMISSAL
UNDER *UNITED STATES V. MUNSINGWEAR*, 340 U.S. 36 (1950)

**BRETT A. SHUMATE**
**Assistant Attorney General**
**Civil Division**

**YAAKOV M. ROTH**
**Principal Deputy Assistant**
**Attorney General**

**DREW C. ENSIGN**
**Deputy Assistant Attorney General**
**Office of Immigration Litigation**

**LINDSAY B. GLAUNER**
**Assistant Director**

**CRAIG A. NEWELL, JR.**
**Senior Litigation Counsel**

**ZACHARY A. CARDIN**
**Trial Attorney**
**Office of Immigration Litigation**
**Civil Division**
**U.S. Department of Justice**

**INTRODUCTION**

This Court should grant Appellants' motion to vacate the underlying district court order and dismiss the case as moot under *United States v. Munsingwear*, 340 U.S. 36 (1950), because there is no longer any live dispute over the detention of Appellee Mohammed Hoque ("Hoque") for the remainder of his removal proceedings due to the intervening decision of the Board of Immigration Appeals ("Board"), affirming on the merits the Immigration Judge's determination to release Hoque from detention on bond. *See Already, LLC v. Nike, Inc*, 568 U.S. 85, 90-91, 13 (2013); *Missouri v. Craig*, 163 F.3d 482, 484 (8th Cir. 1998). Hoque's objections to the mootness of his habeas case and to the appropriateness of vacatur are without merit, and the Court should thus follow its "normal practice" of vacating the district court's order and directing the district court to dismiss the case as moot. *Moore v. Thurston*, 928 F.3d 753, 758 (8th Cir. 2019); *see Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 22 (2023) (stating that the Supreme Court's "*Munsingwear* practice is well settled").

**ARGUMENT**

**I.    The Board's decision renders Hoque's habeas case moot.**

Vacatur under *Munsingwear* is appropriate because Hoque's habeas case has become moot due to the happenstance occurrence of the Board's decision affirming the Immigration Judge's bond redetermination on the merits. *See*

2

*Munsingwear*, 340 U.S. at 39-40; *Panera, LLC v. Donson*, 999 F.3d 1154, 1158 (8th Cir. 2021). As Appellants stated without equivocation in their motion, the Board's decision precludes the Department of Homeland Security ("DHS") from re-detaining Hoque while his removal proceedings remain pending, and DHS cannot re-detain him absent a new factual or statutory predicate. *See* Appellants' Mot. at 2, 9. Because of this litigation position, Hoque's reliance on the speculative possibility of the Attorney General exercising her authority to certify the Board's decision to herself, *see* C.F.R. § 1003.1(h)(1)(i), does not overcome the mootness of his habeas case, *see Mille Lacs Band of Ojibwe v. Madore*, 128 F.4th 929, 941 (8th Cir. 2025) ("A speculative possibility is not a basis for retaining jurisdiction over a moot case.") (internal quotation marks and citation omitted).

Furthermore, Hoque's claim that DHS may nevertheless re-detain him during his removal proceedings, without a change in circumstances, is based on a misunderstanding of the procedures for immigration custody and release. Initially, DHS makes the determination to arrest and detain an alien for purposes of placing him in removal proceedings. *See* 8 C.F.R. §§ 236.1(b), (c), 1236.1(b), (c). The DHS officer, in his discretion, may authorize the release of the alien and may set bond and place conditions on his release, so long as the alien is not subject to mandatory detention and the officer is satisfied that the alien is not a danger to the

3

community or a flight risk.  *See* 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8).  If, however, the DHS officer decides to detain the alien and thus denies release on bond (or sets bond or conditions on release to which the alien objects), the alien may appeal that decision by filing a bond redetermination motion with the immigration judge, and if either the alien or DHS want to challenge the immigration judge's decision, that party may file an appeal with the Board.  *See* 8 C.F.R. §§ 236.1(d)(1), (3), 1003.19, 1236.1(d)(1), (3).  The immigration judge's decision granting release on bond, if not appealed by DHS, or the Board's decision affirming that decision, if like here DHS did appeal, constitutes an administratively final order, and absent some changed circumstance, that final order precludes DHS from re-detaining the alien.  *See, e.g.*, *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) (concluding that the alien's habeas petition was moot where the immigration judge granted release on bond, DHS did not appeal that decision to the Board, rendering "the IJ's order . . . administratively final," and "[t]hus, absent changed circumstances, such as reinvolvement with the criminal justice system, ICE cannot redetain"); *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981) (concluding that the issuance of the alien's deportation order and denial of his applications for relief and protection were "a considerable change in circumstances which justify the District Director's decision to raise the amount of bond").

