No. 25-2516

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

**MOHAMMED HOQUE,**

**Petitioner – Appellee,**

**v.**

**DONALD J. TRUMP, in his official capacity as
President of the United States, *et al.*,**

**Respondents – Appellants.**

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA
### District Court Case No. 25-cv-1576-JWB-DTS

## BRIEF FOR APPELLANTS - RESPONDENTS

**BRETT A. SHUMATE**
**Assistant Attorney General**
**Civil Division**

**YAAKOV M. ROTH**
**Principal Deputy Assistant**
**Attorney General**

**DREW C. ENSIGN**
**Deputy Assistant Attorney General**

**ALANNA T. DUONG**
**Senior Litigation Counsel**
**CRAIG A. NEWELL, JR.**
**Senior Litigation Counsel**
**Office of Immigration Litigation**
**Civil Division, Department of Justice**
**P.O. Box 878, Ben Franklin Station**
**Washington, DC 20044**
**(202) 514-0298**
**Attorneys for Appellants**

# SUMMARY OF THE CASE AND ORAL ARGUMENT STATEMENT

The Government has appealed the district court's order granting the habeas petition filed by Mohammed Hoque. The Court should grant the Government's motion to vacate that order and dismiss the case as moot under *United States v. Munsingwear*, 340 U.S. 36 (1950), because of the intervening decision of the Board of Immigration Appeals, affirming on the merits the Immigration Judge's grant of release on bond. Even if that motion is not granted, the Court should nevertheless vacate the district court's order because the district court erroneously exercised subject matter jurisdiction by accepting Hoque's characterization of his claims as being limited to his immigration detention. That characterization elevated form over substance. Hoque's claim that the Government retaliated against him because of his protected speech was fundamentally inseparable from his objections to the Department of Homeland Security's decision to commence removal proceedings based on the Department of State's revocation of his nonimmigrant student visa. Congress has barred district courts from reviewing claims challenging the commencement and merits of removal proceedings; instead, such challenges may be heard only upon the conclusion of those proceedings and only in a circuit court of appeals through a petition for review of a final order of removal. Hoque's habeas action was thus beyond the district court's jurisdictional reach. The Government requests oral argument of 15 minutes per side.

Appellate Case: 25-2516    Page: 2    Date Filed: 02/19/2026 Entry ID: 5609932

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

STATEMENT OF JURISDICTION.........................................................................3

STATEMENT OF THE ISSUES..............................................................................3

STATEMENT OF THE CASE.................................................................................5

    I.    Hoque's immigration and criminal history. ...........................................5

    II.    The revocation of Hoque's student visa and the commencement of his removal proceedings. ................................................................5

    III.    Hoque's bond proceedings before the Immigration Judge. ..................7

    IV.    Hoque's habeas petition and the district court's decision ................... 8

    V.    The Board's affirmance of the immigration judge's grant of bond and the Government's motion to vacate and dismiss under *Munsingwear*. ..................................................................................10

SUMMARY OF THE ARGUMENT ......................................................................11

    I.    The Court should vacate the district court's order and dismiss the case as moot under *Munsingwear* .............................................. 11

    II.    The district court lacked subject matter jurisdiction over Hoque's habeas claim under numerous jurisdictional bars in the INA ............ 12

    III.    In the alternative, the district court erroneously granted relief on a selective enforcement claim foreclosed by Supreme Court precedent………………………………………………………….14

ARGUMENT ........................................................................................................15

    I.    Applicable standards of review. .........................................................15

    II.    This Court should grant Appellants' motion to vacate the district court's order and dismiss the case as moot under *Munsingwear*. ..................................................................................16

i

III. The Immigration and Nationality Act precluded the district court from exercising subject matter jurisdiction over Hoque's habeas petition. ....................................................................19

    A. 8 U.S.C. § 1252(g) bars district court review of DHS's decision to commence removal proceedings. ..........................21

    B. 8 U.S.C. §§ 1252(a)(5) and (b)(9) channel Hoque's claims to the petition-for-review process before the Court of Appeals and thus further barred the district court's review. ...............................................................................31

    C. 8 U.S.C. § 1201(i) deprived the district court of jurisdiction to review the State Department's discretionary decision to revoke Hoque's student visa.............42

    D. 8 U.S.C. § 1226(e) deprived the district court of jurisdiction to review DHS's discretionary decision to detain Hoque. ...................................................................43

IV. In the alternative, the district court erred in granting Hoque's habeas petition on the merits of his claims. .......................................45

CONCLUSION ........................................................................................50

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ii

# TABLE OF AUTHORITIES

## CASES

*Ali v. Cangemi,*
  419 F.3d 722 (8th Cir. 2005) ........................................................ 16, 18

*Allen v. United States,*
  590 F.3d 541 (8th Cir. 2009) ...........................................................15

*Already, LLC v. Nike, Inc,*
  568 U.S. 85 (2013) ...........................................................................17

*Alvarez v. ICE,*
  818 F.3d 1194 (11th Cir. 2016) .......................................................29

*Arizona v. United States,*
  567 U.S. 387 (2012) .........................................................................46

*Arizonans for Official English v. Ariz.,*
  520 U.S. 43 (1997) ...........................................................................16

*Banyee v. Garland,*
  115 F.4th 928 (8th Cir. 2024) ..................................................... 47, 48

*Bolante v. Achim,*
  457 F. Supp. 2d 898 (E.D. Wis. 2006)..............................................43

*Borbot v. Warden Hudson Cty. Corr.,*
  *Fac.*, 906 F.3d 274 (3d Cir. 2018) ...................................................44

*Carlson v. Landon,*
  342 U.S. 524 (1952)..........................................................................47

*Church of Scientology of Cal. v. United States,*
  506 U.S. 9 (1992)..............................................................................17

*Clark v. Martinez,*
  543 U.S. 371 (2005)..........................................................................22

Appellate Case: 25-2516    Page: 5    Date Filed: 02/19/2026 Entry ID: 5609932

*Dahir Mohamed v. Bondi*,
  137 F.4th 692 (8th Cir. 2025) ...................................................................16

*Delgado v. Quarantillo*,
  643 F.3d 52 (2d Cir. 2011)................................................... 20, 34, 40

*Demore v. Kim*,
  538 U.S. 510 (2003)........................................................... 44, 47, 48

*Elgharib v. Napolitano*,
  600 F.3d 597 (6th Cir. 2010) .................................................24

*Ex parte McCardle*,
  7 Wall. 506 (1868) ...................................................................31

*Fiallo v. Bell*,
  430 U.S. 787 (1977)................................................................46

*Franklin ex rel. Franklin v. Peterson*,
  878 F.3d 631 (8th Cir. 2017) .................................................19

*Gonzalez-Alarcon v. Macias*,
  884 F.3d 1266 (10th Cir. 2018) .............................................34

*Great River Entm't, LLC v. Zurich Am. Ins. Co.*,
  81 F.4th 1261 (8th Cir. 2023) ................................... 15, 19, 20

*Harsono v. Akerson*,
  No. 25-2413, 2026 WL 88549 (8th Cir. Jan. 8, 2026)................................ 18, 19

*Hillsheim v. Holiday Stationstores, Inc.*,
  953 F.3d 1059 (8th Cir. 2020) ...............................................15

*Humphries v. Various Fed. USINS Emps.*,
  164 F.3d 936 (5th Cir. 1999) .................................... 25, 30

*INS v. Bagamasbad*,
  429 U.S. 24 (1976)...................................................................31

iv

*J.E.F.M. v. Lynch*,
   837 F.3d 1026 (9th Cir. 2016) ...............................................................33

*Jama v. INS*,
   329 F.3d 630 (8th Cir. 2003) ......................................................... 25, 26

*Jennings v. Rodriguez*,
   583 U.S. 281 (2018)......................................................... 39, 40, 41, 44

*Johnson v. Whitehead*,
   647 F.3d 120 (4th Cir. 2011) ..............................................................35

*Jones v. Jegley*,
   947 F.3d 1100 (8th Cir. 2020) ...........................................................40

*Khalil v. President, United States of America, et al.*
   164 F.4th 259 (3d Cir. 2026) ..................................................... 4, *passim*

*Kleindienst v. Mandel*,
   488 U.S. 753 (1972).............................................................................46

*Kumar v. Holder*,
   No. 12-cv-5261, 2013 WL 6092707 (E.D.N.Y. Nov. 18, 2013) ........................31

*Liadov v. Mukasey*,
   518 F.3d 1003 (8th Cir. 2008) ............................................................18

*Magee v. United States*,
   9 F.4th 675 (8th Cir. 2021) .................................................................19

*Mansfield, C. & L.M.R. Co. v. Swan*,
   111 U.S. 379 (1884)..............................................................................19

*Marks v. United States*,
   430 U.S. 188 (1977)..............................................................................40

*Martinez v. Napolitano*,
   704 F.3d 620 (9th Cir. 2012) ..............................................................34

Appellate Case: 25-2516    Page: 7    Date Filed: 02/19/2026 Entry ID: 5609932

*Meraz-Reyes v. Gonzales*,
436 F.3d 842 (8th Cir. 2006) ............................................................ 30, 44

*Mohammed H. v. Trump*,
781 F. Supp. 3d 886 (D. Minn. 2025) ............................................... 9, 10

*Mohammed H. v. Trump*,
786 F. Supp. 3d 1149 (D. Minn. 2025) .............................................. 3, 10

*Monsalvo v. Bondi*,
603 U.S. 712 (2025) .............................................................................. 32

*Moore v. Thurston*,
928 F.3d 753 (8th Cir. 2019) ............................................................. 16, 18

*Moss v. United States*,
895 F.3d 1091 (8th Cir. 2018) ............................................................. 19

*Ozturk v. Hyde*,
155 F.4th 187 (2d Cir. 2025) ............................................................. 28, 36

*Panera, LLC v. Dobson*,
999 F.3d 1154 (8th Cir. 2020) ................................................ 3, 16, 17, 18

*Pierre v. United States*,
525 F.2d 933 (5th Cir. 1976) ............................................................... 49

*Preiser v. Rodriguez*,
411 U.S. 475 (1973) .............................................................................. 24

*Rauda v. Jennings*,
55 F.4th 773 (9th Cir. 2022) ................................................................ 23

*Reiter v. Sonotone Corp.*,
442 U.S. 330 (1979) .............................................................................. 40

*Reno v. American-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999) ........................................................... 2, *passim*

Appellate Case: 25-2516      Page: 8      Date Filed: 02/19/2026 Entry ID: 5609932

*Rivera Hernandez v. Noem,*
  No. 25-326, 2025 WL 3754434 (E.D. Tex. Dec. 19, 2025) .................................49

