No. 25-2516

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

**MOHAMMED HOQUE,**

**Petitioner – Appellee,**

**v.**

**DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,**

**Respondents – Appellants.**

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA
### District Court Case No. 25-cv-1576-JWB-DTS

## ADDENDUM FOR APPELLANTS - RESPONDENTS

**BRETT A. SHUMATE**
**Assistant Attorney General**
**Civil Division**

**YAAKOV M. ROTH**
**Principal Deputy Assistant**
**Attorney General**

**DREW C. ENSIGN**
**Deputy Assistant Attorney General**

**ALANNA T. DUONG**
**Senior Litigation Counsel**
**CRAIG A. NEWELL, JR.**
**Senior Litigation Counsel**
**Office of Immigration Litigation**
**Civil Division, Department of Justice**
**P.O. Box 878, Ben Franklin Station**
**Washington, DC 20044**
**(202) 514-0298**
**Attorneys for Appellants**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Mohammed H.,

       Petitioner,

v.

Donald J. Trump, *in his official capacity as President of the United States*; Pamela Bondi, *in her official capacity as Attorney General of the United States*; Peter Berg, *in his official capacity as Saint Paul Field Office Director, United States Immigration and Customs Enforcement*; Jamie Holt, *in her official capacity as St. Paul Agent in Charge for Homeland Security Investigations for U.S. Immigration and Customs Enforcement*; Todd Lyons, *in his official capacity as Acting Director, United States Immigration and Customs Enforcement*; Kristi Noem, *in her official capacity as Secretary of the United States Department of Homeland Security*; Marco Rubio, *in his official capacity as Secretary of State*; Ryan Shea, *in his official capacity as Freeborn County Sheriff*; and Mike Stasko, *in his official capacity as Freeborn County Jail Administrator*,

       Respondents.

Civ. No. 25-1576 (JWB/DTS)

**ORDER
ON PETITION FOR WRIT OF
HABEAS CORPUS**

---

Amanda M. Mills, Esq., Anupama D. Sreekanth, Esq., Joseph T. Dixon, III, Esq., and Rachel Dougherty, Esq., Fredrikson & Byron, P.A.; Benjamin Casper, Esq., and Teresa J. Nelson, Esq., American Civil Liberties Union of Minnesota; Hanne Margit Sandison, Esq., The Advocates for Human Rights; and Linus Chan, Esq., University of Minnesota Detainee Rights Clinic, counsel for Petitioner.

Ana H. Voss, Esq., United States Attorney's Office, counsel for Respondents Donald J. Trump, Pamela Bondi, Peter Berg, Jamie Holt, Todd Lyons, Kristi Noem, and Marco Rubio.

Appellate Case: 25-2516    Page: 2    Date Filed: 02/19/2026 Entry ID: 5609934

David John Walker, Esq., Freeborn County Attorney's Office, counsel for Respondent Ryan Shea.

---

This case tests the constitutional limits of Executive Branch power: Can the federal government detain and move to deport a lawful noncitizen student for his political speech? At issue is not merely the legality of a single student's detention, but whether the First and Fifth Amendments retain their full force when invoked by arguably the most vulnerable—noncitizens in federal custody. The record reflects a coordinated series of executive actions—retaliatory in focus, opaque in their justification, and deficient in process—that collectively offend foundational constitutional protections.

On April 18, 2025, Petitioner Mohammed H. filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, claiming he was being held in Immigration and Customs Enforcement ("ICE") custody as part of a campaign by federal executive agencies to arrest, detain, and deport international college students based on their protected speech.

Petitioner specifically claimed that his detention violated the First Amendment, the Fifth Amendment, and the Administrative Procedure Act. (Doc. No. 1 ¶¶ 83–101.) The named Respondents (collectively, "the Government") included the federal and state officials allegedly responsible for the immigration enforcement campaign and for applying it against Petitioner. (*Id.* ¶¶ 8–15.) The record includes the Petition, the Government's Response, Petitioner's Reply, document exhibits, and witness declarations.

