No. 25-2516

# United States Court of Appeals for the Eighth Circuit

**Mohammed Hoque**

*Petitioner - Appellee,*

**v.**

**Donald Trump, in his official capacity as President of the United States, *et al.*,**

*Respondents - Appellants.*

**APPELLEE'S BRIEF**

On Appeal from the United States District Court for the District of Minnesota
Case No. 0:25-cv-01576-JWB


**FREDRIKSON & BYRON, P.A.**
Joseph T. Dixon, III (#0283903)
Anupama D. Sreekanth (#0393417)
Amanda M. Mills (#0397685)
Rachel L. Dougherty (#0399947)
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Tel: (612) 492-7000

**AMERICAN CIVIL LIBERTIES UNION OF MINNESOTA**
Teresa Nelson (#0269736)
Benjamin Casper (#0276145)
P.O. Box 14720
Minneapolis, MN 55414
Tel: (651) 529-1692

**THE ADVOCATES FOR HUMAN RIGHTS**
Zachary Albun (IL #6323553)
330 Second Ave South Ste. 800
Minneapolis MN, 55401
Tel: (612) 252-4444

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
Omar Jadwat
Noor Zafar
Sidra Mahfooz
Michael K.T. Tan
Esha Bhandari
Brett Max Kaufman
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

## **SUMMARY OF THE CASE**

The district court granted Petitioner-Appellee Mohammed Hoque's petition for a writ of habeas corpus, concluding that the Government had detained him for pro-Palestine speech in violation of the First Amendment, the Fifth Amendment, and the Administrative Procedure Act. The Government appeals.

After Hoque's release, the Board of Immigration Appeals affirmed the immigration judge's release of Hoque on bond, but that does not moot the district court order's continuing protection of Hoque's pre-detention liberty. Nor are the *Munsingwear* factors satisfied.

The district court correctly recognized that the Immigration and Nationality Act does not foreclose judicial review of Hoque's habeas petition, which challenges only his retaliatory detention.

Finally, the record establishes that Hoque was targeted for detention because of his protected speech. The Court should affirm.

Hoque respectfully requests oral argument, with each side receiving 30 minutes of argument time.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... xii

COUNTER-STATEMENT OF THE ISSUES .......... x

INTRODUCTION .......... 1

STATEMENT OF THE CASE .......... 2

I. The Government's Policy of Retaliation Against Foreign Students for Protected Speech .......... 2

II. The Government's Unlawful Arrest and Detention of Hoque .......... 5

A. Hoque's Protected Speech .......... 5

B. Hoque's Arrest and Detention .......... 5

C. Hoque's SEVIS Termination .......... 6

D. Hoque's Immigration Proceedings and Bond Determination .......... 7

III. Habeas Proceedings Below .......... 7

SUMMARY OF ARGUMENT .......... 10

STANDARD OF REVIEW .......... 11

ARGUMENT .......... 11

I. The Government Has Not Carried its Burden to Prove Mootness or Entitlement to *Munsingwear* Vacatur. .......... 11

A. The Appeal Is Not Moot .......... 12

B. The Government Is Not Entitled to *Munsingwear* Vacatur .......... 15

1. The Government is Responsible for Any Mootness .......... 15

2. Public Interest Weighs Against Vacatur .......... 16

II. The INA Does Not Bar Review of Hoque's Habeas Claims .......... 18

A. Section 1201(i) Does Not Apply ....................................... 19

B. Section 1226(e) Does Not Apply ....................................... 20

C. Section 1252(g) Does Not Apply ....................................... 21

D. Sections 1252(a)(5) and (b)(9) Do Not Apply ....................................... 28

1. Sections 1252(a)(5) and (b)(9) apply only to judicial review of an order of removal, which has not issued here ....................................... 28

2. Even if Section 1252(b)(9) applies before a final order of removal, Hoque's challenges to his detention are not barred ....................................... 31

E. If Section 1252 Strips Jurisdiction over Hoque's Habeas Petition, It Violates the Suspension Clause and First Amendment ....................................... 39

III. The District Court Properly Granted Hoque's Petition ....................................... 42

A. The District Court Properly Concluded that Respondents Violated Hoque's First Amendment Rights ....................................... 43

B. The District Court Properly Concluded that Respondents Violated Hoque's Fifth Amendment Right to Due Process ....................................... 47

C. The Government's Argument Regarding Hoque's APA Claim Misconstrues the District Court's Order ....................................... 50

CONCLUSION ....................................... 52

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. ICE*,
510 F.3d 1 (1st Cir. 2007).....31, 32, 33

*Al-Siddiqi v. Achim*,
531 F.3d 490 (7th Cir. 2008).....21

*Ali v. Mukasey*,
524 F.3d 145 (2d Cir. 2008).....27

*Alvarez v. ICE*,
818 F.3d 1194 (11th Cir. 2016).....26

*Am. Ass'n of Univ. Professors v. Rubio ("AAUP")*,
No. CV 25-10685, 2026 WL 524753 (D. Mass. Jan. 22, 2026).....2, 3, 4, 17, 46

*Arce v. United States*,
899 F.3d 796 (9th Cir. 2018).....27

*Avila v. Bondi*,
170 F.4th 1128 (8th Cir. 2026).....30, 32

*Banyee v. Garland*,
115 F.4th 928 (8th Cir. 2024).....30, 31, 32

*Bd. of License Comm'rs of Town of Tiverton v. Pastore*,
469 U.S. 238 (1985).....14

*Bell v. Att'y Gen. of Iowa*,
474 F.3d 558 (8th Cir. 2007).....11, 42

*Bell v. Wolfish*,
441 U.S. 520 (1979).....47

*Bello-Reyes v. Gaynor*,
985 F.3d 696 (9th Cir. 2021).....13, 25, 45

*Bolante v. Achim*,
457 F. Supp. 2d 898 (E.D. Wis. 2006).....20

*Borbot v. Warden Hudson Cnty. Corr. Facility*,
906 F.3d 274 (3d Cir. 2018) ....................................................................21

*Boumediene v. Bush*,
553 U.S. 723 (2008)....................................................................19, 40, 41

*Branson Label, Inc. v. City of Branson*
793 F.3d 910 (8th Cir. 2015) ....................................................................19

*Carlson v. Landon*,
342 U.S. 524 (1952)....................................................................49

*Casa De Maryland v. U.S. Dep't of Homeland Sec.*,
924 F.3d 684 (4th Cir. 2019) ....................................................................29

*Castro-Vasquez v. Thompson*,
No. CV H-25-5164, 2026 WL 206761 (S.D. Tex. Jan. 27, 2026)......................17

*Cleveland v. Ciccone*,
517 F.2d 1082 (8th Cir. 1975) ....................................................................15

*Cravens v. Smith*,
610 F.3d 1019 (8th Cir. 2010) ....................................................................14

*Demore v. Kim*,
538 U.S. 510 (2003)....................................................................21

*Dep't of Homeland Sec. v. Thuraissigiam*,
591 U.S. 103 (2020)....................................................................18

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020)....................................................................22, 24, 29, 31

*E.O.H.C. v. Sec'y D.H.S.*,
950 F.3d 177 (3d Cir. 2020) ....................................................................33, 38

*Elrod v. Burns*,
427 U.S. 347 (1976)....................................................................33

*Felts v. Green*,
91 F.4th 938 (8th Cir. 2024) ....................................................................43

*Gao v. Noem*,
No. 1:25-CV-419, 2025 WL 1318417 (W.D. Mich. May 7, 2025)....................51

*Garcia v. Att'y Gen. of U.S.*,
553 F.3d 724 (3d Cir. 2009) ....................................................................27

*Gonzalez v. ICE*,
975 F.3d 788 (9th Cir. 2020) ....................................................................32

*Matter of Guerra*,
24 I&N Dec. 37 (BIA 2006) ........................................................................4

*Guerrero-Lasprilla v. Barr*,
589 U.S. 221 (2020)......................................................................................18

*Harsono v. Akerson*,
No. 25-2413, 2026 WL 88549 (8th Cir. Jan. 8, 2026).......................................15

*Humphries v. Various Fed. USINS Emps.*,
164 F.3d 936 (5th Cir. 1999) ....................................................................26

*I.N.S. v. St. Cyr*,
533 U.S. 289 (2001)..................................................................................*passim*

*T.L. ex rel. Ingram v. United States*,
443 F.3d 956 (8th Cir. 2006) ....................................................................13

*Jasperson v. Purolator Courier Corp.*,
765 F.2d 736 (8th Cir. 1985) ....................................................................51

*Jennings v. Rodriguez*,
583 U.S. 281 (2018)..................................................................................*passim*

*Johnson v. Guzman Chavez*,
594 U.S. 523 (2021)......................................................................................31

*Kellici v. Gonzales*,
472 F.3d 416 (6th Cir. 2006) ..............................................................25, 32

*Khalil v. Trump*,
164 F.4th 259 (3d Cir. 2026) ..................................................................*passim*

*Kong v. United States*,
62 F.4th 608 (1st Cir. 2023)....................................................................24, 25

*Kumar v. Holder*,
No. 12-CV-5261, 2013 WL 6092707 (E.D.N.Y. Nov. 18, 2013) ......................26

*Madu v. U.S. Att'y Gen.*,
470 F.3d 1362 (11th Cir. 2006) ............................................................26, 27, 30

*Mahdawi v. Trump*,
136 F.4th 443 (2d Cir. 2025) ............................................................4, 18, 27, 33

*Maldonado v. Olson*,
795 F. Supp. 3d 1134 (D. Minn. 2025)..................................................................4

*Marks v. United States*,
430 U.S. 188 (1977)..........................................................................................30

*Miranda v. Garland*,
34 F.4th 338 (4th Cir. 2022) .........................................................................12, 32

*Mohammad S. v. Tritten*,
No. 20-CV-793, 2020 WL 2750836 (D. Minn. Apr. 28, 2020) .........................21

*Moore v. Thurston*,
928 F.3d 753 (8th Cir. 2019) ..........................................................................15

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
429 U.S. 274 (1977)......................................................................... 35, 44, 46

*Nadarajah v. Gonzales*,
443 F.3d 1069 (9th Cir. 2006) .........................................................................29

*Ne. Fla. Ch. of Assoc. Gen. Contractors of Am. v. City of Jacksonville*,
508 U.S. 656 (1993)..........................................................................................14

*Nielsen v. Preap*,
586 U.S. 392 (2019)......................................................................... 12, 13, 31

*NRA v. Vullo*,
602 U.S. 175 (2024)..........................................................................................43

*Opulent Life Church v. City of Holly Springs, Miss.*,
697 F.3d 279 (5th Cir. 2012) ........................................................................14

*Osborne v. Grussing*,
477 F.3d 1002 (8th Cir. 2007) ......................................................................44

*Ozturk v. Hyde*,
136 F.4th 382 (2d Cir. 2025) ..................................................................*passim*

*Ozturk v. Trump*,
779 F. Supp. 3d 462 (D. Vt. Apr. 18, 2025) ...............................................19, 21

*Ozturk v. Trump*,
No. 25-CV-12334-, 2025 WL 3514320 (D. Mass. Dec. 8, 2025) .....................17

*Parra v. Perryman*,
172 F.3d 954 (7th Cir. 1999) ........................................................................26