4

Neither of the cases Hoque has relied upon—*Rosales-Garcia v. Holland*, 322 F.3d 386 (4th 2003), and *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022)—support his position that DHS may re-detain him during his removal proceedings absent any changed circumstances. In *Rosales-Garcia*, the Sixth Circuit concluded that Rosales' appeal of the district court's habeas decision was not moot based on a different factual and legal scenario than here—Rosales had been detained under the post-removal order detention authority in 8 U.S.C. § 1231(a), and, moreover, she was granted parole and release under the provisions of the Cuban Review Plan, which expressly provided the former INS with broad discretionary authority to grant and revoke parole for these certain Cuban nationals. *See* 322 F.3d at 395-96, n.7; *see also* 8 C.F.R. 212.12(b)(1), (h).

In *Miranda*, the Fourth Circuit concluded that, "under 8 U.S.C. § 1252(f)(1), the district court lacked jurisdiction to issue class-wide injunctive relief" regarding a class-action habeas challenge to the procedures for immigration bond hearings, 34 F.4th at 346, 357, but recognized that the district court retained jurisdiction to consider the individualized habeas claim of one of the three named plaintiffs, *see id*. at 357. Important for purposes of Hoque's case, the other two named plaintiffs accepted that their individual habeas claims were moot because they were released from detention after an Immigration Judge granted them relief or protection from removal. *See id*. at 348. As for the remaining plaintiff, his individual claim was

5

not moot because his supervised release from custody was only due to DHS complying with the underlying district court order and, if the Government was successful on appeal of that order, DHS would be able to exercise its discretion to re-detain him. *See id.* at 357, n.7. The key difference between that situation and those of the other two named plaintiffs, as well as Hoque, is that there was no intervening decision from an Immigration Judge or the Board that constrained DHS's actions, even if it was successful on appeal.

Hoque's reliance on the regulation at 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9), fares no better. That regulation states that "[w]hen an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of" certain supervisory-level DHS officers. 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9). Where, however, an alien has appealed DHS's initial custody determination and the Immigration Judge or the Board has intervened by granting release, that regulation does not govern and DHS may re-detain the alien only if there are changed circumstances to do so. *See, e.g.*, *Panosyan*, 854 F. App'x at 788; *Matter of Sugay*, 17 I. & N. Dec. at 640.

Therefore, the Board's intervening order precludes DHS from re-detaining Hoque for the remainder of his removal proceedings absent a change in the factual or statutory predicate for detention, just like the district court's order does, and that Board decision consequently renders it "impossible" for this Court to grant "any

effectual relief whatever" to the Government if it were to prevail on appeal. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992).

As a final point on mootness, the "capable of repetition, yet evading review" exception does not apply here. While the Board's decision mooted Hoque's case, "[i]t does not follow, however, that similar future cases will evade review." *Iowa Protection & Advocacy Serv's v. Tanager, Inc.*, 427 F.3d 541, 544 (8th Cir. 2005). Indeed, in other cases, the Board may vacate the Immigration Judge's grant of bond, and the alien's detention would remain in controversy. Furthermore, there is no "reasonable expectation that the *same complaining party* will be subjected to the *same action* again." *See Whitfield v. Thurston*, 3 F.4th 1045, 1047 (8th Cir. 2021) (cleaned up with emphasis added). As explained above, Hoque will not be subject to immigration detention again unless there are changed circumstances that will raise new factual and legal issues different from the ones that were before the district court.

## II. The Board's decision was an event of "happenstance," and thus the District Court order should be vacated.

The Board's decision constitutes an event of "happenstance" rendering the case moot through no fault of the Government. *Munsingwear*, 340 U.S. at 39-40; *see Panera*, 999 F.3d at 1158-59. This Court has recognized that "voluntary action" for purposes of determining a *Munsingwear* vacatur motion is a "narrow" concept, limited to circumstances where "mootness is the result of settlement or

*something that closely resembles settlement.*" *Panera*, 999 F.3d at 1158. The Board's decision in no way amounts to such unilateral voluntary action. DHS's invocation of the automatic stay provision, rather than seeking a discretionary stay of the Immigration Judge's bond redetermination, and DHS's appeal of that determination to the Board show that DHS vigorously maintained its litigation position that Hoque should be held in custody, and thus was not in any way seeking to settle or otherwise avoid further dispute on this matter. *See* ECF No. 21-2 at 13-26. Furthermore, DHS and the rest of the federal Appellants appealed the district court's order granting the habeas petition and ordering release, and intended to challenge that order if not for the intervening decision of the Board.

While Appellants apologize for the delay in filing this motion, time was necessary for counsel to determine the impact of the Board's decision on this case and to obtain approval to file this motion, and that time frame was very much frustrated by the 43-day lapse in appropriation to the Department of Justice that precluded work on this civil-litigation case. *See* 31 U.S.C. § 1342. Those circumstances, however, do not change the key fact for purposes of this motion

that Appellants "did not settle the case, not did [they] fail to appeal."[1] *Panera*, 999 F.3d at 1159 (internal quotation marks and citation omitted).