*Rosario v. Holder,*
  627 F.3d 58 (2d Cir. 2010)................................................................. 26, 33

*Ruiz v. Mukasey,*
  552 F.3d 269 (2d Cir. 2009).....................................................................34

*Saadulloev v. Garland,*
  No. 3:23-cv-106, 2024 WL 1076106 (W.D. Pa. Mar. 12, 2024).........................29

*Silva v. United States,*
  866 F.3d 938 (8th Cir. 2017) ................................................... 4, *passim*

*Sissoko v. Rocha,*
  509 F.3d 947 (9th Cir. 2009) ...................................................................29

*Sittner v. Bowersox,*
  969 F.3d 846 (8th Cir. 2020) ...................................................................15

*Skurtu v. Mukasey,*
  552 F.3d 651 (8th Cir. 2008) ...................................................................34

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998)......................................................................... 19, 31

*Suri v. Trump,*
  No. 25-1560, 2025 WL 1806692 (4th Cir. July 1, 2025) ................................39

*Tazu v. Att'y Gen.,*
  975 F.3d 292 (3d Cir. 2020)....................................................................24

*Trump v. Hawaii,*
  585 U.S. 667 (2018)..............................................................................46

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship,*
  513 U.S. 18 (2021)................................................................................18

vii

*United States v. Munsingwear,*
  340 U.S. 36 (1950) ........................................................................ 2, *passim*

*United States v. Woods,*
  571 U.S. 31 (2013) ......................................................................... 40

*Vargas v. United States Dep't of Homeland Sec.,*
  No. 1:17-cv-356, 2017 WL 962420 (W.D. La. Mar. 10, 2017) ......................... 30

*Velasco Lopez v. Decker,*
  978 F.3d 842 (2d Cir. 2020) ............................................................. 44

*Wong Wing v. United States,*
  163 U.S. 228 (1896) ................................................................. 47, 48

*Zadvydas v. Davis,*
  533 U.S. 678 (2001) ....................................................................... 39

*Zundel v. Gonzales,*
  230 F. App'x 468 (6th Cir. 2007) ....................................................... 30

## **STATUTES**

### **Immigration and Nationality of 1952, as amended:**

Section 101(g)(2),
  8 U.S.C. § 1103(g)(2) ..................................................................... 18

Section 221(i),
  8 U.S.C. § 1201(i) ................................................................... 2, *passim*

Section 236(a),
  8 U.S.C. § 1226(a) ................................................................... 27, 43

Section 236(e),
  8 U.S.C. § 1226(e) .................................................................. 2, *passim*

Section 237(a)(1)(B),
  8 U.S.C. § 1227(a)(1)(B) ........................................................ 6, 7, 27, 42

Appellate Case: 25-2516    Page: 10    Date Filed: 02/19/2026 Entry ID: 5609932

Section 237(a)(1)(C)(i),
8 U.S.C. § 1227(a)(1)(C)(i)............................................................... 7, 27

Section 242,
8 U.S.C. § 1252............................................................. 22, 26, 31, 32

Section 242(a)(2)(D),
8 U.S.C. § 1252(a)(2)(D) .................................................................. 26, 33

Section 242(a)(5),
8 U.S.C. § 1252(a)(5).................................................................. 2, *passim*

Section 242(b)(9),
8 U.S.C. § 1252(b)(9) ................................................................. 2, *passim*

Section 242(d)(1),
8 U.S.C. § 1252(d)(1) ....................................................................32

Section 242(g),
8 U.S.C. § 1252(g) ..................................................................... 2, *passim*

## Other Federal Statutes:

28 U.S.C. § 1291 .........................................................................3

28 U.S.C. § 2254(b)(1)(A).............................................................37

## Minnesota State Statutes:

Minn. Stat. § 609.72.1 ................................................................. 5

## <u>RULES</u>

Fed. R. App. P. 4(a)(1)(B) ...........................................................3

## <u>REGULATIONS</u>

8 C.F.R. § 1003.1(a)(1)................................................................18

8 C.F.R. § 1003.1(d)(1)................................................................18

Appellate Case: 25-2516    Page: 11    Date Filed: 02/19/2026 Entry ID: 5609932

8 C.F.R. § 1003.6(c)(4)................................................................48

8 C.F.R. § 1003.14(a)..................................................................6

8 C.F.R. § 1003.19......................................................................7

8 C.F.R. § 1003.19(i)(2)..............................................................7

x

Appellate Case: 25-2516   Page: 12   Date Filed: 02/19/2026 Entry ID: 5609932

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

**MOHAMMED HOQUE,**

**Petitioner – Appellee,**

**v.**

**DONALD J. TRUMP, in his official capacity as
President of the United States, *et al.*,**

**Respondents – Appellants.**

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
District Court Case No. 25-cv-1576-JWB-DTS**

## BRIEF FOR APPELLANTS - RESPONDENTS

## INTRODUCTION

The district court elevated form over substance, ignoring the true target of Petitioner Mohammed Hoque's dispute—the decision of the Department of Homeland Security ("DHS") to commence removal proceedings based on the Department of State's decision to revoke his nonimmigrant student visa—and by doing so, ignored the plain language of numerous statutory bars on its jurisdiction.

1

Through the Immigration and Nationality Act ("INA"), Congress has barred district courts from reviewing claims, like Hoque's, challenging the commencement and merits of removal proceedings; instead, such challenges may be heard only upon the conclusion of those proceedings and only in a circuit court of appeals through a petition for review of a final order of removal. *See* 8 U.S.C. §§ 1201(i), 1226(e), 1252(a)(5), 1252(b)(9), 1252(g). Hoque must await the completion of his removal proceedings and channel his claims through the process that Congress determined was due to aliens like Hoque, rather than disrupt it as he has done so here. Therefore, even if this Court declines to grant Appellants' motion to vacate the district court's order and dismiss the case as moot under *United States v. Munsingwear*, 340 U.S. 36 (1950), the Court should nevertheless vacate the district court's order for lack of subject matter jurisdiction.

In the alternative, assuming the district court had jurisdiction, this Court should conclude that the district court erred when it granted Hoque's habeas petition on the merits. The district court granted relief on what amounted to a selective enforcement claim without even attempting to reconcile its outcome or analysis with the Supreme Court's clear instruction in *Reno v. American-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471 (1999), that such selective enforcement claims in the immigration context are generally not cognizable.

2

## STATEMENT OF JURISDICTION

On June 17, 2025, the district court granted the petition for a writ of habeas corpus filed by Hoque and ordered that he shall remain released from custody subject to the conditions previously imposed by the Immigration Judge, including the $7,500 bond. *See Mohammed H. v. Trump*, 786 F. Supp. 3d 1149 (D. Minn. 2025); Joint Appendix ("App.") 1012-1028, R. Doc. 36. On June 18, 2025, the district court entered the final judgment in the case. App. 1030, R. Doc. 37. The Government timely filed a notice of appeal on July 29, 2025, within 60 days of the district court's final judgment. Fed. R. App. P. 4(a)(1)(B). This Court has appellate jurisdiction under 28 U.S.C. § 1291, which provides the Court with jurisdiction over appeals of final decisions of the federal district courts.

## STATEMENT OF THE ISSUES

I.      Whether the Court should grant the Government's motion to vacate the district court's order and dismiss the case as moot under *Munsingwear*, where there is no longer any live controversy over Hoque's detention for the remainder of his removal proceedings due to the intervening decision of the Board of Immigration Appeals ("Board" or "BIA") affirming the Immigration Judge's order granting Hoque's release from custody on $7,500 bond.

Most Apposite Authorities: *United States v. Munsingwear*, 340 U.S. 36 (1950); *Panera, LLC v. Dobson*, 999 F.3d 1154, 1158 (8th Cir. 2020).

3

II. Whether the district court lacked subject matter jurisdiction over Hoque's habeas petition where: (1) all of his challenges to his immigration detention are connected directly and immediately to, and thus fundamentally inseparable from, DHS's discretionary decision to commence removal proceedings based on the Department of State's discretionary decision to revoke his student visa, and (2) the INA deprives the federal district courts of jurisdiction to entertain such claims and instead requires them to be heard only upon the conclusion of Hoque's removal proceedings and only in the appropriate circuit court of appeals through a petition for review of a final order of removal.

Most Apposite Authorities: 8 U.S.C. §§ 1201(i), 1226(e), 1252(a)(5), 1252(b)(9), 1252(g); *Reno v. AADC*, 525 U.S. 471 (1999); *Silva v. United States*, 866 F.3d 938 (8th Cir. 2017); *Khalil v. President, United States of America, et al.*, 164 F.4th 259 (3d Cir. 2026).

III. Alternatively, assuming the district court had jurisdiction, whether the district court erred when it granted Hoque's habeas petition on the merits, where his constitutional claims are foreclosed by the Supreme Court's decision in *Reno v. AADC.*, 525 U.S. 471 (1999), which held that selective enforcement claims in the immigration context are generally precluded, and where the challenged action underlying his Administrative Procedure Act ("APA") claim was not the cause of his immigration detention.

4

Most Apposite Authorities: U.S. Const. amends. I & V; *AADC*, 525 U.S. 471.

## STATEMENT OF THE CASE

**I.     Hoque's immigration and criminal history.**

Hoque is a 21-year-old native and citizen of Bangladesh, who was first admitted to the United States on August 12, 2021, as a F-1 nonimmigrant student visitor.  App. 357-58, R. Doc. 20-1 at 1-2; App. 376, R. Doc. 20-5 at 1.  His most recent admission into the United States as a nonimmigrant student visitor was on August 12, 2023, following a trip abroad to his native Bangladesh.  App. 31, R. Doc. 1 at 20; App. 353, R. Doc. 20 at 2.

On August 23, 2023, Hoque was convicted pursuant to his guilty plea to the offense of disorderly conduct under Minn. Stat. § 609.72.1, and he was sentenced to 90 days in county jail, stayed for one year.  App. 361-70, R. Doc. 20-2.  His other charged offense of assault in the fifth degree under Minn. Stat. § 609.224.1 was dismissed as part of his guilty plea.  App. 361, R. Doc. 20-2 at 1.

**II.    The revocation of Hoque's student visa and the commencement of his removal proceedings.**

On March 23, 2025, the Department of State, through the Bureau of Consular Affairs, exercised its discretionary authority under 8 U.S.C. § 1201(i) to revoke Hoque's nonimmigrant student visa, effective immediately, based upon information provided by DHS regarding the above-mentioned criminal charges and

5

Appellate Case: 25-2516     Page: 17     Date Filed: 02/19/2026 Entry ID: 5609932

an assessment that Hoque posed a threat to public safety. App. 372, R. Doc. 20-3.