## BACKGROUND

The full factual background of this matter has been detailed in the Court's May 5,

2

2025 Order for Release on Bail Pending Adjudication. (Doc. No. 29 at 3–6.) Those facts are incorporated here by reference, and only a summary of the procedural history follows.

Petitioner filed his habeas petition and a motion for a temporary restraining order on April 18, 2025. (Doc. Nos. 1, 6.) He asserted four claims. First, he alleged that he was detained because he exercised his free speech rights under the First Amendment. (Doc. No. 1 ¶¶ 83–88.) Second, he alleged that his detention violated his Fifth Amendment due process rights because it stemmed from an impermissibly vague enforcement policy, deprived him of his property interests without notice and an opportunity to respond, and served no purpose other than punishment. (*Id.* ¶¶ 89–96.) Third, he alleged that the Government violated the Administrative Procedure Act when it terminated his record in the Student and Exchange Visitor Information System ("SEVIS") database without a proper justification and in violation of the federal agencies' own rules. (*Id.* ¶¶ 97–101.) And fourth, he requested release pending adjudication of his claims. (*Id.* ¶¶ 102–05.)

The parties appeared at a status conference before United States Magistrate Judge David T. Schultz on April 21, 2025. (Doc. No. 14.) The next day, Petitioner's motion for a temporary restraining order was granted, and this Court ordered the Government not to remove or transfer Petitioner outside the District of Minnesota. (Doc. No. 15.) The Court also ordered the Government to file its answer by April 25, 2025. (Doc. No. 16.) Petitioner was allowed to file a reply by April 29, 2025. (*Id.*)

Both sides filed their materials by the required deadlines. (*See* Doc. Nos. 17, 24.) The Government asserted that no evidentiary hearing is needed and that the matter could be resolved based on the written submissions. (Doc. No. 17 at 42 n.10.) Petitioner

Appellate Case: 25-2516   Page: 4   Date Filed: 02/19/2026 Entry ID: 5609934

requested a hearing only if the Court were inclined to deny relief. (Doc. No. 24 at 2 n.1.)

On May 5, 2025, the Court granted Petitioner's request for release pending adjudication of his claims and extended the temporary restraining order for two weeks. (Doc. Nos. 29, 30.) As required, the Government confirmed it had released Petitioner on May 7, 2025. (Doc. No. 32.) On May 20 and June 3, 2025, the Court extended the temporary restraining order while the matter has been under review. (Doc. Nos. 34, 35.)

Having reviewed the submissions from both sides, the record is sufficient to decide Petitioner's claims without an evidentiary hearing. For the reasons that follow, Petitioner's request for a writ of habeas corpus is granted.

## DISCUSSION

### I.   Legal Standard

A writ of habeas corpus may be granted to any petitioner who demonstrates he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). It is the petitioner's burden to prove illegal detention by a preponderance of evidence. *See Aditya W. H. v. Trump*, Civ. No. 25-1976 (KMM/JFD), 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (collecting cases).

### II.   Analysis

#### A.   Habeas jurisdiction

As this Court has previously reasoned, none of the statutes cited by the Government applies to bar habeas review here. (*See* Doc. No. 29 at 6–7.) Accurate jurisdictional analysis requires clarity about what Petitioner seeks to review and what he does not. He is seeking to review of the legality of his detention, nothing more. He is not

4

seeking to reverse or invalidate any discretionary decisions. He is not seeking to pause or end his removal proceeding. And he is not challenging a final removal order as none has been issued. Instead, Petitioner asks this Court to review evidence of the Government's actions as proof that his detention is illegal—not to evaluate those acts on their merits. *See Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018).

The Government overstates Petitioner's claims to make its jurisdictional arguments. And most of the cited statutes could apply only if read as broadly as the Government wants. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482–83 (1999) (reasoning that § 1252(g) is strictly limited to reviewing discrete acts of commencing proceedings, adjudicating cases, or executing removal orders—not the many other decisions or actions that are part of the deportation process); *see also Jennings*, 583 U.S. at 293 (rejecting expansive interpretation of § 1252(b)(9) that would render prolonged detention claims "effectively unreviewable"). The statutes cannot be stretched so far that they entirely preclude any habeas jurisdiction over constitutional challenges to immigration detention.