*Pesina v. Arnott*,
No. 6:26-CV-3124, 2026 WL 673753 (W.D. Mo. Mar. 10, 2026) ...................17

*Pierre v. United States*,
525 F.2d 933 (5th Cir. 1976) ........................................................................52

*Ragbir v. Homan*,
923 F.3d 53 (2d Cir. 2019) ...........................................................................46

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999)..................................................................................*passim*

*Riley v. INS*,
310 F.3d 1253 (10th Cir. 2002) .....................................................................13

*Rosales-Garcia v. Holland*,
322 F.3d 386 (6th Cir. 2003) ........................................................................13

*Saadulloev v. Garland*,
No. 3:23-CV-00106, 2024 WL 1076106 (W.D. Pa. Mar. 12, 2024).................26

*SD Voice v. Noem*,
987 F.3d 1186 (8th Cir. 2021) ......................................................................17

*Sheldon v. Hundley*,
83 F.3d 231 (8th Cir. 1996) ....................................................................................45

*Simpson v. Camper*,
974 F.2d 1030 (8th Cir. 1992) ................................................................................13

*Sissoko v. Rocha*,
509 F.3d 947 (9th Cir. 2007) ...................................................................................26

*Suri v. Trump*,
No. 25-1560, 2025 WL 1806692 (4th Cir. July 1, 2025) ...........................*passim*

*Swain v. Pressley*,
430 U.S. 372 (1977).....................................................................................................40

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
513 U.S. 18 (1994)...........................................................................................16, 17

*United States v. Texas*,
2022 WL 4278395 (Sep. 12, 2022) ..........................................................................23

*Vargas v. United States Dep't of Homeland Sec.*,
No. 1:17-CV-00356, 2017 WL 962420 (W.D. La. Mar. 10, 2017) ..................27

*Velasco Lopez v. Decker*,
978 F.3d 842 (2d Cir. 2020) .....................................................................................21

*Watson v. Boyd*,
119 F.4th 539 (8th Cir. 2024) ................................................................................. 44

*Wong Wing v. United States*,
163 U.S. 228 (1896)....................................................................................................49

*Woodworth v. Hulshof*,
891 F.3d 1083 (8th Cir. 2018) .................................................................................43

*You v. Nielsen*,
321 F. Supp. 3d 451 (S.D.N.Y. 2018) ....................................................................41

*Zadvydas v. Davis*,
533 U.S. 678 (2001)..........................................................................................*passim*

*Zundel v. Gonzales*,
230 F. App'x 468 (6th Cir. 2007) ....................................................................26

**Statutes**

8 U.S.C. § 1182 ..............................................................................................3

8 U.S.C. § 1201 ..............................................................................10, 19, 20

8 U.S.C. § 1226 ...................................................................................*passim*

8 U.S.C. § 1252 ...................................................................................*passim*

28 U.S.C. § 1651 ...........................................................................................22, 23

**Other Authorities**

8 C.F.R. 287 ..................................................................................................23

8 C.F.R. 1240.8 ..............................................................................................35

8 C.F.R. § 214.1 ............................................................................................51

8 C.F.R. § 1003.1 ..........................................................................................16

8 C.F.R. § 1003.6 ..........................................................................................48

8 C.F.R. § 1003.19 ....................................................................................4, 48

## COUNTER-STATEMENT OF THE ISSUES

1. Has the Government met its burdens to demonstrate mootness and entitlement to the extraordinary remedy of vacatur?

   Apposite authorities: *Nielsen v. Preap*, 586 U.S. 392 (2019); *SD Voice v. Noem,* 987 F.3d 1186 (8th Cir. 2021); *Moore v. Thurston*, 928 F.3d 753 (8th Cir. 2019).

2. Does the Immigration and Nationality Act ("INA") strip the district court of subject matter jurisdiction to review the legality of Petitioner's detention?

   Apposite authorities: *Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Ozturk v. Hyde*, 136 F.4th 382 (2d Cir. 2025); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999).

3. Did the district court err in its merits determinations that: (1) Petitioner's detention violates the First and Fifth Amendment; and (2) the Government violated the Administrative Procedure Act ("APA") by terminating Petitioner's SEVIS record?

   Apposite authorities: *Zadvydas v. Davis*, 533 U.S. 678 (2001); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977); *Watson v. Boyd*, 119 F.4th 539 (8th Cir. 2024).

## INTRODUCTION

This case's core question is whether the Judicial Branch has the power to intervene when the Executive Branch jails a noncitizen for expressing political views it disfavors. The answer is yes.

Petitioner Mohammed Hoque, a college student from Bangladesh, was attending to his studies in March 2025 when the Government arrested and began efforts to remove him from the country. Hoque's detention came amidst a government policy to detain and remove noncitizens, especially young college students, who advocated for Palestinian rights during Israel's military campaign in Gaza. Hoque, who advocated for Palestinian human rights on social media, was one of these students, targeted with punitive detention and removal based solely on protected expressions of political speech.

As the district court found, the Government has no good explanation for its behavior—and its rationalizations have been, over time, a "shifting sand." (App. 1025; R. Doc. 36 at 14.) On appeal, the Government barely addresses the merits of Hoque's habeas claims, all of which he prevailed on below. Instead, it asks this Court to dismiss its own appeal (while vacating the district court's opinion), and, if not, to hold that the district court never had jurisdiction over Hoque's petition in the first place. These arguments are wrong, and their consequences would be grave—permitting the detention of noncitizens for any reason, including (and

perhaps especially) speech, without federal district court review of constitutional challenges for months or even years until the administrative immigration process runs its course. That is not what Congress intended in the INA, and even if it had, that result would violate the Constitution.

The district court's grant of habeas was correct. This Court should affirm.

## STATEMENT OF THE CASE

### I. The Government's Policy of Retaliation Against Foreign Students for Protected Speech

This case concerns the Government's policy (the "Policy") of retaliating against and punishing noncitizens, mostly young students like Hoque, for their constitutionally-protected participation in protests and engagement in speech supporting Palestinian human rights. Through the Policy, the Government invoked immigration law to detain noncitizens and initiate removal proceedings. *Am. Ass'n of Univ. Professors v. Rubio ("AAUP")*, No. CV 25-10685-WGY, 2026 WL 524753, at *1 (D. Mass. Jan. 22, 2026) ("Secretaries Noem and Rubio have . . . implemented [several] Executive Orders . . . [in] a viewpoint-discriminatory way to chill protected speech that violated the First Amendment" (quotations omitted)). The Government engaged in this Policy despite the longstanding, bedrock protections of the First Amendment and Department of Homeland Security ("DHS") policies that caution against abuse of immigration law. (App. 153; R. Doc. 10-1 at 2.)

The Government began implementing the Policy in early March 2025, when Respondent Secretary Rubio determined under the purported authority of the "Foreign Policy Ground" (FPG) of the INA, section 237(a)(4)(C), that certain noncitizens were deportable for engaging in activities that "would have potentially serious adverse foreign policy consequences for the United States."[1] 8 U.S.C. § 1227(a)(4)(C)(i), INA § 237(a)(4)(C).[2] The Government also relied on other authorities to revoke students' visas, including in retaliation for speech. (App. 23; R. Doc. 1 at 12.) Secretary Rubio publicly stated that, by March 27, he had revoked approximately 300 student visas, boasting that "[e]very time I find one of these lunatics, I take away their visas." (App. 23, n.13; R. Doc. 1 at 12, n.13.)

In addition to the removal of its ideological targets, the Government sought detention pending removal, both to punish its targets and to send a chilling message to other would-be speakers. *See AAUP*, 2026 WL 524753, at *1. As explained below,

---

[1] Press Statement, Marco Rubio, Sec'y of State, *Announcement of Visa Restriction Policy Targeting Individuals Undermining Peace in the Great Lakes Region* (Mar. 6, 2026), https://www.state.gov/releases/office-of-the-spokesperson/2026/03/announcement-of-visa-restriction-policy-targeting-individuals-undermining-peace-in-the-great-lakes-region.

[2] The FPG cannot be applied "because of the [noncitizen]'s past, current, or expected beliefs, statements, or associations, if such beliefs, statements, or associations would be lawful within the United States." 8 U.S.C. § 1182(a)(3)(C)(ii), (iii). Congress intended for the FPG to "be used sparingly"—"and not merely because there is a likelihood that an alien will make critical remarks about the United States or its policies. H.R. Conf. Rep. No. 101-955, at 6794–95 (1990).

Hoque—who spent 39 days in detention—was one of these targets. He was not alone. The Government also detained Mohsen Mahdawi, a green card holder and graduate student at Columbia University, before a federal court released him pending his habeas petition. *Mahdawi v. Trump*, 136 F.4th 443 (2d Cir. 2025). It detained Rumeysa Öztürk, a graduate student at Tufts University, before she was ordered released. *Öztürk v. Hyde*, 136 F.4th 382, 394 (2d Cir. 2025). It detained Dr. Badar Khan Suri, a professor at Georgetown University, before a habeas court ordered his release. *Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *1 (4th Cir. July 1, 2025). And it detained Mahmoud Khalil, a green card holder and graduate student at Columbia. *Khalil v. Trump*, 164 F.4th 259, 266 (3d Cir. 2026).

Sometimes, immigration judges granted bond to international students whose visas were revoked based on findings that they were not dangerous or a flight risk, *e.g.*, *Matter of Guerra,* 24 I&N Dec. 37 (BIA 2006), but rather than abide by those decisions, the Government prolonged some of their detentions—including Hoque's—by invoking a rarely-used automatic stay regulation to block the immigration judges' orders while DHS appealed to the Board of Immigration Appeals ("BIA"). *E.g.*, *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1141 (D. Minn. 2025); *see* 8 C.F.R. § 1003.19(i)(2). In doing so, DHS prevented the release of certain detained students by up to 90 days, with possible extensions. *See Review of Custody Determinations,* 71 Fed. Reg. 57873-01, 2006 WL 2811410 (Oct. 2, 2006).

## II. The Government's Unlawful Arrest and Detention of Hoque

### A. Hoque's Protected Speech

Hoque is a citizen of Bangladesh and an observant Muslim. (App. 46; R. Doc. 1-1 at 2.) In 2021, he began studies at Mankato State University in F-1 student status. (*Id.*) By spring 2025, he was 20 years old and on track to graduate in 2026; he had properly maintained his immigration status at all times. (*Id.*)

Hoque opposes and is deeply disturbed by violence against people living in Gaza. (App. 47; R. Doc. 1-1 at 3.) He believes all people have human rights and nobody should be attacked or killed because of their religion. (*Id.*) Hoque does not support violence and has never supported political violence. (*Id.*) Consistent with those values, he engaged in speech supportive of Palestinians in Gaza, including on social media, where he shared posts and media coverage documenting incidents of violence against Palestinians in Gaza that he considers to be violations of human rights. (*Id.*)

### B. Hoque's Arrest and Detention

On March 28, 2025, DHS officers followed Hoque after class and arrested him outside his home in front of his parents. (App. 993; R. Doc. 29 at 3.) The basis for his arrest was a purported visa revocation, issued "silent[ly]" and without notice. (App. 993–95; R. Doc. 29 at 3–5.) Hoque's initial charging document, dated March 28, lists section 237(a)(1)(C)(i) (failure to maintain status) as the only pending charge. (App. 994; R. Doc. 29 at 4.) On April 1, Hoque received an undated,

unmarked letter, allegedly from the Department of State ("DOS"), stating "your F-1 visa was revoked[.]" (*Id.*) Hoque was brought to Fort Snelling and transferred to Freeborn County Jail, where he would spend the next 39 days. (App. 51, 53, 1010; R. Doc. 1-1 at 7, 9; R. Doc. 32 at 2.)