Hoque's contentions also neglect to recognize that the Board is a separate governmental actor from the governmental actor—DHS—that caused his detention and directly led to his habeas claim. The Board is an impartial administrative appellate body that exercises delegated authority from the Attorney General, and that delegated authority includes adjudicating appeals of bond redetermination decisions made by Immigration Judges. *See* Appellants' Mot. at 11-12. Here, the Board carried out those delegated duties when it dismissed DHS's appeal, resolving the issue of release on bond in Hoque's favor, *not based on any considerations for the litigation in his habeas case*, but rather based on the particular facts and applicable law in his case. *See* Appellants' Mot. at Ex. B. The Board's decision thus simply "resulted from the typical progression of events" for bond proceedings as established by regulation and agency precedent, and not from

---

[1] Likewise, the filing of this motion beyond the 14-day time frame in Eighth Circuit Rule 47A(b) neither negates this Court's lack of jurisdiction nor the fact that "[j]urisdiction is always the first and fundamental question" that this Court must answer in every case. *Great River Entm't, LLC v. Zurich Am. Ins. Co.*, 81 F.4th 1261, 1262 (8th Cir. 2023) (internal quotation marks and citations omitted); *see Faysound Ltd v. Falcon Jet Corp.*, 940 F.2d 339, 341 n.2 (8th Cir. 1991) ("As Fuller points out, the motion was untimely, not having been filed within 15 days of the docketing of the appeal. However, we have a duty to examine our own jurisdiction, and to do so on our own motion if necessary.") (citing 8th Cir. R. 47A(a), (b)).

any voluntary action sufficient to defeat a *Munsingwear* vacatur motion. *Hassoun v. Searls*, 976 F.3d 121, 131 (2d Cir. 2020) (internal quotation marks and citations omitted); *see also Alvarez v. Smith*, 558 U.S. 87, 87-88 (2009).

**III. The public interest weighs in favor of a vacatur.**

The public interest weighs in favor of a vacatur because the "vagaries of circumstances" have frustrated the Government's efforts to obtain appellate review of the district court's adverse ruling, and "fairness" counsels that the Government should not "be forced to acquiesce in [that] judgment." *Bancorp*, 513 U.S. at 25. Contrary to Hoque, the First-Amendment implications of the district court's order are not dispositive of the question of where the public interest lies. *Cf. SD Voice v. Noem*, 987 F.3d 1186 (8th Cir. 2021). There is an equally important public interest here in permitting the Government "to litigate [these] issues on a clean slate" in other cases. *Panera*, 999 F.3d at 1158.

Congress has broad authority over the admission and removal of aliens, and in exercising that authority, Congress has enacted statutory jurisdictional bars to district-court review of First Amendment challenges to immigration enforcement decisions. *See* 8 U.S.C. 1252(a)(5), (b)(9), (g), 1226(c); *Fiallo v. Bell*, 430 U.S. 787, 793 (1977) ("[T]he power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."); *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972)

10

("Over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens."). Disputes over the propriety of district court decisions, like here, that decline to apply those bars implicate Supreme Court precedent and persist as contentious issues in the federal courts. *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485-92 (1999) (holding that jurisdictional bar in 8 U.S.C. § 1252(g) precluded district court's review of First Amendment selective enforcement claim); *see, e.g.*, *Ozturk v. Hyde*, 155 F.4th 187, 189-90 (2d Cir. 2025) (Menashi, J., concurring in reh'g denial) ("The motions panel concluded that [the aliens' First Amendment retaliation] challenges to [their] 'immigration detention are independent of, or wholly collateral to, the removal process.' But that is wrong . . . . [DHS] detained [the petitioners] because of those proceedings. . . . Congress has—in three separate provisions of the INA—directed that courts may not entertain a habeas challenge under these circumstances because challenges to removal must be decided on a petition for review of a final order of removal.") (quoting *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025); *Mahdawi v. Trump*, 136 F.4th 443, 450 (2d Cir. 2025)). Given these circumstances, the Court should follow its "normal practice" by vacating the district court's order and remanding the case with directions to dismiss the action as moot. *See Munsingwear*, 340 U.S. at 39-40; *Panera*, 999 F.3d at 1158-59; *Moore*, 928 F.3d at 758.

11

# CONCLUSION

For the foregoing reasons and those in Appellants' motion, the Court should vacate the district court's decision and remand the case directing the district court to dismiss the case. Alternatively, the Court should grant Appellants 30 days to file the opening brief if it denies this motion.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General
Office of Immigration Litigation

LINDSAY B. GLAUNER
Assistant Director

/s/ Craig A. Newell, Jr.
CRAIG A. NEWELL, JR.
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 514-0298
Craig.Newell@usdoj.gov

ZACHARY A. CARDIN
Trial Attorney

Date: December 29, 2025          Attorneys for Appellants

**CERTIFICATE OF COMPLIANCE**

I certify, pursuant to Fed. R. App. P. 27(d), the foregoing reply is proportionally-spaced, has a Times-Roman typeface of 14-points, and contains 2,474 words.

    /s/ Craig A. Newell, Jr.
CRAIG A. NEWELL, JR.
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 514-0298

Date: December 29, 2025    Craig.Newell@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 29, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Craig A. Newell, Jr.
CRAIG A. NEWELL, JR.
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 514-0298
Craig.Newell@usdoj.gov