Because of this revocation, Hoque is subject to removal from the United States

under 8 U.S.C. § 1227(a)(1)(B), as an alien "whose nonimmigrant visa . . . has

been revoked under section 1201(i)." 8 U.S.C. § 1227(a)(1)(B). App. 378-79, R.

Doc. 20-6.

On March 28, 2025, DHS officers arrested Hoque for the purpose of taking

him into custody for removal proceedings, and Hoque was accordingly placed in

detention at Freeborn County Jail in Albert Lea, Minnesota. App. 353-54, R. Doc.

20 at 2-3; App. 358, R. Doc. 20-1 at 2; App. 374-75, R. Doc. 20-4. The arresting

officers informed Hoque that his student visa had been revoked and served him

with an administrative arrest warrant, App. 353-54, R. Doc. 20 at 2-3, which

informed that DHS "determined that there is probable cause to believe that

HOQUE, MOHAMMED is removable from the United States . . . . based upon . . .

the execution of a charging document to initiate removal proceedings against the

subject," App. 374-75, R. Doc. 20-4.

That same day, DHS served Hoque with the charging document referenced

in the arrest warrant, *i.e.*, a Notice to Appear in removal proceedings. App. 354, R.

Doc. 20 at 3; App. 376-77, R. Doc. 20-5. DHS commenced removal proceedings

against Hoque by filing the Notice to Appear in the immigration court in Fort

Snelling, Minnesota. App. 376-77, R. Doc. 20-5; *see* 8 C.F.R. § 1003.14(a). As

Appellate Case: 25-2516    Page: 18    Date Filed: 02/19/2026 Entry ID: 5609932

the statutory basis for the proceedings, DHS alleged that Hoque is removable from the United States under 8 U.S.C. § 1227(a)(1)(B) because his "nonimmigrant visa was revoked under section 221(i) of the Act [8 U.S.C. § 1201(i)]." App. 378-79, R. Doc. 20-6; *see* App. 857, R. Doc. 27 at 2 (indicating that DHS withdrew its initial charge under 8 U.S.C. § 1227(a)(1)(C)(i)). Hoque's removal proceedings before the Immigration Judge remain pending.

### III. Hoque's bond proceedings before the Immigration Judge.

On April 9, 2025, after holding a hearing on Hoque's request for bond, the Immigration Judge issued a bond redetermination decision. App. 411-16, R. Doc. 21-2 at 4-9; *see* 8 C.F.R. § 1003.19 (regulation governing custody and bond redeterminations). The Immigration Judge determined that Hoque was not a danger to persons or property, but did present a flight risk, and thus ordered his release from custody on $7,500 bond. App. 411-16, R. Doc. 21-2 at 4-9; App. 441-42, R. Doc. 21-2 at 34-35.

One day later, DHS filed an administrative appeal of the Immigration Judge's order with the Board, arguing that Hoque failed to meet his burden of proving that he did not present a danger to persons or property given the circumstances of his conviction. App. 420-33, R. Doc. 21-2 at 13-26. DHS also filed with the Board the required notice to invoke the authority provided in 8 C.F.R. § 1003.19(i)(2) ("the automatic stay provision"), which had the effect of

7

Appellate Case: 25-2516     Page: 19     Date Filed: 02/19/2026 Entry ID: 5609932

automatically staying the Immigration Judge's order granting release on bond. App. 425-28, R. Doc. 21-2 at 18-21.

## IV. Hoque's habeas petition and the district court's decision.

On April 18, 2025, Hoque filed his habeas petition with the district court. App. 10-101, R. Doc. 1. He alleged a First Amendment retaliation claim, a violation of his Fifth Amendment right to due process, a violation of the Administrative Procedure Act ("APA") based on the termination of his Student and Exchange Visitor Information System ("SEVIS") record, and a request for the district court to exercise an "inherent" and "equitable" authority to authorize his release from immigration custody. App. 38-42, R. Doc. 1 at 27-31.

As the alleged basis for all of these claims, Hoque contended that the Government has established an alleged policy to "use the immigration system against lawfully present [aliens] who have engaged in constitutionally-protected speech and association, including speech supporting the human rights of Palestinians." App. 18, R. Doc. at 7. Hoque claimed that this alleged policy has been applied to: (1) "revoke the visa of international students in retaliation for their speech," citing as one of his examples the well-publicized case of Mahmoud Khalil, App. 22-23, R. Doc. at 11-12; (2) detain such aliens "in local jails and federal detention centers while they await administrative removal proceedings before immigration judges," App. 25, R. Doc. 1 at 14; (3) invoke the automatic

8

Appellate Case: 25-2516     Page: 20     Date Filed: 02/19/2026 Entry ID: 5609932

stay provision against such aliens in order to continue their detention, App. 26, R. Doc. 1 at 15; and (3) "arrest and det[ain] international students based on a purported visa revocation and/or SEVIS record," App. 29, R. Doc. 1 at 18. The "impermissible purpose" of this policy, Hoque alleged, was to "coerc[e] other students with lawful status to self-deport." App. 27, R. Doc. 1 at 16.

Furthermore, Hoque claimed that DHS applied this retaliatory policy against himself, by arresting and detaining him for his removal proceedings, by terminating his SEVIS record, and by continuing his detention under the automatic stay provision. App. 30-40, R. Doc. 1 at 19-29. As his prayer for relief, Hoque requested, *inter alia*, that the district court "[g]rant a writ of habeas corpus ordering [the Government] to immediately release Mr. Hoque from custody," and "enjoin [the Government] from *removing* Mr. Hoque on the basis of a determination made under the [alleged retaliatory] Policy." App. 43, R. Doc. 1 at 32 (emphasis added).

On April 21, 2025, the district court granted Hoque's motion for a temporary restraining order. App. 281-91, R. Doc. 15. On April 25, 2025, the Government filed its response to Hoque's habeas petition, opposing it on both jurisdictional grounds and the merits. App. 297-338, R. Doc. 17. On May 5, 2025, the district court issued an order granting Hoque's request for temporary release pending adjudication. App. 991-1007, R. Doc. 29; *see Mohammed H. v. Trump*, 781 F.

9

Supp. 3d 886 (D. Minn. 2025). One day later, Hoque posted the $7,500 bond and DHS released him from custody. App. 1010, R. Doc. 32 at 2.

On June 17, 2025, the district court granted Hoque's habeas petition and ordered that he shall remain released from custody subject to the conditions previously imposed by the Immigration Judge, including the $7,500 bond. App. 1012-28, R. Doc. 36; *see Mohammed H. v. Trump*, 786 F. Supp. 3d 1149 (D. Minn. 2025). In rejecting the Government's jurisdictional arguments, the district court determined that Hoque was not challenging "any discretionary decisions," *i.e.*, the State Department's revocation of his student visa or DHS's commencement of removal proceedings, but rather was challenging "the legality of his detention, nothing more," and the court thus ruled that it retained "habeas jurisdiction over constitutional challenges to immigration detention." App. 1015-17, R. Doc. 36 at 4-6; *see* App. 996-97, R. Doc. 29 at 6-7.

On June 18, 2025, the district court entered its final judgment in the case. App. 1029, R. Doc. 37. This timely appeal followed.

**V.      The Board's affirmance of the immigration judge's grant of bond and the Government's motion to vacate and dismiss under *Munsingwear*.**

On August 27, 2025, during the pendency of this appeal, the Board issued a final order in which it dismissed DHS's bond appeal and affirmed on the merits the immigration judge's order granting Hoque release from custody on $7,500 bond. *See* Appellants' Mot. to Vacate and Dismiss at Ex. B. Because of this intervening

Appellate Case: 25-2516      Page: 22      Date Filed: 02/19/2026 Entry ID: 5609932

event, the Government moved to vacate the district court's order and dismiss the case as moot under *Munsingwear*.  Appellants' Mot. to Vacate and Dismiss.  Hoque filed an opposition to the motion, to which Appellants replied.  Appellee's Opp'n; Appellants' Reply.  On January 6, 2026, this Court ordered the Government's *Munsingwear* motion to be "taken with the case" for consideration by the panel to which this case is submitted for disposition on the merits.  *See* Jan. 6, 2026 Court order.

## SUMMARY OF THE ARGUMENT

**I.     The Court should vacate the district court's order and dismiss the case as moot under *Munsingwear*.**

This Court should grant Appellants' motion to vacate the district court order and dismiss the case as moot under *Munsingwear*, because there is no longer any live dispute over the detention of Hoque for the remainder of his removal proceedings due to the intervening Board decision, affirming on the merits the Immigration Judge's determination to release Hoque from detention on bond. Acting as an impartial agency adjudicator, the Board provided Hoque with essentially the same relief from custody that he obtained from the district court, and its intervening order precludes DHS from re-detaining Hoque for the remainder of his removal proceedings, absent changed circumstances.  The intervening Board decision thus renders Hoque's habeas action moot, and this

11

Appellate Case: 25-2516     Page: 23     Date Filed: 02/19/2026 Entry ID: 5609932

Court should follow its normal practice of vacating the district court's order and directing the district court to dismiss the case as moot.

**II.     The district court lacked subject matter jurisdiction over Hoque's habeas claim under numerous jurisdictional bars in the INA.**

If the Court declines to grant the *Munsingwear* motion, the Court should nevertheless vacate on jurisdictional grounds the district court's erroneous decision granting Hoque's habeas petition. Congress has made it clear that district courts do not have jurisdiction to review the Executive's authority to commence removal proceedings against an alien or the merits of any factual and legal questions that may be raised in those proceedings. Yet, the district court erroneously determined that it had subject matter jurisdiction to review the Executive's authority to detain and place Hoque in removal proceedings under the guise that his claims challenged only the legality of his detention.

First, 8 U.S.C. § 1252(g) makes clear that district courts lack jurisdiction "to hear any cause or claim"—including habeas petitions and constitutional claims— "arising from the decision or action . . . to commence removal proceedings." The district court ignored this jurisdictional bar by erroneously accepting Hoque's characterization of his claims as being limited to a challenge to his detention over which the court retained habeas jurisdiction. Contrary to that characterization, Hoque's challenge is inextricably linked to, and thus fundamentally inseparable from, his ultimate objection to DHS's discretionary decision to commence removal

12

proceedings based on the Department of State's discretionary decision to revoke his student visa. Thus, at bottom, Hoque's claim falls squarely within the reach of section 1252(g)'s jurisdictional bar.