As other recent courts have determined in similar cases, federal law does not preclude habeas jurisdiction here. *See, e.g.*, *Aditya W. H.*, 2025 WL 1420131, at *7–9; *Mahdawi v. Trump*, No. 2:25-cv-389, 2025 WL 1243135, at *4–8 (D.Vt. Apr. 30, 2025); *Ozturk v. Trump*, No. 2:25-cv-374, 2025 WL 1145250, at *10–15 (D.Vt. Apr. 18, 2025). Accordingly, it is proper to consider whether Petitioner is detained lawfully, and if not, relieve the unlawful detention. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) (describing such consideration as being the "historic purpose" of habeas review); *Deng Chol A. v.*

*Barr*, 450 F. Supp. 3d 896, 901 (D. Minn. 2020) ("Although the court may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution.").

**B.      First Amendment violation (First Claim)**

Petitioner's first claim is that his arrest and detention violated his First Amendment rights. The First Amendment generally precludes government officials from taking retaliatory action against an individual for their protected speech. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006). This protection applies equally to citizens and noncitizens. *Bridges v. Wixon*, 326 U.S. 135, 148 (1945).

The elements of a First Amendment retaliation claim are (1) the speech or conduct at issue was protected, (2) the defendant took an adverse action against the plaintiff, and (3) there was a causal connection between the retaliatory motive and the adverse action. *See Watson v. Boyd*, 119 F.4th 539, 550 (8th Cir. 2024). Petitioner claims he was targeted by the Government because he spoke out against violence in Gaza and expressed support for Palestinian human rights on social media.

There is no dispute here that speech on Palestinian human rights is protected speech on a matter of public concern. *See Snyder v. Phelps*, 562 U.S. 443, 451–42 (2011) (recognizing matters of public concern include any matter of political, social, or other community concern, or a subject of legitimate news interest). There is also no dispute that being held in ICE detention prevents speech and would reasonably chill an ordinary person from continuing to speak. *See Thurairajah v. City of Fort Smith, Ark.*, 925 F.3d 979, 985 (8th Cir. 2019). The dispute here is over proving causation, which depends on

the details of the case. *See Nieves v. Bartlett*, 587 U.S. 391, 399–400 (2019). Causation fails if the Government would have arrested and detained Petitioner even in the absence of his protected speech. *See id.* at 398–99.

Petitioner offers evidence that the Trump administration has publicly stated its disfavor for international students who express support for Palestine or criticize Israel. (*See* Doc. No. 1 ¶¶ 18–20 (citing Exec. Order No. 14161, 90 Fed. Reg. 8451 (Jan. 30, 2025); Exec. Order No. 14188, 90 Fed. Reg. 8847 (Jan. 29, 2025)); *see also* Doc. No. 1-9; Doc. No. 10, Sreekanth Decl., Exs. 2, 11, 13, 16–20.) The same executive orders, public statements, and social media posts that Petitioner offers here have been found to be evidence of retaliatory intent in similar cases. *See Aditya W. H.*, 2025 WL 1420131, at *11; *Mahdawi*, 2025 WL 1243135, at *10. The record shows executive agencies acting in accordance with these objectives by arresting, detaining, and pursuing removal of an international student who expressed support for Palestine. Thus, Petitioner's evidence shows by a preponderance that his speech prompted the enforcement and detention.

In response, the Government points to "the Secretary of State's determination that [Petitioner's] criminal activities create a public safety risk, and therefore his visa was revoked under 8 U.S.C. § 221(g)." (Doc. No. 17 at 38.) It specifically cites the March 23, 2025 memo from the Department of State that revoked Petitioner's F-1 visa with immediate effect. (Doc. No. 1-8.) But the March 23 memo lacks reliability and does not sufficiently rebut Petitioner's evidence. The memo indicates that (1) DHS—not the State Department—initiated the scrutiny of Petitioner's visa eligibility; (2) DHS—not the State Department—supplied the information that Petitioner had been "charged by U.S. law

Appellate Case: 25-2516    Page: 8    Date Filed: 02/19/2026 Entry ID: 5609934

enforcement officials with Assault-5th Degree-Misdemeanor" and "now poses a threat to U.S. public safety"; and (3) the State Department understood at the time of revocation that DHS "intends to immediately pursue removal." (*See* Doc. No. 1-8 at 3.) That intention was either communicated at or before the time of revocation. Without more evidence about the agency interactions, the March 23 memo alone does not refute the claim that DHS had already formed its intent to pursue removal, even before Petitioner's visa was revoked.