### C. Hoque's SEVIS Termination

Also on March 28, Hoque's record was terminated from the Student and Exchange Visitor Information System ("SEVIS"), a federal database used to track international students. (App. 993; R. Doc. 29 at 3.) The Government's "reason for terminating" his "record was a shifting sand, changing weeks after he was detained." (App. 1025; R. Doc. 36 at 14.)

The SEVIS termination cited sections 237(a)(1)(C)(i) and 237(a)(4)(C) of the INA, which allow deportation for failure to maintain status and the FPG, respectively. (*Id.*) Later, the termination reason was changed to "OTHER - Individual identified in criminal records check and/or has had their visa revoked." (*Id.*)

Below, the district court concluded that the Government could "not explain why foreign policy was [initially] cited," and did not "even address" its initial indication that Hoque's visa revocation was based on a "failure to maintain status." (*Id.*)

### D. Hoque's Immigration Proceedings and Bond Determination

After being detained for almost two weeks, on April 9, Hoque had a bond hearing before an immigration judge. (App. 995; R. Doc. 29 at 5.) The immigration judge ruled he "posed no danger to the community and could be safely released on a $7,500 bond." (*Id.*) DHS appealed and imposed an automatic stay, without establishing any facts addressing danger, flight risk, or other considerations. (*Id.*) As a result, Hoque remained in detention solely due to the invocation of the stay. (*Id.*)

While the initial removal charge was failure to maintain status (App. 1020; R. Doc. 36 at 9), on April 18, the Government added another removal charge, section 237(a)(1)(B), citing a purported revocation of his F-1 visa (App. 995–96; R. Doc. 29 at 5–6). The next week, the Government withdrew its original charge without explanation and elected to proceed with the purported visa revocation as the sole charge. (App. 996; R. Doc. 29 at 6.)

## III. Habeas Proceedings Below

On April 18, Hoque filed a petition for Writ of Habeas Corpus challenging his detention under the First and Fifth Amendments and the APA. (App. 12; R. Doc. 1.) On April 21, Hoque moved for a Temporary Restraining Order, (App. 103; R. Doc. 8), and on May 5, the district court ordered his release on bail pending adjudication of his habeas, subject to conditions previously imposed by the immigration judge, noting that Hoque had "presented substantial First and Fifth Amendment claims." (App. 990, 997; R. Doc. 29 at 1, 7.)

On June 17, the district court granted Hoque's petition for Writ of Habeas Corpus, granting relief on all of Hoque's claims, and ordered that he remain released. (App. 1012; R. Doc. 36.)

As to Hoque's First Amendment claim, the district court concluded that the Government's targeting of Hoque for detention was based on his exercise of protected speech on a matter of public concern. (App. 1021; R. Doc. 36 at 10.) Specifically, it pointed to the Government's shifting rationales. (App. 1019–21; R. Doc. 36 at 8–10.) The arresting officers cited visa revocation, and the NTA initially listed failure to maintain status as the grounds for removal, but Hoque was ultimately charged with visa revocation under section 237(a)(1)(B). (App. 1020; R. Doc. 36 at 9.) The district court found that the Government had "reverse-engineered justifications for speech-based targeting and enforcement." (*Id.*) In doing so, it found that interactions between DHS and DOS confirmed that "DHS had already formed its intent to pursue removal, even before [Hoque]'s visa was [allegedly] revoked." (App. 1019; R. Doc. 36 at 8.) Indeed, the Government decided to keep its actions silent, knowing that it "intend[ed] to immediately pursue removal of [Hoque]." (*Id.*)

Rather than "providing a lawful basis" to act against Hoque, the sole piece of evidence put forth by the Government reinforced Hoque's claim that DHS targeted him for removal "and then sought the visa revocation as the purported legal justification." (*Id.*) The district court also concluded that the Government's failure

to produce copies of the referenced documents resulted in an "evidentiary void" that left "unrebutted the strong temporal and circumstantial link between the Government's statements regarding international students, [Hoque]'s public expression, and the enforcement actions taken against him." (App. 1021; R. Doc. 36 at 10.) Ultimately, the district court found that Hoque "was arrested and detained because he expressed pro-Palestinian views and criticized violence in Gaza. That is core political speech." (*Id*.)

As to Hoque's Fifth Amendment claim, the district court found that "the preponderance of the evidence shows that [Hoque]'s detention was illegitimate in both purpose (punishment of protected speech) and effect (intimidation of other international students)." (App. 1022; R. Doc. 36 at 11.) In addition, his arrest was "rooted in improper purpose and lack[ed] an individualized justification." (App. 1023; R. Doc. 36 at 12.)

As to Hoque's APA claim, the district court observed that "DHS's reason for terminating [Hoque]'s SEVIS record was a shifting sand, changing weeks after he was detained." (App. 1025; R. Doc. 36 at 14.) It concluded that the SEVIS termination "was not done in accordance with law or agency policy." (App. 1028; R. Doc. 36 at 17.) Thus, "[t]o the extent that SEVIS termination provides a basis for [Hoque]'s detention, the detention is unlawful." (*Id.*)

## SUMMARY OF ARGUMENT

The appeal is not moot because an immigration bond order is not permanent enough to eliminate the threat of re-detention—something that has already occurred. The Government can revoke Hoque's bond at any time. Even if the appeal is moot, the district court's order should not be vacated. The Government caused that mootness through its administrative actions in granting bond, and the public interest favors a decision on constitutional law that is influential in other district courts.

The INA did not strip jurisdiction over Hoque's detention claim. First, section 1201(i) does not apply because Hoque's petition does not challenge his purported visa revocation. Second, section 1226(e) does not apply because Hoque challenges the Government's lack of authority to detain him under the Constitution, not any discretionary decision. Third, section 1252(g) does not apply because Hoque does not challenge one of the three discretionary actions barred by the provision. Fourth, section 1252(b)(9) does not apply because no final order of removal has issued, and also because Hoque's detention claims under the First or Fifth Amendments cannot be meaningfully reviewed or remedied by a federal appellate court hearing a Petition for Review ("PFR"). And fifth, interpreting section 1252 to bar review of Hoque's detention claims would violate the Suspension Clause and the First Amendment.

Finally, the district court's grant of habeas was proper. First, as the district court determined based on findings of fact that can only be disturbed on clear error, Hoque established a prima facie claim of First Amendment retaliation, and the Government's shifting justifications did not meet its burden to rebut that claim. The record also supports Hoque's First Amendment viewpoint discrimination claim. Second, the Government violated Hoque's substantive due process rights under the Fifth Amendment by punitively detaining him without any legitimate justification based on flight risk or danger. Third, the district court properly concluded that, to any extent Hoque's detention was premised on the Government's revocation of his SEVIS status, that revocation was arbitrary and capricious.

## STANDARD OF REVIEW

This Court reviews the district court's conclusions of law de novo and findings of fact for clear error. *Bell v. Att'y Gen. of Iowa*, 474 F.3d 558, 560 (8th Cir. 2007).

## ARGUMENT

### I. The Government Has Not Carried its Burden to Prove Mootness or Entitlement to *Munsingwear* Vacatur

The Government argues that its own appeal is moot because, on August 27, 2025, the BIA affirmed the immigration judge's findings that Hoque is neither a public danger nor a significant flight risk ("Bond Order"), and dismissed DHS's

appeal.[3] On that basis, the Government also seeks vacatur of the district court's grant of habeas. But as Hoque already argued, the appeal is not moot, and the habeas judgment should be affirmed, not vacated.[4]

**A. The Appeal Is Not Moot**

The Government argues that this case became moot when the BIA affirmed the Bond Order. The Supreme Court's decision in *Nielsen v. Preap* forecloses that argument. 586 U.S. 392, 403 (2019). There, the plaintiffs filed habeas petitions challenging pre-removal detention under 8 U.S.C. § 1226(c). *Nielsen*, 586 U.S. at 400, 404. Like Hoque, one of the named plaintiffs "obtained release on bond" after being awarded a "preliminary injunction in a separate case." *Id.* at 403. Rejecting the Government's argument that mootness presented a "potential snag" to appellate review, the Supreme Court explained that unless injunctive relief barring detention is "made permanent" and "not disturbed on appeal," a non-citizen's "release on bond" does not moot a habeas action because he still faces "the threat of re-arrest." *Id.* Thus, the plaintiff was left with a "live claim." *Id.*; *see also Miranda v. Garland*, 34 F.4th 338, 357 n.7 (4th Cir. 2022) (habeas petition not mooted by release because

[3] The Government filed a motion to dismiss this appeal as moot and vacate the district court's order in light of the BIA's bond affirmance, *Hoque v. Trump*, No. 25-2516, Mot. Vacatur & Dismissal at 2–3 (8th Cir. Dec. 8, 2025) ("Mot. Dismiss"), and this Court ordered that the Government's motion be considered with its merits appeal. *Hoque v. Trump*, No. 25-2516, Order (8th Cir. Jan. 6, 2026).

[4] Hoque incorporates his Opposition to the Government's Motion to Dismiss, ("Opp. Mot. Dismiss") herein.

government could "at any time . . . revoke a bond" since the governing statute "does not provide any limiting conditions for revoking bond"); *Bello-Reyes v. Gaynor*, 985 F.3d 696, 699 n.3 (9th Cir. 2021) (similar); *Rosales-Garcia v. Holland*, 322 F.3d 386, 395 (6th Cir. 2003) (similar). As explained in Hoque's Opposition to the Government's Motion to Dismiss, these same principles apply here.[5]

The Government claims that the Bond Order prevents DHS "from re-detaining Hoque for the remainder of his removal proceedings." (App. Br. at 17.) But the Government can revoke Hoque's bond "at any time," including for reasons the district court already held were unlawful. *See* 8 U.S.C. § 1226(b). (*See also* Opp. Mot. Dismiss at 11–15.) Instead of addressing the plain language of section 1226(b), the Government suggests that the possibility of re-detention is too speculative and cannot happen without a "change in circumstances." (*See Hoque v. Trump*, No. 25-2516, Reply Mot. Vacatur & Dismissal at 3 (8th Cir. Dec. 29, 2025) (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981)).)