Second, 8 U.S.C. §§ 1252(a)(5) and (b)(9) also precludes the district court from exercising jurisdiction to review challenges related to the question of Hoque's removal. Congress created an exclusive path requiring "all *questions of law* and fact . . . arising from any action taken or proceeding brought to remove an alien," 8 U.S.C. § 1252(b)(9) (emphasis added), to be heard only upon the conclusion of removal proceedings and only in a circuit court of appeals through a petition for review of a final order of removal. Recently, the Third Circuit in *Khalil* held that 8 U.S.C. § 1252(b)(9) precluded the district court's jurisdiction over habeas claims substantially similar to those raised by Hoque.

Third, the INA's exclusive path for judicial review is further confirmed by another statutory provision—8 U.S.C. § 1201(i)—which provides the Secretary of State with the discretionary authority to revoke a visa and precludes judicial review except through removal proceedings. Here, Hoque's claim that the Government retaliated against him because of his purported protected speech is inextricably intertwined with the issue of whether the State Department lawfully revoked his visa, which was effective immediately, and whether he should be removed because

13

of that revocation. Indeed, the visa revocation provided the legal basis and was the catalyst for DHS's discretionary decision to commence removal proceedings.

Fourth, the jurisdictional bar in the detention statute in 8 U.S.C. § 1226(e) provides another basis for precluding the district court's review. That provision, coupled with the other above-mentioned provisions, shows that Congress intended to limit habeas review of immigration detention to challenges unrelated to the alien's removal proceedings, such as challenges to prolonged detention. Hoque, however, did not raise that type of reviewable detention-specific challenge. Instead, he objected to DHS's discretionary decision to detain him for purposes of his removal proceedings; that decision falls squarely within section 1226(e)'s prohibition on judicial review of discretionary judgments regarding detention, as well as the jurisdictional bars in sections 1252(b)(9) & (g) given its direct connection to the decision to commence removal proceedings.

In sum, the district court obscured the true nature of Hoque's dispute and ignored the plain language of these statutory provisions. Therefore, the district court lacked subject matter jurisdiction, and the Court should reverse the district court's decision on that dispositive basis.

### III. In the alternative, the district court erroneously granted relief on a selective enforcement claim foreclosed by Supreme Court precedent.

Alternatively, even assuming the district court had jurisdiction, the district court nevertheless erred in finding that the Government violated the First and Fifth

14

Amendments and the APA in deciding to detain Hoque for his removal proceedings. The district court granted relief on what amounted to a selective enforcement claim without even attempting to reconcile its outcome or analysis with the Supreme Court's clear instruction in *AADC* that such selective enforcement claims in the immigration context are generally not cognizable. By failing to consider *AADC*'s directive against such claims, the district court ignored the presumption of regularity afforded to the Executive over its exercise of prosecutorial discretion in the enforcement of the Nation's immigration laws.

## ARGUMENT

### I.    Applicable standards of review.

Mootness is a question of subject matter jurisdiction that this Court considers *de novo*. *See Hillsheim v. Holiday Stationstores, Inc.*, 953 F.3d 1059, 1061 (8th Cir. 2020). Likewise, this Court reviews *de novo* the district court's determination of subject matter jurisdiction. *See Great River Entm't, LLC v. Zurich Am. Ins. Co.*, 81 F.4th 1261, 1262 (8th Cir. 2023); *Silva*, 866 F.3d at 939; *Allen v. United States*, 590 F.3d 541, 544 (8th Cir. 2009). In the unlikely event the Court finds that the district court properly exercised jurisdiction, the Court should review the district court's findings of fact for clear error and its conclusions of law *de novo*. *See Sittner v. Bowersox*, 969 F.3d 846, 849 (8th Cir. 2020); *see also*

15

*Dahir Mohamed v. Bondi*, 137 F.4th 692, 695 (8th Cir. 2025) (constitutional claims arising out of the removal context are reviewed *de novo*).

**II.     This Court should grant Appellants' motion to vacate the district court's order and dismiss the case as moot under *Munsingwear*.**

For the reasons shown in Appellants' motion and reply, the Court should vacate the district court's order and remand the case to the district court with directions to dismiss the action as moot. *See* Appellants' Mot. to Vacate and Dismiss; Appellants' Reply. When a case becomes moot "through happenstance" before this Court issues a decision on appeal, the Court will generally vacate the district court's judgment below and remand with directions to dismiss the case. *Munsingwear*, 340 U.S. at 39-40; *see Panera*, 999 F.3d at 1158 ("In similar cases of mootness, both our precedent and that of the Supreme Court typically favor vacating the lower court's judgment."); *Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005) (vacating under *Munsingwear* the district court's judgment in a habeas case where Court found case to be moot). While "vacatur is an equitable remedy, not an automatic right," granting vacatur is this Court's "normal practice" because "doing so 'clears the path for future litigation' by eliminating a judgment the loser was stopped from opposing on direct review." *Moore v. Thurston*, 928 F.3d 753, 758 (8th Cir. 2019) (quoting *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 71 (1997), which in turn was quoting *Munsingwear*, 340 U.S. at 40).

Appellate Case: 25-2516     Page: 28     Date Filed: 02/19/2026 Entry ID: 5609932

Hoque's habeas case is moot because there is no longer any live dispute over his detention for the remainder of his removal proceedings due to the intervening Board decision, affirming on the merits the Immigration Judge's determination to release him from detention on bond. *See Already, LLC v. Nike, Inc*, 568 U.S. 85, 90-91, 13 (2013). The Board's intervening order precludes DHS from re-detaining Hoque for the remainder of his removal proceedings absent a change in the factual or statutory predicate for detention, just like the district court's order does, and that Board decision consequently renders it "impossible" for this Court to grant "any effectual relief whatever" to the Government on appeal.[1] *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992); *see* Appellants' Mot. to Vacate and Dismiss at 9-10; Appellants' Reply at 2-7.

Furthermore, the Board's decision was not a unilateral voluntary action by the Government functionally equivalent to a settlement, but rather an event of "happenstance" rendering the case moot through no fault of the Government. *Munsingwear*, 340 U.S. at 39-40; *see Panera*, 999 F.3d at 1158-59; Appellants' Mot. to Vacate and Dismiss at 11-12; Appellants' Reply at 7-10. The Board is a separate governmental actor from the governmental actor—DHS—that caused

---

[1] As the Government acknowledged, the subsequent re-detention of Hoque on January 15, 2026, was in error, and DHS promptly released Hoque that same day once that error was discovered. *See Hoque v. Trump*, 25-1576 (D. Minn.), Resp. Memo and Decl. (filed Jan. 30, 2026).

17

Hoque's detention; DHS prosecutes the removal of aliens, while the Board serves as an impartial administrative appellate body that exercises delegated authority from the Attorney General. *See* 8 U.S.C. § 1103(g)(2); 8 C.F.R. § 1003.1(a)(1), (d)(1); *see also Liadov v. Mukasey*, 518 F.3d 1003, 1008 (8th Cir. 2008). The Board carried out those delegated duties here when it dismissed DHS's appeal of the Immigration Judge's bond redetermination decision, resolving the issue of release on bond in Hoque's favor based on the particular facts and applicable law in his case. *See* Appellants' Mot. to Vacate and Dismiss at Ex. B.

Because the "vagaries of circumstances" have frustrated the Government's efforts to obtain appellate review of the district court's adverse ruling, *see U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (2021)), it is in the public interest for this Court to follow its "normal practice" and vacate the district court's decision under *Munsingwear* and remand with directions for the district court to dismiss the case as moot, *see Munsingwear*, 340 U.S. at 39-40; *Panera*, 999 F.3d at 1158-59; *Moore*, 928 F.3d at 758; *Ali*, 419 F.3d at 724; *see also see* Appellants' Mot. to Vacate and Dismiss at 13; Appellants' Reply at 10-11. Indeed, in *Harsono v. Akerson*, which Hoque has acknowledged "present[s] the same issue of law" as his own case, Appellee's Jan. 7, 2026 letter, this Court granted the Government's motion to vacate and dismiss as moot under *Munsingwear*. *See*

18

*Harsono v. Akerson*, No. 25-2413, 2026 WL 88549 (8th Cir. Jan. 8, 2026). The Court should do the same here.

### III. The Immigration and Nationality Act precluded the district court from exercising subject matter jurisdiction over Hoque's habeas petition.

If the Court declines to grant the *Munsingwear* motion, the Court should nevertheless vacate the district court's decision on jurisdictional grounds, because the district court's ruling on the merits of Hoque's claims contravenes numerous jurisdictional bars in the INA. "Jurisdiction is always the 'first and fundamental question' of this Court." *Great River Entm't, LLC*, 81 F.4th at 1262 (quoting *Franklin ex rel. Franklin v. Peterson*, 878 F.3d 631, 635 (8th Cir. 2017), which in turn was quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co.*, 523 U.S. at 94-95 (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). "The burden of proving the existence of subject matter jurisdiction rests with the party invoking federal jurisdiction." *Magee v. United States*, 9 F.4th 675, 680 (8th Cir. 2021) (quoting *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018)).

The district court erred in answering that "first and fundamental question," because the court exercised subject matter jurisdiction over Hoque's habeas petition in contravention of numerous jurisdictional bars set forth in the INA. *See*

19

*Great River Entm't, LLC*, 81 F.4th at 1262. To do so, the district court accepted Hoque's characterization of his claims as being limited to his immigration detention. *See* App. 1015-17, R. Doc. 36 at 4-6; *see* App. 996-97, R. Doc. 29 at 6-7. That characterization, however, elevated form over substance. DHS's decision to detain Hoque was "connected directly and immediately to," *Silva*, 866 F.3d at 940, and thus was fundamentally inseparable from, DHS's unreviewable decision to commence removal proceedings based on the State Department's unreviewable decision to revoke his student visa. *See* App. 353-54, R. Doc. 20 at 2-3; App. 358, R. Doc. 20-1 at 2; App. 372, R. Doc. 20-3; App. 374-79, R. docs. 20-4, 20-5, 20-6. Indeed, his claim that the Government applied a retaliatory policy against him cannot just be cabined to his detention, as it is "inextricably linked to" the question of his removal on the grounds charged by DHS. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). The district court's ruling on the merits of Hoque's claims thus effectively amounted to a premature and improper judicial review of DHS's efforts to remove him from the United States.

As shown below, Congress has enacted numerous jurisdiction-stripping provisions in the INA barring the federal district courts from conducting such judicial review. *See* 8 U.S.C. §§ 1201(i), 1226(e), 1252(g). Congress, through the INA, instead requires Article III judicial review of questions regardless removal to occur only after completion of removal proceedings and only upon the filing of a

20

petition for review of a final order of removal with the appropriate circuit court of appeals. *See* 8 U.S.C. §§ 1252(a)(5) & (b)(9). Hoque must channel his claims through the process that Congress determined was due to aliens like Hoque, rather than disrupt it as he has done so here. Thus, regardless of how it is styled, Hoque's habeas action challenges the Executive's efforts *to remove him* from the United States, and the district court lacked jurisdiction over that challenge.