The memo oddly considers Petitioner a current threat to public safety for being charged with misdemeanor assault two years in the past. The memo also does not reflect any consideration of the facts underlying the charge, nor does it accurately represent that it was filed in 2023, that Petitioner was never arrested, and that he pled guilty and completed a stayed sentence in 2024. Instead of providing a lawful basis for enforcement, the memo's deficiencies do not disprove Petitioner's claim that DHS targeted him for removal, and then sought the visa revocation as the purported legal justification.

The Government's justification also falls short because other international students who have been flagged in a "criminal records search" and had their SEVIS records terminated have not been arrested or detained like Petitioner. (*See* Doc. No. 24 at 10; Doc. No. 1-6 at 2.) A purportedly valid basis for enforcement fails when similarly situated individuals have not been treated the same. *See Nieves*, 587 U.S. at 402 (stating probable cause defeats retaliation claim in § 1983 context unless "otherwise similarly situated individuals not engaged in the same sort of protected speech had not been arrested").

8

The justification is further undermined because the Government cited different reasons at different times for its actions. The arresting agents cited visa revocation, while Petitioner's initial removal charge was failure to maintain status under § 237(a)(1)(A)(i). That charge was withdrawn without explanation and replaced with visa revocation under § 237(a)(1)(B) nearly a month later. The Government has not explained its rationale at the time of visa revocation or its rationale for altering the charges against Petitioner. On this record, these events appear to be reverse-engineered justifications for speech-based targeting and enforcement.

Moreover, Petitioner was allowed to re-enter the United States while charged with the 2023 misdemeanor (Doc. No. 1-1 ¶¶ 33–34), even though that same charge supposedly raised a public safety threat and warranted visa revocation in 2025, according to DHS and the State Department. Petitioner supplies evidence of what caused the change in treatment: targeted speech retaliation in accordance with the Trump administration's policies. The Government does not supply enough reliable evidence to dispel that connection.

Most critically, the Government offers no evidence explaining why Petitioner was selected for a criminal records search in the first place. It has not described how such searches are typically initiated, nor has it explained what triggered DHS's outreach to the State Department about Petitioner on March 22, 2025. One declaration attests that the ICE officials who issued the warrant and arrested Petitioner were unaware of his speech, but does not provide the basis for the statement. (Doc. No. 20 ¶ 8.) The declaration is also silent or lacking specifics about any supervisors, legal officers, or decisionmakers higher

Appellate Case: 25-2516   Page: 10   Date Filed: 02/19/2026 Entry ID: 5609934

up the chain—those who in fact approved the records search, the outreach to the State Department, and the steps between revocation and arrest. That evidentiary void matters. It leaves unrebutted the strong temporal and circumstantial link between the Government's statements regarding international students, Petitioner's public expression, and the enforcement actions taken against him. On this record, the Government has not shown—by any evidence, let alone a preponderance—that it would have taken the same steps against Petitioner had he not engaged in protected speech.

The more plausible inference, supported by timing, context, and the Government's own public statements, is that Petitioner was arrested and detained because he expressed pro-Palestinian views and criticized violence in Gaza. That is core political speech. Targeting Petitioner for it violates the First Amendment. Accordingly, Petitioner's first habeas claim is granted.