Such a suggestion is wrong, and the Government's recent conduct proves as much. Two weeks after representing that DHS "cannot re-detain [Hoque] absent a

[5] The Government's mootness arguments rely on *Riley v. INS*, 310 F.3d 1253 (10th Cir. 2002), and *Simpson v. Camper*, 974 F.2d 1030 (8th Cir. 1992), which are distinguishable for reasons explained in Hoque's opposition, (*see* Opp. Mot. Dismiss at 14–15), and were decided before *Nielsen*. And in any case, those decisions are not binding on this Court. *Nielsen* is. *E.g.*, *T.L. ex rel. Ingram v. United States*, 443 F.3d 956, 960 (8th Cir. 2006).

new factual or statutory predicate," (*id.*) the Government did just that (R. Doc. 45 ¶ 2). On January 15, 2026, federal agents appeared at Hoque's home, arrested him, and held him at a DHS facility until he was released six hours later, without any explanation. (R. Doc. 45 ¶¶ 2–16.) According to the arresting officer, Hoque was detained because "government systems checks to identify criminal aliens," showed that Hoque had "previously been arrested for assault"—the same misdemeanor the Government pretextually identified when it first retaliated against Hoque a year earlier. (R. Doc. 51, ¶¶ 4, 12.) The Government does not contend that any new factual or statutory predicate existed. (R. Doc. 51 ¶ 4.[6])

The January re-detention of Hoque makes this "an *a fortiori* case. There is no mere risk that [the Government] will repeat its allegedly wrongful conduct; it has already done so." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 662 (1993) (rejecting mootness); *see also Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 286 (5th Cir. 2012) (rejecting mootness because defendant "ha[d] already repeated its allegedly wrongful conduct").

[6] The Government relies on its "motion and reply" for its mootness arguments (App. Br. at 16), ignoring the impact of the January arrest, which it confines to a footnote. The Court may take judicial notice of the district court docket and may consider events after the notice of appeal when considering mootness. *Cravens v. Smith*, 610 F.3d 1019, 1029 (8th Cir. 2010); *Bd. of License Comm'rs of Town of Tiverton v. Pastore*, 469 U.S. 238, 240 (1985).

Finally, the Government wrongly contends that this appeal should be dismissed as moot because this Court dismissed a related case. (App. Br. at 18–19 (citing *Harsono v. Akerson*, No. 25-2413, 2026 WL 88549 (8th Cir. Jan. 8, 2026)).) But the result in *Harsono* is not dispositive. *E.g.*, *Cleveland v. Ciccone*, 517 F.2d 1082, 1083 n.2 (8th Cir. 1975) (explaining that one of "[t]wo related appeals" was dismissed as "moot" while the other was resolved on the merits). Among other differences, the appellant in *Harsono* essentially conceded mootness, and was not re-detained. *See Harsono v. Trump*, No. 25-2413, Resp. Mot. Vacatur & Dismissal at 7 (8th Cir. Dec. 18, 2025) (conceding "this appeal may very well be moot").

### B. The Government Is Not Entitled to *Munsingwear* Vacatur

Even if the Government establishes mootness, it has not established that the judgment should be vacated. *Munsingwear* vacatur "is an equitable remedy, not an automatic right." *Moore v. Thurston*, 928 F.3d 753, 758 (8th Cir. 2019). "In determining whether vacatur is appropriate," the Court examines "the twin considerations of fault and public interest." *Id.* Neither warrant vacatur here.

#### 1. The Government is Responsible for Any Mootness

*Munsingwear*'s primary purpose is to prevent a winning party from effectively locking in a favorable judgment over which the losing party cannot obtain appellate review, but that concern is not present where, as here, the prevailing party (Hoque) is not responsible for mootness. (Opp. Mot. Dismiss at 19.)

Rather, the source of the supposed mootness here—the BIA's affirmance of the Bond Order—is directly attributable to the Government. The Government contends that because the BIA is not the "governmental actor . . . that caused Hoque's detention," its order was a mere "event of 'happenstance.'" (App. Br. at 17–18 (citation omitted).) But the BIA is an appellate body housed in the Executive Office for Immigration Review, an office within DOJ, charged with review of administrative adjudications assigned to it by the Attorney General, 8 C.F.R. § 1003.1, who is a Respondent in this appeal.

In other words, the BIA answers to one of the litigants seeking vacatur. The law does not permit one arm of the Executive Branch to take an administrative action, which another arm of the Executive Branch can then use to vacate an adverse decision that the Executive Branch alone brought into being. *E.g.*, *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24 (1994) ("The principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action."). Because *Munsingwear* is concerned with manipulation of courts' jurisdiction in service of stacking the deck of extant judicial precedent, *see id.*, the Court should reject the Government's effort here.

**2. Public Interest Weighs Against Vacatur**

The public interest is also served by leaving the judgment in place because, as a judicial precedent, it is presumptively correct and valuable to the legal community

as a whole. *U.S. Bancorp Mortg. Co.*, 513 U.S. at 26. This Court routinely denies vacatur when a district court's opinion protects vital free speech rights on matters of public importance—as it should here. (Opp. Mot. Dismiss at 21–22 (collecting cases).)

The issue in this case "is not merely the legality of a single student's detention, but whether the First and Fifth Amendments retain their full force when invoked by arguably the most vulnerable—noncitizens in federal custody." (App. 1013; R. Doc. No. 36 at 2.) The district court's order does not affect Hoque only; it contributes to a body of law invalidating the Government's use of the Policy to unlawfully retaliate against noncitizens for exercising First Amendment rights. *E.g.*, *AAUP*, 2026 WL 524753, at *1. It is a published opinion, addresses a matter of first impression, and is being cited by courts across the country. *See, e.g.*, *Pesina v. Arnott*, No. 6:26-CV-3124-MDH, 2026 WL 673753, at *3 (W.D. Mo. Mar. 10, 2026); *Castro-Vasquez v. Thompson*, No. CV H-25-5164, 2026 WL 206761, at *5 (S.D. Tex. Jan. 27, 2026); *Ozturk v. Trump*, No. 25-CV-12334-DJC, 2025 WL 3514320, at *6 (D. Mass. Dec. 8, 2025).)

The Government "offer[s] no argument as to how vacatur here serves the public interest, instead arguing only how vacatur serves them." *SD Voice v. Noem,* 987 F.3d 1186, 1191 (8th Cir. 2021). Accordingly, the Government has failed to establish entitlement to vacatur.

## II. The INA Does Not Bar Review of Hoque's Habeas Claims

The Government's primary argument is that the INA strips courts of jurisdiction to review the constitutionality of Hoque's detention. Two sister circuits have rejected this argument in reasoned opinions. *See Mahdawi v. Trump*, 136 F.4th 443, 453–54 (2d Cir. 2025) (addressing detention claim); *Öztürk v. Hyde*, 136 F.4th 382, 395–96 (2d Cir. 2025) (same); *Suri v. Trump*, No. 25-1560, 2025 WL 1806692 at *7–8 (4th Cir. July 1, 2025) (same). *But see Khalil v. Trump*, 164 F.4th 259, 265 (3d Cir. 2026) (addressing injunction barring *both* detention *and* removal).

"The writ of habeas corpus has always been available to review the legality of Executive detention." *I.N.S. v. St. Cyr*, 533 U.S. 289, 305 (2001) (footnote omitted). Essential canons of statutory interpretation mandate a narrow reading of the statutes at issue: (i) "the strong presumption in favor of judicial review of administrative action," (ii) "the longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction," (iii) the rule that a "clear indication" of congressional intent is expected when a proposed interpretation would push "the outer limits of Congress' power," and (iv) the canon of constitutional avoidance. *Id.* at 298–300; *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 137 (2020) (cleaned up); *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020). Moreover, the protections of habeas are at their strongest—and therefore most difficult to

displace—when it comes to executive detention. *See Boumediene v. Bush*, 553 U.S. 723, 783 (2008); *St. Cyr*, 533 U.S. at 301, 314.

The Government fails to overcome these high bars. Rather than focusing on the face of Hoque's petition and accepting the allegations as true, *see Branson Label, Inc. v. City of Branson* 793 F.3d 910, 914–15 (8th Cir. 2015), the Government "overstates Petitioner's claims to make its jurisdictional arguments" and makes misplaced attacks on the district court's fact findings on the merits. (App. 1016; R. Doc. 36 at 5.) But "[t]he statutes [the Government cites] cannot be stretched so far that they entirely preclude any habeas jurisdiction over constitutional challenges to immigration detention." (*Id.*) Because Hoque's habeas petition seeks "review of the legality of his detention, nothing more," no INA provision bars review. (App. 1015; R. Doc. 36 at 4.)

### A. Section 1201(i) Does Not Apply

Several INA provisions cited by the Government can be disposed of quickly. The first, 8 U.S.C. § 1201(i), precludes "judicial review" of visa revocations "except in the context of removal proceedings if" as is true here "such revocation provides the sole ground for removal." Hoque did not challenge the validity of his purported visa revocation in this action. Thus, "the merits of a visa revocation are not before the Court," and section 1201(i) does not apply. *Ozturk v. Trump*, 779 F. Supp. 3d 462, 482 (D. Vt. Apr. 18, 2025).

The Government argues that Hoque's detention is "inextricably intertwined with the State Department's visa revocation, as that revocation provided the legal basis" for his detention. (App. Br. 42.) But the decision to detain Hoque was "independent" from the purported visa revocation. *See Öztürk*, 136 F.4th at 397. Hoque is subject to permissive detention under 8 U.S.C. § 1226(a) and, as the Government acknowledges, it is not required to detain him. (App. 55; R. Doc. 1-2; *see* Mot. Dismiss, Ex. B ("DHS did not assert that the respondent was subject to mandatory detention under section 236(c)").) Indeed, the district court ruled on the legality of Hoque's detention without deciding whether the purported visa revocation was lawful. *Compare*, App. 1012; R. Doc. 36 *with Bolante v. Achim*, 457 F. Supp. 2d 898, 902 (E.D. Wis. 2006) (holding section 1201(i) applied where adjudicating constitutionality of detention "depend[ed] on resolution of . . . whether the government lawfully revoked [petitioner's] visa"). The Government's argument that section 1201(i) precludes habeas review of detention for any noncitizen whose visa has purportedly been revoked is wrong.

### B. Section 1226(e) Does Not Apply

Next, the Government cites 8 U.S.C. § 1226(e), which provides that the Secretary of Homeland Security's "discretionary judgment" regarding whether to detain a noncitizen pending a decision on removal, "shall not be subject to review." Courts have universally balked at applying the jurisdiction-stripping provision of

section 1226(e) to constitutional challenges to immigration detention. *See, e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281, 295–96 (2018) (plurality opinion).

First, section 1226(e) does not contain "a particularly clear statement" of "Congress' intent" to strip habeas jurisdiction. *Demore v. Kim*, 538 U.S. 510, 517 (2003) (holding that section 1226(e) lacked "explicit provision barring habeas review" of constitutional challenge to detention).

Second, section 1226(e) does not bar challenges to the "extent of the Government's detention authority," which are "not a matter of 'discretionary judgment.'" *Jennings*, 583 U.S. at 295–96; *see also Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020); *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018) (similar); *Al-Siddiqi v. Achim*, 531 F.3d 490, 494 (7th Cir. 2008). The Government's argument that Hoque's constitutional claims challenge DHS's discretionary judgment (App. Br. 44) should be rejected as the bald assertion it is. There is no discretion to engage in illegal detention, especially in violation of the Constitution. *See Ozturk*, 779 F. Supp. 3d at 487; *Mohammad S. v. Tritten*, No. 20-CV-793, 2020 WL 2750836, at *17 (D. Minn. Apr. 28, 2020).