### A. 8 U.S.C. § 1252(g) bars district court review of DHS's decision to commence removal proceedings.

The plain language of 8 U.S.C. § 1252(g) eliminates federal district court jurisdiction, including habeas jurisdiction, over challenges to the commencement of removal proceedings, and, regardless of its framing, Hoque's claim that he was subjected to a retaliatory governmental policy due to his protected speech falls squarely within that bar because it "arise[es] from the decision [and] action" to "commence proceedings." 8 U.S.C. § 1252(g). Congress made clear in section 1252(g) that "notwithstanding any other provision of law (statutory or *nonstatutory*), including *section 2241 of title 28*, or *any other habeas corpus provision* . . . no court shall have jurisdiction to hear *any cause or claim* by or on behalf of any alien *arising from the decision or action* by the Attorney General *to commence proceedings*, adjudicate cases, or execute removal orders against any

21

Appellate Case: 25-2516    Page: 33    Date Filed: 02/19/2026 Entry ID: 5609932

alien under this chapter."[2]  8 U.S.C. § 1252(g) (emphasis added).  Judicial review

of such claims are permitted only through the procedures set forth in 8 U.S.C.

§ 1252, *see* 8 U.S.C. § 1252(g) ("Except as provided in this section . . .), which

require the alien to await the issuance of a final order of removal and then file a

petition for review with the appropriate circuit court of appeals, *see* 8 U.S.C.

§§ 1252(a)(5) & (b)(9).  Thus, section 1252(g) precludes the district court from

exercising habeas jurisdiction over claims, like Hoque's, arising from DHS's

decision to commence removal proceedings.

In *AADC*, the Supreme Court held that the prior version of 8 U.S.C.

§ 1252(g) barred constitutional claims substantially similar to those brought by

Hoque.  *See AADC*, 525 U.S. at 487-92.  There, the plaintiff aliens, which included

some lawful permanent residents, had alleged that the "INS was selectively

enforcing the immigration laws against them in violation of their First and Fifth

Amendment rights," *id*. at 473-74, arguing that a lack of immediate judicial review

in the district court would have a "chilling effect" on their First Amendment rights,

*id*. at 488.  Beyond those allegations, the case also included an express "admission

by the Government that the alleged First Amendment activity was the basis for

---

[2]  The Attorney General once exercised all of that authority, but much of that authority has been transferred to the Secretary of Homeland Security.  *See Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).  Many of the INA's references to the Attorney General are now understood to refer to the Secretary.  *Id.*

Appellate Case: 25-2516    Page: 34    Date Filed: 02/19/2026 Entry ID: 5609932

selecting the individuals for adverse action." *Id*. at 488 n.10.  Nonetheless, the Supreme Court held that the plaintiffs' "challenge to the Attorney General's decision to 'commence proceedings' against them falls squarely within § 1252(g)." *Id*. at 487.

In this seminal decision on section 1252(g), the Supreme Court explained that this jurisdictional bar is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9.  Congress designed 8 U.S.C. 1252(g) for the purpose of protecting the Executive's discretion and avoiding the "deconstruction, fragmentation, and hence prolongation of removal proceedings." *Id.* at 487; *see, e.g.*, *Rauda v. Jennings*, 55 F.4th 773, 777-78 (9th Cir. 2022) ("Limiting federal jurisdiction in this way is understandable because Congress wanted to streamline immigration proceedings by limiting judicial review to final orders, litigated in the context of petitions for review.").  In short, 8 U.S.C. § 1252(g) protects the Executive's authority to make "discretionary determinations" over whether and when to commence removal proceedings against an alien, "providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *AADC*, 525 U.S. at 485.

23

In 2005, Congress strengthened section 1252(g)'s jurisdictional limitations by expressly precluding habeas corpus review. *See* REAL ID Act of 2005, Pub. L. 109-13, § 106(a), 119 Stat. 231, 311. By expanding section 1252(g) to include habeas jurisdiction—which by its very nature is meant to challenge the legality of detention—Congress clearly intended to preclude review of DHS's decision to detain an alien for the purposes of "commenc[ing] proceedings, adjudicat[ing] cases, or execut[ing] removal orders against any alien." 8 U.S.C. § 1252(g); *see Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody.").

Congress' 2005 revision of section 1252(g) also reinforced *AADC's* understanding of that jurisdiction bar as applying to constitutional claims and challenges. *See* 525 U.S. at 487-92. Congress did so by specifying that this provision bars both "statutory and nonstatutory" claims. 8 U.S.C. § 1252(g); *see Tazu v. Att'y Gen.*, 975 F.3d 292, 296 (3d Cir. 2020) ("Whether the claim is constitutional or statutory, no other court . . . has jurisdiction to hear it."); *Elgharib v. Napolitano*, 600 F.3d 597, 602-04 (6th Cir. 2010) (concluding that section 1252(g)'s "'any other provision of law (statutory or nonstatutory)' includes the U.S. Constitution").

This Court's decision in *Silva v. United States*, 866 F.3d 938 (8th Cir. 2017), provides particularly useful instruction for determining whether a claim is "arising

24

from" any of the three unreviewable decisions or actions of DHS listed in 8 U.S.C. § 1252(g). In *Silva*, this Court affirmed the district court's holding that section 1252(g) precluded its jurisdiction to review the alien's challenge to DHS's decision to execute his removal order, even though the alien characterized his challenge as a claim that DHS violated the regulation staying his removal pending his administrative appeal before the Board. *See id*. at 940-91. This Court concluded that "[a] claim that is 'connected directly and immediately' to a decision to execute a removal order arises from that decision," and is thus covered by section 1252(g). *Id*. at 940 (quoting *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 943 (5th Cir. 1999). Applying that construction, the *Silva* Court determined that, "[a]lthough the execution of this removal order happened to be in violation of a stay, the alien's claims [regarding that regulatory violation] are directly connected to the execution of the removal order." *Id.* The Court acknowledged its earlier decision in *Jama v. INS*, 329 F.3d 630 (8th Cir. 2003), which "essentially carved out an exception to § 1252(g) for a habeas claim raising a pure question of law" apparently due to potential Suspension Clause concerns. *Silva*, 866 F.3d at 941 (citing *Jama*, 329 F.3d at 633). Even if that exception still applied, the Court determined that "*Jama*'s rationale does not warrant excepting these claims," which "arise from a decision to execute a removal order" and do not "present a habeas

25

claim that raises a purely legal question of statutory construction."[3] *Id*. at 941. Therefore, the Court affirmed the district court's conclusion "that it lacked jurisdiction to hear Lopez Silva's claims, because they arise from a decision to execute a removal order." *Id*. at 942.

Here, Hoque alleged that DHS arrested and detained him pursuant to a retaliatory governmental policy in violation of the First and Fifth Amendments and the APA, *see* App. 30-42, R. Doc. 1 at 19-31, and the district court accepted this narrow characterization of his claim, *see* App. 1015-17, R. Doc. 36 at 4-6. But the direct catalyst for DHS's decision to arrest and detain Hoque was DHS's discretionary decision to commence removal proceedings based on the State Department's discretionary revocation of his student visa. *See* App. 353-54, R.

---

[3] *Jama*'s exception to 8 U.S.C. § 1252(g) does not apply to Hoque's case as it pertains to Suspension Clause concerns regarding the pre-2005 version of that statute. *See* 329 F.3d at 633. The *Jama* Court's concerns were fully resolved by Congress' subsequent amendments to 8 U.S.C. § 1252 enacted through the REAL ID Act of 2005. Those amendments make clear that: (1) "a purely legal question of statutory construction" that the *Jama* Court believed were excepted from section 1252(g), 329 F.3d at 633, actually does fall within section 1252(g)'s jurisdictional bar, *see supra* at 24; and (2) there is no Suspension Clause issue with section 1252(g) because the REAL ID Act also amended the petition-for-review process by adding 8 U.S.C. § 1252(a)(2)(D), which ensures that aliens have an avenue for challenging all constitutional claims and questions of law related to removal through that process, *see Rosario v. Holder*, 627 F.3d 58, 61 (2d Cir. 2010) ("The REAL ID Act of 2005 amended the [INA] to obviate . . . Suspension Clause concerns" by permitting judicial review of "nondiscretionary" BIA determinations and "all constitutional claims or questions of law."). In any event, just like in *Silva*, Hoque's fact-based retaliation claim does not fall within *Jama*'s narrow exception for "a purely legal question of statutory construction." 866 F.3d at 941.

26

Doc. 20 at 2-3; App. 358, R. Doc. 20-1 at 2; App. 372, R. Doc. 20-3; App. 374-79, R. docs. 20-4, 20-5, 20-6.  Indeed, all of those decisions by the Executive Branch occurred within only five days of each other.  *See* App. 353-54, R. Doc. 20 at 2-3; App. 358, R. Doc. 20-1 at 2; App. 372, R. Doc. 20-3; App. 374-79, R. docs. 20-4, 20-5, 20-6.  And each decision provided the factual and legal predicate for the next.[4]  *See* 8 U.S.C. § 1201(i) (Secretary of State's authority to revoke visa); § 1227(a)(1)(B) (statutory authority to remove alien whose nonimmigrant visa has been revoked); § 1226(a) (statutory authority to arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States").

Furthermore, Hoque's own allegations regarding the Government's purported retaliatory policy underlying all of his claims show that his objections extend beyond his immigration detention; instead, they also reach the decision to "revoke the visa of international students in retaliation for their speech," App. 22-23, R. Doc. at 11-12, the decision to "arrest and det[ain] international students based on a purported visa revocation and/or SEVIS record," App. 29, R. Doc. at

---

[4]  Contrary to the district court's view on the order of these events, *see* App. 999, R. Doc. 29 at 9, the State Department's revocation of Hoque's student visa was always the motivating factor for DHS's arrest, detention, and commencement of proceedings; the current removal charge under 8 U.S.C. § 1227(a)(1)(B) is just a more precise charge for Hoque's situation than the initial, and more generalized, removal charge under 8 U.S.C. § 1227(a)(1)(C)(i) for failure to maintain or comply with nonimmigrant status.  *See* App. 376-77, R. Doc. 20-5 (Notice to Appear); App. 378-79, R. Doc. 20-6 (Additional Removal Charge Notice).