### C.    Fifth Amendment due process violation (Second Claim)

Petitioner also claims his detention violated Fifth Amendment due process. Under the Fifth Amendment, no citizen or noncitizen may be deprived of life, liberty, or property without due process of law. *See* U.S. Const. amend. V; *Mathews v. Diaz*, 426 U.S. 67, 78 (1976); *see also Zadvydas*, 533 U.S. at 690 (civil detention violates due process unless special, nonpunitive circumstances outweigh an individual's interest in avoiding restraint); *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976) (due process is flexible, and the protections depend on the situation, considering the private interest at issue, the risk of erroneous deprivation of that interest through the procedures used, and the Government's interest). These protections extend to deportation proceedings. *Reno v.*

10

*Flores*, 507 U.S. 292, 306 (1993).

Punishing Petitioner for protected speech or using him as an example to intimidate other students into self-deportation is abusive and does not reflect legitimate immigration detention purposes. *See, e.g.*, *Mahdawi*, 2025 WL 1243135, at *11 (recognizing that immigration detention cannot be motivated by the desire to punish speech or to deter others from speaking). Valid immigration detention purposes include ensuring future appearances and preventing danger to the community. *See Zadvydas*, 533 U.S. at 690 (stating that immigration detention must remain "nonpunitive in purpose and effect"). The Government's public safety rationale here—that a 2023 misdemeanor charge or guilty plea represents a current public safety threat—is insufficient and falls well below the bar. The Immigration Judge agreed. He determined that a $7,500 bond would ensure Petitioner's court appearances and mitigate a possible flight risk. Notably, that court made no finding that Petitioner posed a danger to the community. The record lacks sufficient proof of special, nonpunitive factors outweighing Petitioner's interest in being free of improper detention. Instead, the preponderance of evidence shows that Petitioner's detention was illegitimate in both purpose (punishment of protected speech) and effect (intimidation of other international students).

Petitioner's case presents a second, independent due process issue. Prior to being released by this Court's May 5, 2025 Order, Petitioner remained in custody only because the Government invoked the automatic stay provision in 8 C.F.R. § 1003.19(i)(2). Although the Immigration Judge had ordered Petitioner to be released on bond, the Government stayed that order without making any showing of dangerousness, flight risk,

or any other factor justifying detention. Simply by fiat—without introducing any proof and without immediate judicial review—the Government effectively overruled the bond decision and kept Petitioner detained. In doing so, the automatic stay rendered Petitioner's continued detention arbitrary and gave him no chance to contest the Government's case for detention. *Mathews*, 424 U.S. at 348–49 ("The essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.") Invoking the automatic stay as the Government did here contorts § 1003.19(i)(2) into an unfair procedure. *Cf. Bridges*, 326 U.S. 135, 152–53 (administrative rules are designed to afford due process and to serve as "safeguards against essentially unfair procedures"). Under the circumstances of this case, invoking the automatic stay violated Petitioner's due process rights.

The Government has wide—but not unlimited—discretion in the immigration realm. *See Zadvydas*, 533 U.S. at 700 (recognizing that Executive Branch's wide discretion regarding immigration remains subject to constitutional limitations); *Ali v. Sessions*, Civ. No. 18-2617 (DSD/LIB), 2019 WL 13216940, at *3 (D. Minn. July 30, 2019) (recognizing that attorney general's discretionary detention authority is "subject to the constitutional requirement of due process"). At its foundation, due process prohibits detaining an individual without justification. Petitioner has established, and the Government has not sufficiently rebutted, that his detention is rooted in improper purposes and lacks an individualized legal justification.

Therefore, Petitioner's second habeas claim is granted.

Appellate Case: 25-2516   Page: 13   Date Filed: 02/19/2026 Entry ID: 5609934

### D.    Administrative Procedure Act violation (Third Claim)

Petitioner's third claim is that he was confined in violation of the Administrative Procedure Act because DHS terminated his student status and SEVIS record without a legal basis. Under the Act, an agency action may be set aside if it is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). An action is arbitrary and capricious if the agency fails to examine relevant evidence or articulate a satisfactory explanation. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 42–43 (1983). Post-hoc rationalizations will not suffice; agency action must be upheld, if at all, on the basis articulated by the agency itself. *See id.* at 50. An agency ought to lead by example and follow its own regulations. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954); *see also Webster v. Doe*, 486 U.S. 592, 602 n.7 (1988).