### C. Section 1252(g) Does Not Apply

The Government next argues that Hoque's detention is inseparable from the decision to "commence" removal proceedings and, thus, review is barred by 8 U.S.C. § 1252(g). (App. Br. at 29). But this argument "stretche[s]" the statute beyond

its text and Supreme Court precedent (App. 1016; R. Doc. 36 at 5), contradicts legislative history, and is unsupported by the authorities the Government cites.

First, section 1252(g) is "narrow[ly]" tethered to exercises of discretion by the Attorney General and applies "only to three discrete actions . . . to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 482 (1999); *see Jennings*, 583 U.S. at 294 (explaining that section 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General" and should be read to "refer to just those three specific actions themselves"). "[M]any other decisions or actions that may be part of the deportation process" do not fall within the three discrete exercises of "prosecutorial discretion" covered by section 1252(g). *AADC*, 525 U.S. at 489. Since *AADC*, the Supreme Court has continued to emphasize 1252(g)'s "narrow" ambit. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020); *Jennings*, 583 U.S. at 294.

The Government does not argue that Hoque's habeas petition directly challenges any of the three actions listed in section 1252(g).[7] (App. Br. at 21–31.)

---

[7] In passing, the Government complains that the Prayer for Relief seeks to enjoin the Government "from removing Hoque on the basis of a determination made under the Policy." (App. Br. at 28 (quoting R. Doc. 1 at 32).) But Hoque made clear that he did "not seek review or relief regarding any future removal order or any agency adjudication of his removal claims." (R. Doc. 24 at 11 n.13.) The request in his petition related only to the district court's "authority under the All Writs Act, 28

*(cont'd)*

Instead, it argues that the commencement of removal proceedings was the "factual and legal predicate" for Hoque's detention and therefore detention arose from the decision to commence proceedings. (*Id.* at 26–27.) But detention was not a necessary consequence of the Government's decision to commence removal proceedings against Hoque. Indeed, the Government routinely initiates removal proceedings against individuals without detaining them. *See, e.g.*, Pet'rs' Br., *United States v. Texas*, 2022 WL 4278395, at *8–9 (Sep. 12, 2022) (noting that "perennial constraints on detention capacity" prevent executive from detaining everyone subject to removal). And it routinely detains people before deciding to place them in removal proceedings. *See, e.g.*, 8 C.F.R. 287(d) (allowing 48 hours to make a custody and charging determination after initial detention).[8]

As the Second Circuit recently explained, the phrase "arising from" in section 1252(g) is not "infinitely elastic" and does not reach claims that are "collateral to . . . the removal process," such as Hoque's detention claim, that can be resolved without affecting removal proceedings. *Öztürk*, 136 F.4th at 397. Accepting the Government's argument would "sweep in any claim that can technically be said to

---

U.S.C. § 1651, to protect its own jurisdiction from the consequences of unlawful removals in the absence of any order authorizing it." (*Id.*) And the district court never enjoined Hoque's removal. (*See* R. Docs. 29, 36.)

[8] *See also* Mem. from Asa Hutchinson, Undersecretary, Border & Transp. Sec., to Michael J. Garcia, Assistant Sec'y, U.S. ICE, and Robert Bonner, Comm'r, U.S. CBP (Mar. 30, 2004), https://perma.cc/F3RF-VK6E.

‘arise from’ the three listed actions of the Attorney General,” *Jennings*, 583 U.S. at 294, and would allow the Government to “accomplish something extraordinarily general: eviscerate habeas corpus for noncitizens whenever the government detains them and also seeks to remove them,” *Öztürk*, 2025 WL 2679904, at *17 (Nathan, J., concurring in denial of en banc). *See Kong v. United States*, 62 F.4th 608, 616 (1st Cir. 2023). The Supreme Court has already rejected this position as “implausible.” *Regents*, 591 U.S. at 19. And because such an interpretation would, at a minimum, raise serious questions about whether Congress unconstitutionally suspended habeas corpus in an extraordinarily broad category of cases, it must be avoided. *See* U.S. Const. art. I, § 9, cl. 2 (Suspension Clause); *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (explaining the “cardinal principle of statutory interpretation” that, “when an Act of Congress raises a serious doubt as to its constitutionality,” courts must “first ascertain whether a construction of the statute is fairly possible by which the question may be avoided” (cleaned up)); *see infra* II.E.

Second, contrary to the Government’s arguments, the legislative history of section 1252(g) supports Hoque. Congress expressly stated that the REAL ID Act of 2005 “would not preclude habeas review over challenges to detention that are independent of challenges to removal orders.” H.R. Rep. No. 109-72, at 175 (2005) (Conf. Rep.). This statement appeared immediately after an “extensive examination”

of precedent describing the types of jurisdiction-stripping provisions that would not violate the right to habeas corpus. *Kong*, 62 F.4th at 614–16 (reviewing legislative history). Congress's careful review of precedent demonstrates its "attentiveness to the constitutional limitations on withdrawing habeas relief from those seeking release from unlawful detention," *id*. at 615, and it does not evince "a clear statement of congressional intent to repeal habeas jurisdiction" over all detention claims. *St. Cyr*, 533 U.S. at 298.

Third, in line with the plain text of the statute, Supreme Court precedent, and legislative history, Courts addressing challenges to *detention*—the only challenge Hoque brought—universally hold that section 1252(g) does not preclude judicial review. *See, e.g.*, *Öztürk*, 136 F.4th at 397–98 ("Öztürk's . . . detention does not arise from the government's commencement of proceedings." (cleaned up)); *Suri*, 2025 WL 1806692, at *7 (explaining "§ 1252(g) simply doesn't extend to habeas challenges to present immigration confinement"); *Bello-Reyes*, 985 F.3d at 700 n.4 (holding that section 1252(g) did not deprive jurisdiction to hear a habeas petition alleging that detention pending removal was First Amendment retaliation because the petitioner was not challenging any of "the three actions listed" in the statute); *see also Kong*, 62 F.4th at 609 (holding that section 1252(g) "does not preclude jurisdiction over the challenges to the legality of [a noncitizen's] detention"); *Kellici v. Gonzales,* 472 F.3d 416, 420 (6th Cir. 2006) (REAL ID act did not strip

jurisdiction over challenges to "constitutionality of [petitioners'] arrest and detention"); *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) (section 1252(g) is no impediment to adjudicating challenges to "detention while the administrative process lasts"); *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) (1252(g) did not apply to petitioner's "constitutional challenge to his detention").

The Government cites numerous inapposite cases, (App. Br. at 22–26, 29–31), involving *direct* challenges to the commencement of removal proceedings—not to unconstitutional detention.[9] This Court's decision in *Silva v. United States*, is likewise inapplicable because it involved a direct challenge to the execution of

[9] *See AADC*, 525 U.S. at 474 (suit "to prevent the initiation of deportation proceedings"); *Zundel v. Gonzales*, 230 F. App'x 468, 475 (6th Cir. 2007) (claim that "the decision to issue an order of removal was unconstitutional"); *Sissoko v. Rocha*, 509 F.3d 947, 950 (9th Cir. 2007) (petitioner subject to mandatory detention due to commencement of expedited removal proceedings); *Saadulloev v. Garland*, No. 3:23-CV-00106, 2024 WL 1076106, at *3 (W.D. Pa. Mar. 12, 2024) (challenge to detention amounted to challenge to decision to commence proceedings because noncitizen was subject to mandatory detention statute); *Kumar v. Holder*, No. 12-CV-5261 SJF, 2013 WL 6092707, at *6 (E.D.N.Y. Nov. 18, 2013) (challenge to "initiation of removal proceedings against" petitioner); *see also Humphries v. Various Fed. USINS Emps*., 164 F.3d 936, 945 (5th Cir. 1999) (holding that section 1252(g) did not apply to detention-based claims but precluded review of challenge to "decision to place [petitioner] in exclusion proceedings"); *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) (1252(g) did not apply to claim by post-final order plaintiff that ICE had no authority to detain him past 90-day removal period).

removal orders, not unlawful detention. 866 F.3d 938, 939 (8th Cir. 2017) (seeking compensation for improper execution of removal order).[10]

Finally, courts have consistently recognized that section 1252(g) does not reach challenges to the "very authority" of the executive's actions. *Garcia v. Att'y Gen. of U.S.*, 553 F.3d 724, 729 (3d Cir. 2009); *see Ali v. Mukasey*, 524 F.3d 145, 150 (2d Cir. 2008) (1252(g) inapplicable where petitioner alleges they were "placed in removal proceedings unlawfully or for reasons that would offend the Constitution"); *Madu*, 470 F.3d at 1368 (1252(g) "does not proscribe substantive review of the underlying legal bases for those discretionary decisions"); *Arce v. United States*, 899 F.3d 796, 801 (9th Cir. 2018) (similar). Here, the district court found that Hoque "was arrested and detained because he expressed pro-Palestinian views and criticized violence in Gaza." (App. 1021; R. Doc. 36 at 10.) Far from challenging a discretionary decision to detain him pending removal, he "challenges his *detention* on the grounds that it violates his rights under the Constitution." *Mahdawi*, 136 F.4th at 450; *cf. Silva*, 866 F.3d at 940 (cited by Government) (petitioner's "claims are directly connected to the execution of a removal order"). In

[10] *See also Vargas v. United States Dep't of Homeland Sec.*, No. 1:17-CV-00356, 2017 WL 962420, at *2-3 (W.D. La. Mar. 10, 2017) (cited by the Government) ("[T]his Court has subject matter jurisdiction to consider Vargas's pre-removal detention" but not "an attack on her removal order.").

sum, section 1252(g) did not strip the district court of jurisdiction to review Hoque's habeas petition, which sought to end his unconstitutional detention.

### D. Sections 1252(a)(5) and (b)(9) Do Not Apply

The Government argues that sections 1252(a)(5) and (b)(9) prevented Hoque from challenging his detention because they channel "all legal and factual questions—including constitutional ones—that may arise from the removal of an alien into the INA's removal process." (App. Br. at 31.) Under this reading, noncitizens cannot obtain judicial review of unconstitutional detention unless and until an immigration judge issues a final order of removal, they appeal to the BIA, and then appeal to the appropriate circuit court—many months, if not years, later. And even then, they must prevail in their *removal* case in order to secure release (indirectly) from unlawful *detention*. Even worse, detention later found to have been illegal cannot be remedied by a federal appellate court hearing a Petition for Review (PFR). The Government's interpretation ignores the plain language of the statute, misconstrues Hoque's habeas petition, and raises serious constitutional concerns.

#### 1. Sections 1252(a)(5) and (b)(9) apply only to judicial review of an order of removal, which has not issued here

First, the Government ignores that sections 1252(a)(5) and (b)(9) apply only to review of an order of removal, which has not been issued to Hoque. "Section 1252(a)(5) bars district court review 'of an order of removal,' but no order of removal is at issue here." *Öztürk*, 136 F.4th at 401. Section 1252(b)(9) requires that

claims "arising from any action taken or proceeding brought to remove an alien" be raised "only in judicial review of a final order," 8 U.S.C. § 1252(b)(9), but the Court "cannot analyze (b)(9) without reference to the limiting language in (b)." *Suri*, 2025 WL 1806692, at *8 n.7. The prefatory language at section 1252(b) applies to "an order of removal under subsection (a)(1)," 8 U.S.C. § 1252(b), which in turn applies to "*a final order of removal*," 8 U.S.C. § 1252(a)(1) (emphasis added). Thus, as the Supreme Court has noted, section 1252(b)(9) "applies only with respect to review of an order of removal under subsection (a)(1)." *St. Cyr*, 533 U.S. at 313 (cleaned up);[11] *see Regents*, 591 U.S. at 19 ("§1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal . . . ." (cleaned up)).