Appellate Case: 25-2516   Page: 39   Date Filed: 02/19/2026 Entry ID: 5609932

18, the decision to detain such aliens "in local jails and federal detention centers while they await administrative removal proceedings before immigration judges," App. 25, R. Doc. 1 at 14, and the decision to invoke the automatic stay provision against such aliens in order to continue their detention, App. 26, R. Doc. at 15.

Hoque also requested the district court, not just to order his release from custody, but to "enjoin [the Government] from *removing* Mr. Hoque on the basis of a determination made under the [alleged retaliatory] Policy." App. 43, R. Doc. 1 at 32 (emphasis added). Despite this explicit request to enjoin his removal and the overall interwoven nature of his allegations, Hoque's petition and the district court's decision gave the impression that his "challenges to immigration detention are independent of, or wholly collateral to, the removal process." *Ozturk v. Hyde*, 155 F.4th 187, 189-90 (2d Cir. 2025) (Menashi, J., concurring in reh'g denial) (internal quotation marks and citations omitted). "But that is wrong" because the chronological facts, the applicable law, and Hoque's own allegations show that he was "detained in anticipation of removal." *Id*. DHS "did not detain [Hoque] for any reason independent of its decision to commence removal proceedings. It detained [him precisely] because of those proceeding," and he has not "alleged a reason for his . . . detention that is not also the reason for the government's decision to commence removal proceedings." *Id*.

28

Upon considering the factual, legal, and temporal connections between these events, as well as Hoque's own acknowledgement of their interconnected nature, it becomes clear that DHS's decision to detain Hoque was part and parcel of its decision to commence removal proceedings. In other words, Hoque's habeas challenges to DHS's decision to detain him are "connected directly and immediately to"—and fundamentally inseparable from—DHS's discretionary decision to commence proceedings. *Silva*, 866 F.3d at 940; *see, e.g.*, *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) (concluding that 8 U.S.C. § 1252(g) bars review of the alien's "challenges to ICE's decision to take him into custody and to detain him during removal proceedings" because "[t]hose allegations similarly arise from ICE's decision to commence proceedings"); *Sissoko v. Rocha*, 509 F.3d 947, 949 (9th Cir. 2009) ("[W]e conclude that Sissoko's detention arose from Rocha's decision to commence expedited removal proceedings. As a result, 8 U.S.C. § 1252(g) applies to the Sissokos' [false arrest Fourth Amendment] claim."); *Saadulloev v. Garland*, No. 3:23-cv-106, 2024 WL 1076106, *3 (W.D. Pa. Mar. 12, 2024) ("The Government's decision to arrest Saadulloev, clearly is a decision to 'commence proceedings' that squarely falls within the jurisdictional bar of § 1252(g). Every act of which Saadulloev complains flowed directly from the agents' discretionary decision to commence removal proceedings and the actions those agents took to effectuate that decision."). And Hoque cannot bypass section

29

1252(g)'s jurisdictional bar to claims arising from that decision by way of artful pleading. *See Meraz-Reyes v. Gonzales*, 436 F.3d 842, 843 (8th Cir. 2006) (explaining that the "petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an [unreviewable] argument in [reviewable] garb.").

Therefore, Hoque's claim that the Government detained and commenced removal proceeding against him as retaliation in violation of the First Amendment, Fifth Amendment, and the APA falls squarely within section 1252(g)'s reach, and the district court erred by failing to apply that jurisdictional bar. *See, e.g.*, *AADC*, 525 U.S. at 487-92 (holding that 8 U.S.C. § 1252(g) deprived district court of jurisdiction over claim that certain aliens were targeted for deportation in violation of the First Amendment.); *Zundel v. Gonzales*, 230 F. App'x 468, 475 (6th Cir. 2007) (explaining that First Amendment challenge related to immigration enforcement action "is properly characterized as a challenge to a discretionary decision to 'commence proceedings' . . . [and] is insulated from judicial review"); *Humphries*, 164 F.3d at 945 (holding that 8 U.S.C. § 1252(g) prohibited review of petitioner's First Amendment claim based on decision to put him into exclusion proceedings); *Vargas v. United States Dep't of Homeland Sec.*, No. 1:17-cv-356, 2017 WL 962420, at *3 (W.D. La. Mar. 10, 2017) (concluding that petitioner's claim that ICE "violated her First Amendment right to free speech by arresting her and initiating her removal after she made statements to the media . . . is barred by

Appellate Case: 25-2516     Page: 42     Date Filed: 02/19/2026 Entry ID: 5609932

8 U.S.C. § 1252(g).”); *Kumar v. Holder*, No. 12-cv-5261, 2013 WL 6092707, at \*6 (E.D.N.Y. Nov. 18, 2013) (concluding that petitioner's claim that removal proceedings were initiated in a retaliatory manner "falls squarely within Section 1252(g)," and explaining that his "pending immigration proceedings are the appropriate forum for addressing petitioner's retaliation claim in the first instance."). Because this lack of jurisdiction is fatal, the Court should reverse the district court's erroneous decision on this basis alone. *See Steel Co.*, 523 U.S. at 94 ("'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'") (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)); *see also INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

**B. 8 U.S.C. §§ 1252(a)(5) and (b)(9) channel Hoque's claims to the petition-for-review process before the Court of Appeals and thus further barred the district court's review.**

The district court also erred when it found that 8 U.S.C. §§ 1252(a)(5) and (b)(9) did not preclude it from reviewing Hoque's claims. In 8 U.S.C. § 1252, Congress channeled all legal and factual questions—including constitutional ones—that may arise from the removal of an alien into the INA's removal process,

31

Appellate Case: 25-2516     Page: 43     Date Filed: 02/19/2026 Entry ID: 5609932

with judicial review of those decisions vested exclusively in the courts of appeals. *See AADC*, 525 at 483. Under that streamlined process, an alien must exhaust his challenges first in his immigration court proceedings and then on administrative appeal before the Board, *see* 8 U.S.C. § 1252(d)(1), and if the alien is subjected to a final order of removal upon conclusion of his removal proceedings, he may then seek judicial review of all legal, constitutional, or factual questions pertaining to his removal by filing a petition for review with the appropriate circuit court of appeals, *see* 8 U.S.C. §§ 1252(a)(5), (b)(9); *see also Monsalvo v. Bondi*, 603 U.S. 712, 723 (2025) ("Section 1252 permits individuals to petition for judicial review of 'final orders of removal' and indicates that those petitions supply the exclusive means for securing '[j]udicial review of all questions of law.'") (quoting 8 U.S.C. § 1252(b)(9)).

8 U.S.C. § 1252(b)(9) provides that "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceedings brought to remove an alien* from the United States . . . shall be available only in judicial review of a final order" through the petition-for-review process before the courts of appeals. 8 U.S.C. § 1252(b)(9) (emphasis added). That section further emphasizes that, "[e]xcept as otherwise provided in [8 U.S.C. § 1252], "no court shall have jurisdiction by habeas corpus . . . or by any other provision of law (statutory or nonstatutory) to review such an

32

order or such questions of law or fact." *Id.* Given this statutory language, the Supreme Court has described section 1252(b)(9) as an "unmistakable 'zipper' clause" that "channels judicial review of *all* [claims arising from deportation proceedings]" to a court of appeals in the first instance. *AADC*, 525 U.S. at 483. Likewise, 8 U.S.C. § 1252(a)(5) mandates that "a petition for review filed with an appropriate court of appeals shall be the sole and exclusive means for judicial review of an order of removal entered or issued" in removal proceedings. 8 U.S.C. § 1252(a)(5).

"Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue— whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition-for-review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). And the petition-for-review process before the court of appeals, with its provision preserving review of questions of law and constitutional claims, *see* 8 U.S.C. § 1252(a)(2)(D), ensures that aliens have a proper forum for claims arising from their immigration proceedings so that they may "receive their 'day in court,'" *J.E.F.M.*, 837 F.3d at 1031-32; *see Rosario*, 627 F.3d at 61 ("The REAL ID Act of 2005 amended the [INA] to obviate . . . Suspension Clause concerns" by permitting judicial review of "nondiscretionary" BIA determinations and "all constitutional claims or questions of law.").

Appellate Case: 25-2516    Page: 45    Date Filed: 02/19/2026 Entry ID: 5609932

Therefore, sections 1252(a)(5) and 1252(b)(9) cover any challenge that is "inextricably linked to" either a final order of removal or the removal process that precedes any removal order, thereby requiring those claims to be brought through the petition-for-review process and consequently prohibiting them from being brought in separate actions before a district court. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011); *see Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1275 (10th Cir. 2018) ("Although Gonzalez-Alarcon seeks release from detention, his claim is based on the alleged invalidity of his removal order."); *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) ("When a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is inextricably linked to the order of removal, it is prohibited by section 1252(a)(5)."). The corollary of that prohibition is that district courts may have subject matter jurisdiction over immigration-based habeas petitions or civil complaints only when the action is "unrelated to any removal action or proceeding." *Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009); *see Skurtu v. Mukasey*, 552 F.3d 651, 657 (8th Cir. 2008) (noting that, after the REAL ID Act of 2005, "challenges to detention that are *independent of* challenges to removal orders" are addressed in habeas claims) (emphasis added).

Here, Hoque's retaliation claims under the Constitution and the APA challenged the legality of DHS's decision to detain him *for purposes of his*

34

*removal proceedings*, thus meaning any legal question regarding that challenged detention decision arose from the government's efforts to remove him based on the revocation of his student visa. *See* 8 U.S.C. § 1252(b)(9) (channeling "[j]udicial review of all questions of law . . . arising from any action taken or proceeding brought to remove an alien" through the petition-for-review process). Because "Congress has specifically prohibited the use of habeas corpus petitions as a way of obtaining review of questions arising in removal proceedings," a future "petition for review, not his habeas corpus petition, is the proper means of seeking redress." *Johnson v. Whitehead*, 647 F.3d 120, 124 (4th Cir. 2011) (concluding that court lacked jurisdiction over petitioner's habeas petition because "the issue of Johnson's citizenship arose in his removal proceedings").