Terminating Petitioner's SEVIS record is subject to review as a final agency action because it is the end of a decision-making process which implicates rights and carries legal consequences. *See Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 182 (3d Cir. 2019); *Sisseton-Wahpeton Oyate of Lake Traverse Rsrv. v. U.S. Corps of Eng'rs*, 888 F.3d 906, 915 (8th Cir. 2018). Multiple other courts have reached a similar determination on preliminary review. *See, e.g.*, *Doe v. Noem*, No. 3:25-CV-00042RGE-WPK, 2025 WL 1203472, at *4–6 & n.1 (S.D. Iowa Apr. 24, 2025) (recognizing that visa revocation is not itself a failure to maintain status that justifies SEVIS termination and collecting recent cases awarding injunctive relief); *Arizona Student DOE #1 v. Trump*, No. CV-25-00174-TUC-JGZ, 2025 WL 1192826, at *6 (D. Ariz. Apr. 24, 2025); *Shaik v.*

13

*Noem*, Civ. No. 25-1584 (JRT/DJF), 2025 WL 1170447, at *3 (D. Minn. Apr. 22, 2025).

The record shows that DHS's reason for terminating Petitioner's SEVIS record was a shifting sand, changing weeks after he was detained. Immediately after his arrest, Petitioner's SEVIS record showed that it was terminated for failure to maintain status under 237(a)(1)(C)(i) and foreign policy under § 237(a)(4)(C). (Doc. No. 1-4 at 4.) But then weeks later, his SEVIS record listed the termination reason as "OTHER - Individual identified in criminal records check and/or has had their visa revoked." (Doc. No. 1-6 at 2.) The shift is not adequately explained in the record. The Government's claim that the SEVIS record was simply "corrected" (Doc. No. 17 at 7 n.2, 30) is not supported by the cited declarations and exhibit. Neither declarant characterizes the initial entry as an error or the change as a correction. The evidence at most shows that the foreign policy ground was inconsistent with State Department records. It still does not explain why foreign policy was cited or even address the citation for failure to maintain status.

Upon review, none of the proffered reasons (failure to maintain status, foreign policy, criminal records, or visa revocation) provides a satisfactory explanation for terminating Petitioner's SEVIS record. Petitioner's 2023 misdemeanor conviction does not constitute a failure to maintain status because it is not a disqualifying crime. 8 C.F.R. § 214.1(g). The vague "foreign policy" ground requires notification in the Federal Register, 8 C.F.R. § 214.1(d), and the record here reflects that it was utilized as pretext to target students who expressed views favoring Palestinian human rights. And visa revocation, standing alone, does not justify SEVIS termination. *See Doe*, 2025 WL 1203472, at *4 (recognizing that revoking an F-1 visa does not itself demonstrate a

14

failure to maintain status justifying SEVIS termination).

Federal regulations provide that working without authorization, providing false information to DHS, or committing a qualifying crime constitutes a failure to maintain status. *See* 8 C.F.R. § 214.1(e)–(g). Noncitizen students like Petitioner are also required to maintain a qualifying course of study. *Id.* § 214.2(f)(6), (9). The record contains no evidence that Petitioner violated any of these requirements. It also lacks evidence that DHS cited or fully complied with one of the three bases justifying termination of visa status in 8 C.F.R. § 214.1(d): (1) waiver revocation; (2) introduction of a private bill to confer permanent resident status, or (3) pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons. *Jie Fang*, 935 F.3d at 176 (quoting 8 C.F.R. § 214.1(d)). The record lacks evidence that the Government relied on any of these legitimate bases for terminating Petitioner's SEVIS record.