Numerous circuit courts agree. *See Öztürk*, 136 F.4th at 399 ("As a threshold matter, the very text of § 1252(b) sets out requirements only 'with respect to review of an order of removal under subsection (a)(1).' No such order of removal is at issue here." (cleaned up)); *Suri*, 2025 WL 1806692, at *9 (same); *Casa De Maryland v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 696–97 (4th Cir. 2019) (same); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1075 (9th Cir. 2006) ("By its terms,

[11] Although *St. Cyr* was issued prior to the REAL ID Act, the REAL ID Act did not modify § 1252(b) or the instruction that § 1252(b)(9) "applies only '[w]ith respect to review of an order of removal under subsection (a)(1).'" 8 U.S.C. § 1252(b).

[§ 1252(b)(9)] does not apply to federal habeas corpus petitions that do not involve final orders of removal."); *Madu*, 470 F.3d at 1367 (same). And while this Court has not explicitly addressed the issue, it has not questioned a district court's jurisdiction to hear constitutional challenges to detention pending removal proceedings. *See Banyee v. Garland,* 115 F.4th 928, 930 (8th Cir. 2024); *Avila v. Bondi*, 170 F.4th 1128, 1132 (8th Cir. 2026).

The Government claims that the Supreme Court rejected this interpretation in *Jennings*. (App. Br. at 40 n.5.) Not so. The Government relies on a misreading of Justice Alito's opinion. *See Khalil*, 164 F.4th at 283–85 (Freeman, J., dissenting in part). In explaining why the challenge at issue was not barred by section 1252(b)(9), Justice Alito noted that the detainees were not challenging "an order of removal," "the decision to detain them in the first place or to seek removal," or "any part of the process by which their removability will be determined." *Jennings*, 583 U.S. at 294–95. But even the case the Government cites on this point only went so far as to say Justice Alito's opinion "strongly suggested" that a challenge to detention "in the first place" would be barred. *Khalil*, 164 F.4th at 277. In other words, it was dicta. And it was dicta incompatible not only with five Justices in *Jennings* itself,[12] but also

[12] That is why the Government's wishful interpretation of the *Jennings* dicta is not, as the Government argues, (App. Br. 40 n.5 (citing *Marks v. United States*, 430 U.S. 188 (1977))), a controlling "*Marks*" holding in the case. *See Khalil*, 164 F.4th at 284–85 (Freeman, J., dissenting in part).

with how the Supreme Court, two years later, characterized *Jennings*' holding. *See Regents*, 591 U.S. at 19. It further conflicts with the decisions of multiple circuits that have adopted Justice Breyer's interpretation following *Jennings*. *See Öztürk*, 136 F.4th at 399; *Suri*, 2025 WL 1806692 at *9. Finally, this Court, even post-*Jennings*, has not questioned federal court jurisdiction over constitutional challenges to immigration detention. *See Banyee,* 115 F.4th at 930 (citing *Jennings*). Thus, (b)(9) does not apply here, where there is no order of removal.

#### 2. Even if Section 1252(b)(9) applies before a final order of removal, Hoque's challenges to his detention are not barred

Even if section 1252(b)(9) can apply before issuance of a final order of removal, it does not bar Hoque's unconstitutional detention claims.

The Supreme Court has repeatedly rejected an expansive reading of section 1252(b)(9) that would render claims of "prolonged detention effectively unreviewable." *Jennings*, 583 U.S. at 293; *see Johnson v. Guzman Chavez*, 594 U.S. 523, 533 n.4 (2021) (six current Justices finding jurisdiction under section 1252(b)(9) to review detention challenge); *Nielsen*, 586 U.S. at 402 (finding section 1252(b)(9) did not preclude review of detention challenge); *Regents*, 591 U.S. at 19. In enacting the REAL ID Act of 2005, Congress "stated unequivocally" that section 1252(b)(9) "should not be read to preclude" "challenges to detention," because "detention claims are 'independent of challenges to removal orders.'" *Aguilar v.*

*ICE*, 510 F.3d 1, 11 (1st Cir. 2007) (quoting H.R. Rep. No. 109-72 at 175, *reprinted in* 2005 U.S.C.C.A.N. at 300).

Against this backdrop, this Court has reviewed such claims in habeas without ever questioning a district court's jurisdiction to hear constitutional challenges to detention. *See, e.g.*, *Banyee,* 115 F.4th at 930; *Avila*, 170 F.4th at 1132. Other courts have done the same. *Öztürk*, 136 F.4th at 390–401 (holding that habeas petitioner's First Amendment challenge to her detention was not barred by section 1252(b)(9) because it did not challenge her removal proceedings); *Gonzalez v. ICE*, 975 F.3d 788, 810–11 (9th Cir. 2020) (holding that 1252(b)(9) did not bar jurisdiction "because claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process"); *Kellici*, 472 F.3d at 420 (same where "habeas petitions challenged only the constitutionality of the arrest and detention"); *Aguilar*, 510 F.3d at 11 (identifying "challenges to the legality of detention" as squarely outside section 1252(b)(9)'s scope); *Miranda*, 34 F.4th at 353 n.6 (section 1252(b)(9) does not bar review of challenge to detention under Fourth and Fifth Amendments).

Consistent with *Jennings'* instruction that section 1252(b)(9) does not apply to claims that cannot be meaningfully reviewed in a PFR, the Third Circuit derived a simple "now-or-never" principle: "When a detained alien seeks relief that a court of appeals cannot meaningfully provide on [PFR] of a final order of removal,

§ 1252(b)(9) does not bar consideration by a district court." *E.O.H.C. v. Sec'y D.H.S.*, 950 F.3d 177, 180 (3d Cir. 2020); *see also, e.g.*, *Aguilar*, 510 F.3d at 11 ("We thus read the words 'arising from' in section 1252(b)(9) to exclude claims that are independent of, or wholly collateral to, the removal process."); *see also St. Cyr*, 533 U.S. at 313–14. And because a PFR is a limited proceeding focused on review of the legality of a *removal* order only, 8 U.S.C. § 1252(b)(4)(A) (scope of review limited to "administrative record on which the *order of removal* is based") (emphasis added), a court of appeals reviewing such an order would have no occasion to review a claim of unlawful *detention*, nor could it ever *remedy* such detention (at least directly).

Hoque's "core argument is that his free speech and due process rights are being violated, now." *Mahdawi*, 136 F.4th at 452. By subjecting him to retaliatory detention, the Government seeks to censor and deter his and others' constitutionally protected speech in support of Palestinian rights when it could still influence public debate. (App. 1017–20; R. Doc. 36 at 6–10); *see Elrod v. Burns*, 427 U.S. 347, 374 n.29 (1976). Requiring him to wait until the end of a lengthy PFR process to seek review would render his First and Fifth Amendment injuries "effectively unreviewable" and allow the Government to accomplish the unlawful object of his detention. *See Jennings*, 583 U.S. at 293. The censorship of speech that would have

influenced public debate at a particular point in time can never be remedied—a quintessential "now or never" claim.

The Government asks this Court to adopt the reasoning of the split Third Circuit decision in *Khalil*, which found that section 1252(b)(9) does strip habeas jurisdiction over (at least some) unlawful detention claims that amount to "repackage[d] . . . challenges to removal." 164 F.4th at 277. But *Khalil* is not persuasive here and is otherwise wrong.

First, while the petitioner in *Khalil* directly challenged *both* his detention and his removal in his habeas case (and the district court there enjoined *both*),[13] Hoque does not. The Government argues that Hoque's challenge to his detention is not independent from his removal proceedings because "his objections reach the question of his removability based on the State Department's visa revocation." (App. Br. at 41.) But, as explained above, Hoque's petition did not ask for a ruling on the validity of his purported visa revocation—Hoque does not seek relief related to his removal at all—and the invalidation of his detention by a federal court has had no effect on his removal proceedings. *See supra* note 7. The Government avoids this inconvenient distinction by suggesting that Hoque's detention claim is "inextricably

[13] The petitioner in *Khalil* expressly challenged "his removal," 164 F.4th at 273, and the district court issued three orders, one of which "prevented the government from removing him from the country" and another which "intervened in his immigration-court proceedings," *id.* at 265.

linked" to an eventual constitutional challenge to removal. (App. Br. at 34 (citation omitted).) But in that (separate) removal proceeding, Hoque contends that, independent of any constitutional deficiencies, the record proffered by DHS does not "prove[] by clear and convincing evidence that [he] is deportable as charged." *See* 8 C.F.R. 1240.8(a).

Moreover, a claim of retaliatory detention and a claim of retaliatory removal, even if brought under the First Amendment, are distinct—especially because the success of such a claim will ultimately depend on the Government's motivation in removing and (separately) detaining him, and the threat of detention may effectuate a more significant chill of speech than the threat of removal proceedings. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see infra* III.A. And Hoque also brought a distinct claim under the *Fifth* Amendment that would *only* apply to detention and would *never* be reviewed on a PFR. *Cf. Zadvydas*, 533 U.S. at 690–96; *see infra* III.B. Yet the Government's argument would have section 1252(b)(9) bar a habeas court's consideration of *that* claim, too.[14]

---

[14] The Government concedes, like the *Khalil* majority, that an immigration detainee could bring a "length-or-conditions of confinement detention claim outside the scope of section 1252(b)(9)'s channeling provision." (App. Br. 41); *see Khalil*, 164 F.4th at 277. But it cannot explain why Congress, in section 1252(b)(9), meant to treat that kind of claim differently, and why section 1252(b)(9) would bar a claim of unconstitutional detention several months into that detention but not a claim of unconstitutional detention on day one. No matter what legal questions a PFR court

*(cont'd)*

Second, even if Hoque did eventually challenge his removal as unconstitutional and that challenge presented some kind of overlapping legal issue with his detention claim, "overlap, even substantial overlap, does not make one claim arise out of the other, or necessitate that one claim controls the outcome of the other." *Ozturk*, 136 F.4th at 309. Hoque does not here challenge a "part of the process by which his removability will be determined," (App. Br. at 41), but merely the legality of his detention. Indeed, the *Khalil* majority failed to contend with the "staggering results" of holding that section 1252(b)(9) strips habeas jurisdiction over any detention claims raising questions that potentially overlap with those at issue in removal proceedings. *Öztürk*, 136 F.4th at 400 (quoting *Jennings*, 583 U.S. at 293). Such reasoning would require individuals with First Amendment retaliation claims as to *both* removal and detention to remain in custody until they can raise their claims on a PFR months or years down the road. And it would require them to prevail in their *removal* proceedings in order to secure release (indirectly) from *detention* that was unconstitutional from day one. This would leave the Government free to use pretextual detention to punish and chill noncitizens' protected speech and render "the court powerless to remedy any unconstitutional detention that had already occurred." *Suri*, 2025 WL 1806692, at *8. This is not the result Congress intended:

---

could ultimately address, unconstitutional detention is not a harm that can be remedied later.