The Third Circuit's recent decision in *Khalil v. President, United States of America, et al.*, 164 F.4th 259 (3d Cir. 2026), is particularly instructive on the issue of the applicability of 8 U.S.C. § 1252(b)(9) to Hoque's case. Indeed, Hoque himself referenced Mr. Khalil as an example of another individual subjected to the same alleged retaliatory policy he believed was applied against him. *See* App. 22-23, R. Doc. at 11-12. Khalil raised habeas claims under the First Amendment, Fifth Amendment, and the APA, claiming that the Government unlawfully detained him because of this alleged retaliatory policy, and the district court determined that it had jurisdiction over those claims. *See Khalil*, 164 F.4th at

35

266-67.  The Third Circuit, however, held that the district court lacked subject matter jurisdiction over all of those claims because "the INA channels '[j]udicial review of all questions of law . . . arising from any action taken or proceeding brought to remove an alien from the United States' into a single petition for review filed with a federal court of appeals."  *Id.* at 265 (quoting 8 U.S.C. § 1252(b)(9)).  The Third Circuit determined that Khalil's "claims raise *legal questions* challenging the government's very basis for trying to remove (and thus detaining) him," and that those "questions are not 'wholly collateral' to the removal process," but rather, "'inextricably linked' to it."  *Id*. at 274 (quoting *Ozturk*, 155 F.4th at 191-92 (Menashi, J., concurring in denial of rehearing en banc)).

The Third Circuit rejected Khalil's assertion that his "claims are now-or-never ones [that must be addressed at the present time in a habeas action and cannot wait for a petition for review ("PFR")] because his *injuries* are ongoing and his rights are being violated now."  *Khalil*, 164 F.4th at 274.  The Third Circuit determined that, "to avoid getting channeled to a PFR, a claim must raise now-or-never *questions*, [*i.e.*, "legal or factual *questions* that a court of appeals will not later be able to review meaningfully on a PFR,"] not just now-or-never harms."  *Id*. at 275.  To support that reading of section 1252(b)(9), the Third Circuit reasoned that: (1) the statutory language is focused on the judicial review of "all *questions* of law and fact" that arise from the removal process; (2) the

36

"subsection's title bolsters [its] reading of the text" as it "covers '[c]onsolidation of *questions* for judicial review,' not 'claims'"; and (3) the Supreme Court described the "statute's purpose . . . as a 'zipper clause,' channeling 'most claims that even relate to removal' into PFRs." *Id*. (quoting 8 U.S.C. § 1252(b)(9), and *AADC*, 525 U.S. at 483). The Third Circuit further reasoned that "[l]etting petitioners raise now-or-never injuries through habeas based on claims that can be litigated later would subvert that channeling scheme" and "would encourage the very 'piecemeal litigation that § 1252(b)(9) is designed to prevent." *Id*.

The Third Circuit also rejected the notion that this reading "renders meaningful review hollow, since a PFR court cannot later redress harms incurred from, say, unconstitutional immigration detention." *Khalil*, 164 F.4th at 275. As that court explained, "our legal system routinely forces petitioners—even those with meritorious claims—to wait to raise their arguments," citing the example of an innocent defendant who was convicted of a serious crime due to his counsel's ineffective assistance, and who, despite being wrongfully convicted, cannot "seek immediate release through habeas," but instead "must first exhaust his direct appeal." *Id*. (citing 28 U.S.C. § 2254(b)(1)(A)). The Third Circuit further reasoned that "Congress has the power to balance concerns with the orderly adjudication of claims with concerns about remedying harms from illegal

37

detention," and the "balance that Congress struck in § 1252(b)(9) requires bringing legal questions later if they can be answered later." *Id*. at 275-76

As for Khalil's claims under the First Amendment, Fifth Amendment, and the APA, the Third Circuit concluded that "addressing any of those claims [in habeas] would require deciding whether removing Khalil would be unlawful—the very issue decided through the PFR process." *Khalil*, 164 F.4th at 276. The Third Circuit explained that, although Khalil challenged his detention itself as punitive, "his arguments against it are identical to," and "repackage[d]" versions of, "his arguments against removal," noting that Khalil—*just like Hoque did here*—alleged that "the government's policy includes both detaining and deporting its targets." *Id*. at 276-77 (internal quotation marks and citations omitted). "Because the arguments Khalil has offered to challenge the detention necessarily challenge the government's decision to commence removal proceedings," the Third Circuit concluded, "the PFR court will be able to review those legal questions once the Board enters a final order of removal." *Id*. at 276 (internal quotation marks and citation omitted). The Third Circuit thus admonished that "Khalil cannot plead around § 1252(b)(9) by calling his challenge to removal a challenge to his detention." *Id*. at 277.

Because Hoque has attempted to do the same thing here, this Court should likewise conclude that 8 U.S.C. § 1252(b)(9) precluded the district court from

38

Appellate Case: 25-2516    Page: 50    Date Filed: 02/19/2026 Entry ID: 5609932

exercising subject matter jurisdiction. *See Khalil*, 164 F.4th at 265-66, 275-77, 281. That conclusion "vindicate[s] essential principles of habeas and immigration law," by recognizing that the "scheme Congress enacted governing immigration proceedings provides [Hoque] a meaningful form in which to raise his claims later on—in a petition for review of a final order of removal." *Id*. at 265-66. As aptly put by the Third Circuit, the INA's channeling "scheme ensures that petitioners get just one bite at the apple—not zero or two" and thus requires "some petitioners, like Khalil" and Hoque, "to wait to seek relief from allegedly unlawful government conduct." *Id*. at 281.

The district court's reliance on *Jennings v. Rodriguez*, 583 U.S. 281 (2018), and *Zadvydas v. Davis*, 533 U.S. 678 (2001), to reach the opposite outcome are misplaced. *See* App. 1015-17, R. Doc. 36 at 4-6. *Jennings* and *Zadvydas* are inapposite because those cases involved detention-specific habeas claims of *prolonged* detention unrelated to the question of removal. *See Jennings*, 583 U.S. at 292-95 (raising prolonged detention claim challenging the Government's authority to detain during removal proceedings); *Zadvydas*, 533 U.S. at 683 (raising prolonger detention claim challenging the Government's authority to detain after the post-removal detention period expires); *see also Suri v. Trump*, No. 25-1560, 2025 WL 1806692, *11 (4th Cir. July 1, 2025) (Wilkinson, J., dissenting) (explaining that "*Zadvydas* . . . is inapposite because it concerned a

Appellate Case: 25-2516     Page: 51     Date Filed: 02/19/2026 Entry ID: 5609932

challenge to the government's authority to indefinitely detain, not the government's discretionary decision to detain under the circumstances here.").  As the plurality decision in *Jennings* explained, section 1252(b)(9) did not bar the Court from considering the plaintiffs' prolonged detention claim because the plaintiffs were "not challenging the decision to detain them in the first place" or "challenging any part of the process by which their removability will be determined."[5]  583 U.S. at 294-95; *see Khalil*, 164 F.4th at 278 ("The [*Jennings*]

---

[5]  The *Jennings* plurality—which presents "the narrower reading" of "the proper scope of section 1252(b)(9)"—forecloses the district court's suggested interpretation of that provision as being limited to claims pertaining to an already entered final order of removal.  *See Khalil*, 164 F.4th at 278 ("The *Jennings* plurality would let district courts adjudicate some, but not all, habeas challenges arising from actions taken before entry of a final order of removal."); *Jones v. Jegley*, 947 F.3d 1100, 1106 (8th Cir. 2020) ("[W]hen 'no single rationale explaining the result enjoys the assent of five Justices,' the holding of the Court is the 'position taken by those Members who concurred in the judgments on the narrowest grounds.'") (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977). Indeed, by its own operative terms, this statutory provision covers "*all* questions of law or fact . . . arising from any action taken or proceeding brought to remove an alien," and limits judicial review of "such an order [of removal] *or* such questions of law or fact."  8 U.S.C. § 1252(b)(9) (emphasis added); *see United States v. Woods*, 571 U.S. 31, 45 (2013) ("[T]he operative terms are connected by the conjunction 'or.'  While that can sometimes introduce an appositive—a word or phrase that is synonymous with what precedes it ('Vienna or Wien,' 'Batman or the Caped Crusader')—its ordinary use is almost always disjunctive, that is, the words it connects are to 'be given separate meanings.'") (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979))."  Thus, section 1252(b)(9) covers any challenge that is "inextricably linked to" *either* a final order of removal *or* the removal process that precedes a removal order.  *Delgado*, 643 F.3d at 55.

"plurality's reading of § 1252(b)(9) binds us," as it provides the "narrower reading" of "the proper scope of § 1252(b)(9).").

Here, in contrast, Hoque challenged DHS's "decision to detain [him] in the first place," and, whether he admits it or not, he also challenged a "part of the process by which [his] removability will be determined" because the nature of his allegations against the Government shows that his objections reach the question of his removability based on the State Department's visa revocation. *Jennings*, 583 U.S. at 294; *cf. Khalil*, 164 F.4th at 277 ("In essence, he argues that his detention is impermissible retaliation and unlawful because it depends on the unconstitutionally vague foreign policy ground. So his 'punitive detention' claim rises or falls with the others. We judge pleadings not by their labels, but by their substance."). Hoque's claims, therefore, raise questions regarding his removal and are not the type of length-or-conditions-of-confinement detention claim outside the scope of section 1252(b)(9)'s channeling provision. *See Khalil*, 164 F.4th at 277 (recognizing that detention claims challenging the length or conditions of confinement fall outside scope of section 1252(b)(9)). For these reasons, 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) provide additional statutory grounds for finding that the district court erred in exercising subject matter jurisdiction.

41

**C.    8 U.S.C. § 1201(i) deprived the district court of jurisdiction to review the State Department's discretionary decision to revoke Hoque's student visa.**

8 U.S.C. § 1201(i) expressly delegates to the Secretary of State and consular officers the discretionary authority to revoke a visa, and it also mandates that there "shall be no means of judicial review" of that revocation, including habeas review, mandamus review, and All Writs Act review, "except in the context of removal proceedings if such revocation provides the sole ground for removal." 8 U.S.C. § 1201(i). All of Hoque's claims are inextricably intertwined with the State Department's visa revocation, as that revocation provided the legal basis and was the motivating factor for DHS's decisions to arrest, detain, and commence removal proceedings against Hoque. *See* App. 30-42, R. Doc. 1 at 19-31; App. 353-54, R. Doc. 20 at 2-3; App. 358, R. Doc. 20-1 at 2; App. 372, R. Doc. 20-3; App. 374-79, R. docs. 20-4, 20-5, 20-6.

As Hoque has been charged with removal under 8 U.S.C. § 1227(a)(1)(B) solely based on the visa revocation, section 1201(i) provides further confirmation that Congress intended Hoque's claims to be addressed only upon the conclusion of his removal proceedings and only through the filing of a petition for review of a final order of removal with the appropriate circuit court of appeals. *See* 8 U.S.C. §§ 1201(i), 1252(a)(5), 1252(b)(9). Thus, the plain language of 8 U.S.C. § 1201(i) barred the district court from exercising jurisdiction over Hoque's challenge to the

42

Appellate Case: 25-2516    Page: 54    Date Filed: 02/19/2026 Entry ID: 5609932

basis for his detention via his habeas action. *See, e.g.*, *Bolante v. Achim*, 457 F. Supp. 2d 898, 902 (E.D. Wis. 2006) ("The legality of petitioner's detention depends on the resolution of such issues as whether the government lawfully revoked his visa and whether he is removable from the United States and, as indicated above [*i.e.*, 8 U.S.C. § 1201(i) and other jurisdictional bars in the INA], I am precluded from reviewing those issues.").