At most, the evidence shows that DHS found Petitioner after running a search that flagged his 2023 misdemeanor, which DHS somehow elevated into a present public safety threat. Terminating Petitioner's status and SEVIS record based on public safety suffers from multiple flaws. First, the March 23 State Department memo indicates that DHS considered Petitioner a threat to public safety merely due to being *charged* with— not convicted of—a misdemeanor in 2023. (*See* Doc. No. 1-8 at 3; Doc. No. 19, Armstrong Decl. ¶¶ 4–5.) Second, like the foreign policy ground, there is no evidence that DHS provided notice in the Federal Register as required by 8 C.F.R. § 214.1(d). Third, Petitioner's 2023 misdemeanor legally cannot justify terminating his status, even assuming it was the conviction and not merely the charge that DHS considered a threat to

public safety. While being convicted of a crime that carries more than one year imprisonment constitutes a failure to maintain status according to 8 C.F.R. § 214.1(g), the maximum sentence for Petitioner's misdemeanor was only 90 days. On the record presented here, the termination of Petitioner's student status and SEVIS record for his 2023 misdemeanor lacked a lawful basis.

The record separately establishes that Petitioner's SEVIS termination violates DHS policies. The first is a policy against targeting protected speech. (*See* Sreekanth Decl. Ex. 1, Kevin K. McAleenan, *Information Regarding First Amendment Protected Activities*, DEP'T OF HOMELAND SECURITY, (May 17, 2019) ("DHS does not profile, target, or discriminate against any individual for exercising his or her First Amendment rights."); Sreekanth Decl. Ex. 23, Alejandro N. Mayorkas, *Guidelines for the Enforcement of Civil Immigration Law*, DEP'T OF HOMELAND SECURITY (Sept. 30, 2021) (stating that a noncitizen's exercise of their First Amendment rights should not factor into an enforcement action decision).) The same record evidence that establishes Petitioner's First Amendment claim also establishes the DHS policy violation.

The second is a policy that visa revocation does not justify SEVIS termination. (*See* Sreekanth Decl. Ex. 22, ICE Policy Guidance No. 1004-04 (June 7, 2010) (noting that visa revocation alone does not justify SEVIS record termination).) Not only does agency policy preclude the practice, it contravenes federal law. *See John Roe, et al. v. Noem, et al.*, No. 25-cv-00040-BU-DLC, 2025 WL 1114694, at *3 (D. Mont. Apr. 15, 2025) ("8 C.F.R. § 214.1(d) does not provide statutory or regulatory authority to terminate F-1 student status in SEVIS based upon revocation of a visa."). If visa

16

revocation is the true reason that DHS has decided justifies terminating Petitioner's SEVIS record, then the termination violates agency policy and exceeds lawful authority.

Petitioner's SEVIS termination violates the Administrative Procedure Act because it was not done in accordance with law or agency policy. To the extent that SEVIS termination provides a basis for Petitioner's detention, the detention is unlawful. Therefore, Petitioner's third habeas claim is granted.

## CONCLUSION

The Constitution prohibits arbitrary detention, even in the immigration context. This case is not about open borders or executive discretion. It is about whether a young man can be jailed and nearly deported because of what he said. The law answers no.

These proceedings do not question the Government's general authority to enforce immigration law. But that authority is not a blank check. The Constitution still governs— even, and especially, when the target is unpopular or politically disfavored.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that Petitioner Mohammed H.'s Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. No. 1) is **GRANTED**. Petitioner shall remain released from custody, subject to the conditions previously imposed by the Immigration Judge, including the $7,500 bond.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: June 17, 2025

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge

17

# UNITED STATES DISTRICT COURT
## District of Minnesota

Mohammed Hoque,

**JUDGMENT IN A CIVIL CASE**

Petitioner,

v.

Case Number: 25-cv-01576-JWB-DTS

Donald J. Trump, Pamela Bondi, Peter Berg,
Jamie Holt, Todd Lyons, Kristi Noem, Marco
Rubio, Ryan Shea, and Mike Stasko,

Respondents,

☒ **Decision by Court**.  This action came to trial or hearing before the Court.  The issues have

been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED THAT:

Petitioner Mohammed H.'s Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241

(Doc. No. 1) is GRANTED. Petitioner shall remain released from custody, subject to the

conditions previously imposed by the Immigration Judge, including the $7,500 bond.

Date: 6/18/2025

KATE M. FOGARTY, CLERK