> We cannot so easily consign an individual's liberty to the concerns of bureaucratic tidiness. The Constitution does not yield to administrative convenience, and due process is not suspended merely because two courts may be asked similar questions. Simply stated, human rights do not cower before the speculative perils of duplicative litigation. So, our courts should not become sanctuaries for efficiency at the expense of justice.

*Id.* at *1 n.1.

Third, and relatedly, *Khalil* departed from the Third Circuit's binding circuit law and misinterpreted the Supreme Court's plurality decision in *Jennings* to conclude that, under section 1252(b)(9), a claim "arises from" an action or proceeding to remove a noncitizen—and therefore is barred from habeas review—if it "raise[s] legal or factual questions that a court of appeals will . . . be able to review" on a PFR *even if* the court cannot provide a remedy. 164 F.4th at 275–77. In *Jennings*, Justice Alito explained that "the applicability of 1252(b)(9) turns on whether the legal questions that [a court] must decide 'aris[e] from' the actions taken to remove" noncitizens, and the phrase must be construed narrowly to avoid "extreme" results. 583 U.S. at 293. He warned that "arising from" is a technical term when used in jurisdictional statutes and that courts must "eschew[] uncritical literalism" when interpreting such "capacious phrases," *id.* at 293–94 (cleaned up) (collecting cases).

Applying this principle, Justice Alito concluded that "arising from" does not encompass claims that would be "effectively unreviewable" by the time a final order

of removal is entered. *Id.* at 293. In the earlier *E.O.H.C.* decision articulating the "now or never" principle, the Third Circuit explained that section 1252(b)(9) "does not strip jurisdiction when aliens seek *relief* that courts cannot meaningfully provide alongside review of a final order of removal." 950 F.3d at 186 (emphasis added). These kinds of "now-or-never claims," *id*. at 185-86, do not, in the words of the statute, "arise from an[] action taken or proceeding brought to remove an alien from" the country, 8 U.S.C. § 1252(b)(9).

*Khalil* reversed course, stretching to insist that *E.O.H.C.* was not, as its plain holding and analysis made clear, about "injur[ies] that cannot be remedied later through a PFR" but was instead about whether a claim "raise[s] legal or factual questions that cannot later be reviewed via a PFR." 164 F.4th at 274–75 (emphasis removed). But in doing so, *Khalil* imposed the precise "extreme" result that Justice Alito warned against in *Jennings*. *Id.* at 285–86 (Freeman, J., dissenting in part). The *Khalil* court concluded that section 1252(b)(9) precluded review of the petitioner's constitutional challenge to his detention because the *claims* could be reviewed through a PFR—months or even years into his detention—even though the *injury* from being unlawfully detained during that time could not be remedied by a PFR court. 164 F.4th at 274–76. That—like the injury from unconstitutional detention in this case—is clearly the type of "effectively unreviewable" claim Justice Alito

warned was outside the scope of section 1252(b)(9). *Jennings*, 583 U.S. at 293; *see Khalil*, 164 F.4th at 286–91 (Freeman, J., dissenting in part).

Fourth, *Khalil* summarily concluded (in one sentence) that its interpretation of 1252(b)(9) did not violate the Suspension Clause. 164 F.4th at 279. For the reasons discussed in the next section, that conclusion is wrong.

In sum, this Court should reject the Third Circuit's rationale in *Khalil* and conclude—consistent with Supreme Court precedent, the Second Circuit's decision in *Ozturk*, the Fourth Circuit's decision in *Suri*, many other circuit decisions on immigration detention, and the statute's legislative history—that Hoque's challenge to the constitutionality of his detention was independent from his removal proceedings and thus not subject to section 1252(b)(9).

### E. If Section 1252 Strips Jurisdiction over Hoque's Habeas Petition, It Violates the Suspension Clause and First Amendment

If the Court adopts the Government's interpretation, then section 1252(b)(9) is unconstitutional.

To protect the essential right of habeas corpus, the Suspension Clause provides: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. Congress may deprive federal courts of habeas jurisdiction without running afoul of the Suspension Clause only if it offers "a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention."

*Swain v. Pressley*, 430 U.S. 372, 381 (1977). Such an alternative to habeas must—at the absolute minimum—provide a petitioner with "a meaningful opportunity to demonstrate that he is being held" unlawfully. *Boumediene*, 553 U.S. at 779.

Because the Government's interpretation of sections 1252(b)(9) and (g) does not provide an adequate, effective, or meaningful alternative to habeas, even if that interpretation is correct, it would violate the Suspension Clause. Under the Government's view, Congress has eliminated habeas jurisdiction over detention challenges pending removal. (App. Br. 26 (arguing that (g) applies because the decision to commence proceedings was "the direct catalyst" for detention), 34–35 (arguing that section 1252(b)(9) bars review of "the legality of DHS's decision to detain [a noncitizen] for the purposes of [their] removal proceedings").) And so *every* instance of executive detention pending removal—no matter how retaliatory, unconstitutional, or illegal—would be insulated from federal court review for months or even years until the executive's administrative immigration process plays out. While a petitioner could eventually access a court of appeals on a PFR, that process is exclusively focused on the legality of a final order of removal, not the preceding time in unconstitutional detention. And in any event, it could not remedy detention after it had already been imposed. That is the process *if* a final order of removal is actually issued; if one is never issued, the noncitizen might *never* have access to a federal court to challenge detention. Armed with that power, the

Government could retaliate against any noncitizen by issuing an unfounded and pretextual immigration charge, detaining the person on that basis, and keeping that person locked up for months or years before abandoning the charge and avoiding judicial review entirely.

Congress did not intend that result, and the Suspension Clause does not allow it. Because the Government's interpretation of sections 1252(b)(9) and (g) does not provide a meaningful way to challenge an unconstitutional detention and would eviscerate the habeas remedy, it would violate the Constitution's bedrock habeas protections. *See, e.g.*, *Boumediene*, 553 U.S. at 792 ("cumulative effect" of detainees' inability to challenge the executive's "legal authority to detain them," "contest the [administrative courts'] findings of fact," "supplement the record on review," and "request an order of release" constituted unlawful suspension of the writ); *You v. Nielsen*, 321 F. Supp. 3d 451, 459 (S.D.N.Y. 2018) (requiring that constitutional challenges to arrest and detention be "crammed into a petition for review of a removal order would render such claims effectively unreviewable" (cleaned up)).

In addition, the Government's interpretation would violate the First Amendment as applied to Hoque. Across many areas of law, First Amendment harms are treated as unique, and their urgency demands upfront federal court review. *See, e.g.*, *Khalil*, 164 F.4th at 287 n.9 (Freeman, J., dissenting) (collecting cases). As

Justice Ginsburg explained in *AADC*, when First Amendment rights are involved, "the Constitution requires immediate judicial intervention," to mitigate the broad chilling effect retaliatory actions can have on the exercise of First Amendment rights. 525 U.S.at 492 (Ginsburg, J., concurring) (collecting cases). Requiring people like Hoque to wait until they are ordered removed to file a PFR does not satisfy the immediate, meaningful intervention required by the First Amendment.

* * *

In conclusion, none of the Government's cited INA provisions stripped the district court of jurisdiction. Hoque challenged his detention only—not his alleged visa revocation, the Government's decision to commence removal proceedings, the removal proceedings themselves, or an order of removal. He asked to be released from detention—nothing more, nothing less. Because neither the INA, nor the Constitution, grant the Executive limitless, unreviewable power to detain noncitizens in violation of the Constitution, the Government's subject-matter jurisdiction arguments must be rejected.

## III. The District Court Properly Granted Hoque's Petition

On the merits, the Government does not argue the district court's factual findings—that the Government detained Hoque in retaliation for his protected speech—are clearly erroneous. *See Bell*, 474 F.3d at 560. Nor does it dispute that Hoque's speech was protected or that detention would chill a person of ordinary

firmness. (App. 1017–18; R. Doc. 36 at 6–7.) While the Government underhandedly attacks the district court's findings,[15] it makes no effort to meet its burden to overturn them on appeal. *See, e.g.*, *Felts v. Green*, 91 F.4th 938, 941 (8th Cir. 2024) ("The burden is on the objecting party to demonstrate clear error in factual findings, and the evidence must be construed in the light most favorable to the party who prevailed at trial.").

### A. The District Court Properly Concluded that Respondents Violated Hoque's First Amendment Rights

The district court correctly concluded that Hoque's detention violated the First Amendment. While the Government frames his claim as "selective enforcement," it is not—the claim is for retaliation. (App. 38; R. Doc. 1 ¶ 85.[16]) The district court properly analyzed it as such, concluding that: (1) Hoque's "speech on Palestinian

[15] *See* App. Br. at 42 (citing the Government's evidence—contrary to the district court's factual findings—that the purported revocation of Hoque's visa "was the motivating factor for DHS's decisions to arrest, detain, and commence removal proceedings"); *id.* at 27 n.4 ("*Contrary to the district court's view* on the order of events, the State Department's revocation of Hoque's student visa was always the motivating factor for DHS's arrest [and] detention . . . ." (emphasis added)); *id.* at 28 ("DHS did not detain Hoque for any reason independent of its decision to commence removal proceedings." (cleaned up)); *id.* at 29 (asking the Court to adopt its version of the "*factual*, legal, and *temporal* connections" (emphasis added)).

[16] Hoque also brought a First Amendment viewpoint discrimination claim, (App. 38; R. Doc. 1 ¶ 86); *see NRA v. Vullo*, 602 U.S. 175 (2024), which the Government does not even address, and is plainly supported by the record. (App. 119–20; R. Doc. 8 at 17.); *Woodworth v. Hulshof*, 891 F.3d 1083, 1088 (8th Cir. 2018) ("[W]e may affirm for any reason supported by the record, even if it differs from the rationale of the district court." (quotations omitted)).

human rights is protected speech on a matter of public concern"; (2) the Government took an "adverse action" against him by "arresting [him], detaining [him], and pursuing [his] removal"; and (3) the record "shows by a preponderance of evidence that his speech prompted" these actions. (App. 1017–18; R. Doc. 36 at 6–7 (applying, *inter alia*, *Watson v. Boyd*, 119 F.4th 539, 550 (8th Cir. 2024))); *see also Mt. Healthy*, 429 U.S. at 287.

At that point, the burden shifted to the Government to show "by a preponderance of the evidence that it would have reached the same decision . . . even in the absence of the protected conduct." *Osborne v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007) (cleaned up). But as the district court found, the only evidence the Government offered "lack[ed] reliability," defied the record, and was internally inconsistent, with the Government "cit[ing] different reasons at different times for its actions" and having allowed Hoque to re-enter the United States notwithstanding the misdemeanor that formed the basis of one of its cycled-through, post-hoc justifications. (App. 1018–20; R. Doc. 36 at 7–9.) Most critically, the district court found that the Government *never* introduced *any* "evidence explaining why [Hoque] was selected for a criminal records search in the first place." (App. 1020; R. Doc. 36 at 9)—meaning it did not even attempt to meet its burden to rebut Hoque's First Amendment retaliation claim.