**D.     8 U.S.C. § 1226(e) deprived the district court of jurisdiction to review DHS's discretionary decision to detain Hoque.**

8 U.S.C. § 1226(e) serves as yet another jurisdictional bar that precludes district court review of Hoque's claims.  Hoque was detained under 8 U.S.C. § 1226(a), which authorizes detention pending a final decision in removal proceedings. *See* 8 U.S.C. § 1226(a) (authorizing DHS to arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States").  Section 1226(e), in turn, bars judicial review of DHS's discretionary decision to detain an alien for purposes of his removal proceedings.  It provides: "The Attorney General's *discretionary judgment* regarding the application of this section shall not be subject to review.  No court may set aside *any action or decision* by the Attorney General under this section *regarding the detention* of any alien or the revocation or denial of bond or parole."  8 U.S.C. § 1226(e) (emphasis added).

Appellate Case: 25-2516     Page: 55     Date Filed: 02/19/2026 Entry ID: 5609932

While it is true that section 1226(e) does not bar habeas challenges to the length or conditions of confinement or to the statutory framework permitting detention without bail, *see Jennings*, 583 U.S. at 295-96; *Demore v. Kim*, 538 U.S. 510, 517 (2003), its plain language makes clear that it divests the district court of jurisdiction to review claims, like Hoque's, challenging DHS's "discretionary judgment" and "decision" to detain an alien for his removal proceedings rather than permit him to remain at liberty for those proceedings. 8 U.S.C. § 1226(e); *cf. Borbot v. Warden Hudson Cty. Corr. Fac.*, 906 F.3d 274, 279 (3d Cir. 2018) (not applying § 1226(e) because the petitioner challenged the statutory framework for detention rather than "a particular action or decision"); *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (determining that § 1226(e) did not bar review because the petitioner did not challenge "his initial detention"). And neither the district court nor Hoque were permitted to circumvent this jurisdictional bar by cloaking his objection in constitutional and legal garb. *See Khalil*, 164 F.4th at 277; *Meraz-Reyes*, 436 F.3d at 843.

*     *     *

In sum, numerous jurisdictional bars in the INA precluded the district court from exercising subject matter jurisdiction over Hoque's habeas claims. *See* 8 U.S.C. §§ 1201(i), 1226(e), 1252(a)(5), 1252(b)(9), 1252(g). The district court elevated form over substance, ignoring the true target of Hoque's dispute—DHS's

44

decision to commence removal proceedings based on the State Department's decision to revoke his nonimmigrant student visa—and by doing so, ignored the plain language of these statutory bars on its jurisdiction. Therefore, this Court should reverse the district court's decision on appeal and remand with instructions to dismiss Hoque's habeas petition for lack of jurisdiction.

## IV. In the alternative, the district court erred in granting Hoque's habeas petition on the merits of his claims.

Alternatively, even assuming the district court had jurisdiction, the district court nevertheless erred in finding that the Government violated the First Amendment, Fifth Amendment, and the APA, in deciding to detain Hoque for his removal proceedings. The district court granted relief on what amounted to a selective enforcement claim without even attempting to reconcile its outcome and analysis with the Supreme Court's clear instruction in *AADC* that such selective enforcement claims in the immigration context are generally not cognizable. *See* 525 U.S. at 488-92.

A. In *AADC*, the Supreme Court held that aliens are generally prohibited from raising First Amendment retaliation claims to challenge their detention and removal. *See* 525 U.S. at 488 ("As a general matter—and assuredly in the context of claims such as those put forward in this case—an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against deportation."). This is true even if the Government *admits* that removal is

45

in retaliation for protected speech, as was the case in *AADC*. *See id.* at 473-74, 488, 488 n.10.

By failing to consider *AADC*'s directive against such claims, the district court ignored the Supreme Court's warnings about the impropriety of judicial inquiry into the Executive's motives and decisionmaking in the immigration enforcement context, especially those warnings concerning "the disclosure of foreign-policy objectives." *Id*. at 490-91. Moreover, the district court's failure to even consider *AADC*'s directive shows that the district court wholly discounted the presumption of regularity afforded to the Executive over its exercise of prosecutorial discretion in the enforcement of the immigration laws. *See Trump v. Hawaii*, 585 U.S. 667, 702 (2018) ("For more than a century, this Court has recognized that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'") (citing *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)); *Arizona v. United States*, 567 U.S. 387, 409 (2012) ("[T]he removal process is entrusted to the discretion of the Federal Government."); *cf. Kleindienst v. Mandel*, 488 U.S. 753, 770 (1972) ("[W]hen the Executive exercises this [delegated] power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal

46

Appellate Case: 25-2516    Page: 58    Date Filed: 02/19/2026 Entry ID: 5609932

communication with the applicant."). *AADC* thus foreclosed Hoque's First Amendment retaliation claim, and the district court legally erred by not following this controlling precedent. *See* 525 U.S. at 488.

B.     Hoque's Fifth Amendment claim fares no better. Hoque alleged that his detention was punitive because both DHS's initial decision to detain him for purposes of his removal proceedings and its decision to continue his detention after the immigration judge's bond redetermination by invoking the automatic stay provision were caused by the same alleged retaliatory policy underlying his First Amendment claim. *See* App. 30-40, R. Doc. 1 at 19-29. Thus, Hoque's Fifth Amendment due process claim is just a repackaging of his First Amendment retaliation claim, and is thus likewise precluded by *AADC*'s directive against selective enforcement claims in the immigration context. *See* 525 U.S. at 488.

In any event, the constitutionality of Hoque's detention itself during the pendency of removal proceedings is not in any doubt. "The rule has been clear for decades: "[d]etention during deportation proceedings [i]s ... constitutionally valid." *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024) (citing *Demore*, 538 U.S. at 523); *see Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of this deportation procedure."). Indeed, removal proceedings "'would be [in] vain if those accused could not be held in custody pending the inquiry into their true character.'" *Demore*, 538 U.S. at 523 (quoting *Wong Wing*

47

*v. United States*, 163 U.S. 228, 235 (1896)).  As to his detention under the automatic stay provision in particular, that brief period of detention, likewise, did not run afoul of due process principles; the automatic stay provision permits a limited 90-day period of detention, 8 C.F.R. § 1003.6(c)(4), and thus has "'a definite termination point' . . . making it 'materially different' from the 'potentially permanent' confinement authorized by other statutes,'" *Banyee*, 115 F.4th at 932 (quoting *Demore*, 538 U.S. at 528-29).  "[W]hen the Government deals with deportable aliens," like Hoque, "the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal."  *Demore*, 538 U.S. at 528.  The record shows that Hoque received all the procedural safeguards due to him under the Constitution and the applicable statutory and regulatory scheme, and the ultimate result of that process, *i.e.*, the Board's decision affirming the Immigration Judge's grant of release from custody on bond, was in his favor.  *See* Appellants' Mot. to Dismiss & Vacate at Ex. B.

   C.  Finally, Hoque's APA claim regarding his SEVIS record termination (which also was a repackaging of his constitutional claims) did not provide a proper basis for habeas relief.  The district court determined that the termination of Hoque's SEVIS record violated the APA as "it was not done in accordance with law or agency policy," and then ruled that, "*to the extent that SEVIS termination provides a basis for Petitioner's detention*, the detention is unlawful."  App. 1028,

Appellate Case: 25-2516  Page: 60  Date Filed: 02/19/2026 Entry ID: 5609932

R. Doc. 36 at 17 (emphasis added).  The termination of his SEVIS record, however, was not the legal or factual cause for Hoque's detention; instead, his detention was caused by the State Department's discretionary decision to revoke his student visa and DHS's decision to commence removal proceedings based on that revocation.  *See* App. 353-54, R. Doc. 20 at 2-3; App. 358, R. Doc. 20-1 at 2; App. 372, R. Doc. 20-3; App. 374-79, R. docs. 20-4, 20-5, 20-6.  "Simply stated, habeas is not available to review questions unrelated to the cause of detention." *Pierre v. United States*, 525 F.2d 933, 935-36 (5th Cir. 1976).  Without the requisite causal link between the SEVIS record termination and his detention, the district court's alternative APA basis for granting habeas relief was erroneous. *See, e.g.*, *Rivera Hernandez v. Noem*, No. 25-326, 2025 WL 3754434, *4 (E.D. Tex. Dec. 19, 2025) ("Hernandez argues that the Government violated the APA by arbitrarily and capriciously terminating his deferred action.  The Court lacks jurisdiction to decide the merits of Hernandez's APA claim, since it is 'unrelated to the cause of [his] detention.'") (citing *Pierre*, 525 F.2d at 935-36).

For these reasons, the district court erred in granting Hoque's habeas claims on the merits even if it properly exercised subject matter jurisdiction.

49

# CONCLUSION

For the foregoing reasons, the Court should vacate the district court's decision and remand with instruction to dismiss this habeas petition for lack of jurisdiction.   Alternatively, the Court should vacate the decision on the merits.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General
Office of Immigration Litigation

BENJAMIN HAYES
Special Counsel to the Assistant Attorney General

ALANNA T. DUONG
Senior Litigation Counsel

/s/ Craig A. Newell, Jr.
CRAIG A. NEWELL, JR.
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 514-0298/Craig.Newell@usdoj.gov

ZACHARY A. CARDIN
Trial Attorney

Date:  February 19, 2026        Attorneys for Appellants

50

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Eighth Circuit Rule 28A,

undersigned counsel hereby certify that the foregoing Brief for Appellants is

proportionally spaced using Times New Roman typeface, has a typeface of 14

points, and contains 11,770 words.

/s/ Craig A. Newell, Jr.
CRAIG A. NEWELL, JR.
Senior Litigation Counsel
Criminal Immigration Team
Office of Immigration Litigation
Civil Division, Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C.  20044
(202) 514-0298
Date: February 19, 2026          Craig.Newell@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on February 19, 2026, I electronically filed the foregoing Brief for Appellants with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Craig A. Newell, Jr.
CRAIG A. NEWELL, JR.
Senior Litigation Counsel
Criminal Immigration Team
Office of Immigration Litigation
Civil Division, Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 514-0298
Craig.Newell@usdoj.gov