On appeal, the Government primarily argues that the district court erred in granting Hoque's petition because his First Amendment retaliation claim is foreclosed by the Supreme Court's decision in *AADC*. (App. Br. at 45–47.) That is wrong.

First, *AADC* addressed a fundamentally different situation—a challenge to the "the initiation of deportation proceedings," and "did not sound in unlawful *detention* at all, and is therefore no help to the government." *Ozturk*, 136 F.4th at 398 (cleaned up); *see AADC*, 525 U.S. at 474, 487. (*See also* App. Br. 45 (mischaracterizing *AADC* as barring challenges "to detention *and* removal" even while quoting *AADC* as addressing a "'selective enforcement . . . defense *against deportation*'" (emphases added)). As discussed above, Hoque challenges the constitutionality of his detention—a claim that the district court correctly recognized is not foreclosed by *AADC*. (App. 1016–17; R. Doc. 36 5–6.) Habeas review of the legality of executive detention has always been available, *St. Cyr*, 533 U.S. at 305, and *AADC* does not apply where, as here, the claim is a habeas challenge to detention grounded in specific factual findings of retaliation. *See Bello-Reyes*, 985 F.3d at 699–700 (recognizing First Amendment retaliation claims may be asserted in habeas actions); *Sheldon v. Hundley*, 83 F.3d 231, 232–33 (8th Cir. 1996) (same).

Second, *AADC* involved a selective-enforcement claim, which is fundamentally different from the First Amendment retaliation claim at issue here. A

selective-enforcement claim is, at its core, a defense: The claimant concedes the Government has authority to act but argues that it exercised that authority in a discriminatory manner. *See AADC*, 525 U.S. at 488–89. A First Amendment retaliation claim, by contrast, challenges a government act that is constitutionally invalid from its inception. *See Mt. Healthy*, 429 U.S. at 287. The Government may not detain an individual in retaliation for the exercise of protected speech. Because retaliation claims challenge the constitutional validity of the Government's action itself, they are not subject to the same constraints that *AADC* imposed on selective-enforcement challenges.

Third, even setting aside that distinction, *AADC* itself recognized that its rule does not extend to claims of "outrageous" discrimination. 525 U.S. at 491. The Second Circuit has applied that exception in the immigration context, holding that a First Amendment retaliation claim constitutes precisely the kind of outrageous government conduct that *AADC* preserved for judicial review. *See Ragbir v. Homan*, 923 F.3d 53, 72–73 (2d Cir. 2019), *vacated sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020). Here, the district court made specific factual findings that the Government detained Hoque in retaliation for protected speech that was intended to chill his speech and that of others (App. 1017–21; R. Doc. 36 at 6–10)—findings that place this case squarely within *AADC's* own exception. *See also AAUP*, 2026 WL 524753, at *1.

### B. The District Court Properly Concluded that Respondents Violated Hoque's Fifth Amendment Right to Due Process

The Government is also wrong that Hoque's Fifth Amendment claim fails.

First and primarily, the Government argues that *AADC* bars Hoque's Fifth Amendment claim because it "repackage[es]" his First Amendment claim, (App. Br. at 47), but the Government mischaracterizes both Hoque's distinct Fifth Amendment claim and the district court's analysis. The standards governing a Fifth Amendment claim differ materially from those applicable to a First Amendment retaliation claim. Under *Bell v. Wolfish*, civil detention violates substantive due process if it is (1) punitive in intent, (2) unrelated to any legitimate government interest in detention, or (3) excessive to such a legitimate government interest. 441 U.S. 520, 539 n.20 (1979); *see Zadvydas*, 533 U.S. at 690–96 (applying those principles to immigration detention). In addition to his argument that the Government intentionally detained him to punish and silence his protected speech, Hoque also argues that his detention is simply unrelated and excessive to any legitimate government interest in detention. This substantive due process claim can succeed on *Bell's* second or third prong even if a court were to find no evidence of punitive or retaliatory intent.

Indeed, the district court properly identified two independent bases for a Fifth Amendment violation, separate from Hoque's claim under the First Amendment that the Government detained him to punish and silence his protected speech. First, it found that Hoque's detention was punitive in both purpose and effect—intended to

punish Hoque's protected speech and to intimidate other international students into self-deporting—rather than to serve legitimate immigration objectives, a conclusion reinforced by the immigration judge's determination that Hoque posed no danger and should be released on bond of $7,500 (affirmed by the BIA). (App. 1021–23; R. Doc. 36 at 10–12.) Second, the district court concluded that the Government's invocation of the automatic stay provision, 8 C.F.R. § 1003.19(i)(2), independently violated due process by effectively overruling the Bond Order without any showing of dangerousness, flight risk, or other justification, and without any opportunity for Hoque to contest continued detention. (App. 1022–23; R. Doc. 36 at 11–12.) Thus, *AADC* does not foreclose the district court's conclusion that Hoque's detention violated the Fifth Amendment.

Second, the Government argues there was no Fifth Amendment violation because detention during deportation proceedings is "constitutionally valid" and Hoque's detention fell within the 90-day confines of 8 C.F.R. § 1003.6(c)(4). (App. Br. at 47–48.) But Hoque does not challenge the constitutionality of immigration detention as a general concept; he challenges detention that is punitive and retaliatory from the outset, lacking any legitimate governmental purpose. (*See* App. 1021–23; R. Doc. 36 at 10–12.)

While immigration detention is generally permissible, it is not immunized from constitutional scrutiny. The Government's authority to detain noncitizens,

"while broad, remains subject to important constitutional limitations," and immigration detention must "bear a reasonable relation to the purpose for which the individual [is detained]" so that it is "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. The district court correctly applied this principle and, based on uncontested factual findings, held that Hoque's detention served no legitimate immigration purpose because it was motivated by a desire to punish his protected speech and to intimidate other international students into self-deporting, and it was untethered to flight risk or danger. (R. Doc. 36 at 10–12; *see also* R. Doc. 36 at 11.) Where, as here, the detention runs afoul of the Constitution, the district court correctly concluded that Hoque has a right to be released.

Further, the cases cited by the Government do not support its position. *Wong Wing v. United States*, 163 U.S. 228 (1896), held that imposing hard labor on noncitizens without a trial violated due process—it did not hold that any detention during removal proceedings is immune from constitutional challenge. *Carlson v. Landon*, 342 U.S. 524 (1952), involved detention predicated on specific Congressional findings that Communist Party members posed a clear and present danger to the security of the United States—a far cry from these circumstances, where the immigration judge (and the district court) found *no* evidence of flight risk or danger. Neither of these cases support the Government's extraordinary position that it can detain a noncitizen for the purpose of punishing protected speech.

Moreover, the district court correctly concluded that the Government's invocation of the automatic stay "[s]imply by fiat—without introducing any proof and without immediate judicial review" violated Hoque's due process rights. (App. 1023; R. Doc. 36 at 12.) The Government mischaracterizes this as a ruling based on the length of detention. (App. Br. 47–48.) Not so. Invoking the automatic stay to override the Bond Order—without any individualized showing of dangerousness or flight risk—is further evidence of punitive purpose. Hoque's retaliatory detention was unlawful the moment it began and every moment since, and the automatic stay was used not for any legitimate immigration objective, but to prolong this already unconstitutional detention. (*See* App. 853–54; R. Doc. 26 at 2, 3 ¶¶ 7, 9, 12 (describing the automatic stay as "extraordinarily rare" and a departure from the government's typical practice).) The Government's argument that the mere existence of removal proceedings insulates its conduct from constitutional scrutiny would render the Fifth Amendment a nullity in the immigration context. That is not the law. *See Zadvydas*, 533 U.S. at 690.

### C. The Government's Argument Regarding Hoque's APA Claim Misconstrues the District Court's Order

Finally, the district court held that, in the alternative to Hoque's unconstitutional detention claims, Hoque's detention was unlawful "to the extent that SEVIS termination provides a basis for [his] detention." (App. 1028; R. Doc. 36 at 17.) It found that the SEVIS termination was unlawful because DHS did not

comply with the only permissible bases for termination in 8 C.F.R. § 214.1(d) and that the Government's shifting rationales—from FPG to "criminal records check"—further evidenced arbitrary and capricious action. (App. 1024–27; R. Doc. 36 at 13–17.) Numerous other courts have reached similar conclusions regarding identical SEVIS termination practices. *See, e.g.*, *Gao v. Noem*, No. 1:25-CV-419, 2025 WL 1318417, at *7 (W.D. Mich. May 7, 2025) (collecting cases).

The Government does not challenge the district court's analysis on the merits and, thus, it has forfeited any argument that the SEVIS termination was lawful.[17] *Jasperson v. Purolator Courier Corp.*, 765 F.2d 736, 740 (8th Cir. 1985) ("A party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue."). Its sole argument is that because, in its view, SEVIS termination was not a basis for detention, the district court erred in reviewing this claim in habeas. (App. Br. 48–49.) Even if that were correct (it is not), the Government fails to acknowledge that Hoque filed a habeas petition *and complaint*, (App. 14 ¶ 4; R. Doc. 1 ¶ 4 (citing 28 U.S.C. § 1331)), and fails to provide any reason why Hoque cannot join his SEVIS-termination challenge with his detention challenge when both arise from the Government's decision to unlawfully retaliate against him for protected speech. *See* Fed. R. Civ.P. 18(a) (authorizing party to "join . . . as many claims as it

[17] In any event, the Court need not reach Hoque's APA claim because his detention is independently unlawful under the First and Fifth Amendments.

has against an opposing party”); *compare Pierre v. United States*, 525 F.2d 933, 935 (5th Cir. 1976) (cited by the Government) (habeas relief not available for “collateral administrative action independent of, and unrelated to, the issue of the legality of petitioners’ custody”), *with* (App. 1028; R. Doc. 36 at 17 (granting habeas claim “[t]o the extent that SEVIS termination provides a basis for Petitioner’s detention”).)

In sum, the district court’s findings on the merits were well supported by the law and record, and should be affirmed.

## CONCLUSION

For the reasons set forth above, the Court should affirm.

Respectfully submitted,

Dated: May 29, 2026

*s/ Anupama D. Sreekanth*
**FREDRIKSON & BYRON, P.A.**
Joseph T. Dixon, III (#0283903)
Anupama D. Sreekanth (#0393417)
Amanda M. Mills(#0397685)
Rachel L. Dougherty (#0399947)
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Tel: (612) 492-7000

**ACLU OF MINNESOTA**
Teresa Nelson (#0269736)
Benjamin Casper (#0276145)
P.O. Box 14720
Minneapolis, MN 55414
Tel: (651) 529-1692

**THE ADVOCATES FOR HUMAN RIGHTS**
Zachary Albun (IL #6323553)
330 Second Ave South Ste. 800
Minneapolis MN, 55401
Tel: (612) 252-4444

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
Omar Jadwat
Noor Zafar
Sidra Mahfooz
Michael K.T. Tan
Esha Bhandari
Brett Max Kaufman
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

***Attorneys for Petitioner-Appellee Mohammed Hoque***

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of May 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

Dated: May 29, 2026 By: *s/ Anupama D. Sreekanth*

Anupama D. Sreekanth

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 12,982 words and was prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

Dated: May 29, 2026 By: *s/ Anupama D. Sreekanth*
Anupama D. Sreekanth