No. 25-2516

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

---

**MOHAMMED HOQUE,**
**Petitioner-Appellee,**

**v.**

**DONALD J. TRUMP, in his official capacity as**
**President of the United States, *et al.*,**
**Respondents-Appellants.**

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**
**District Court Case No. 25-cv-1576-JWB-DTS**

---

# REPLY BRIEF FOR APPELLANTS

---


**BRETT A. SHUMATE**
**Assistant Attorney General**
**Civil Division**

**DREW C. ENSIGN**
**Deputy Assistant Attorney General**

**BENJAMIN HAYES**
**Senior Counsel to the Assistant**
**Attorney General**

**ERNESTO H. MOLINA**
**Deputy Director**
**Office of Immigration Litigation**

**ALANNA T. DUONG**
**Senior Litigation Counsel**
**Office of Immigration Litigation**
**Civil Division, U.S. Dept. of Justice**
**P.O. Box 878, Ben Franklin Station**
**Washington, DC 2004**
**Tel: (202) 305-7040**

**Attorneys for Appellants**

## TABLE OF CONTENTS


INTRODUCTION ....................................................................................1

ARGUMENT ........................................................................................3

I. The Court should dismiss this appeal as moot and vacate the district court's decision under *Munsingwear*. ..................................................3

A. This appeal is moot. ..................................................................3

B. The Court should vacate the decision below under *Munsingwear*.........................................................................6

II. The district court lacks jurisdiction over Hoque's habeas petition.......8

A. 8 U.S.C. §1252(g) barred the district court's review of DHS's decisions to commence removal proceedings.............................8

B. 8 U.S.C. §1252(a)(5) and (b)(9) channeled Hoque's claims to the PFR process and thus further barred the district court's review. ...........................................................................13

C. 8 U.S.C. §1201(i) deprived the district court of jurisdiction to review the State Department's discretionary decision to revoke Hoque's student visa. .................................................20

D. 8 U.S.C. §1226(e) deprived the district court of jurisdiction to review DHS's discretionary decision to detain Hoque.............20

III. In the alternative, the district court erred in granting Hoque's habeas petition on the merits of his claims. ..................................................22

CONCLUSION ....................................................................................27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Adorers of the Blood of Christ v. FERC*,
897 F.3d 187 (3d Cir. 2018) .......... 17

*Alexandre v. U.S. Att'y Gen.*,
452 F.3d 1204 (11th Cir. 2006) .......... 19

*Allen v. McCurry*,
449 U.S. 90 (1980) .......... 25

*Already, LLC v. Nike, Inc*,
568 U.S. 85 (2013) .......... 3

*Alvarez v. ICE*,
818 F.3d 1194 (11th Cir. 2016) .......... 11

*Avila v. Bondi*,
170 F.4th 1128 (8th Cir. 2026) .......... 16

*Axon Enterprise Inc. v. FTC*,
598 U.S. 175 (2023) .......... 17

*Azar v. Allina Health Servs.*,
587 U.S. 566 (2019) .......... 10

*Azar v. Garza*,
584 U.S. 726 (2018) .......... 7

*Banyee v. Garland*,
115 F.4th 928 (8th Cir. 2024) .......... 16, 24

*Bello-Reyes v. Gaynor*,
985 F.3d 696 (9th Cir. 2021) .......... 5

*Bethea v. Levi Strauss & Co.*,
916 F.2d 453 (8th Cir. 1990) .......... 23

*Camarena v. Director, ICE*,
988 F.3d 1268 (11th Cir. 2021) .......... 12

*Church of Scientology of Cal. v. United States*,
506 U.S. 9 (1992) .......... 5

*Delgado v. Quarantillo*,
643 F.3d 52 (2d Cir. 2011) .......... 16

*Demore v. Kim*,
538 U.S. 510 (2003) .......... 10, 21

*E.O.H.C. v. DHS*,
950 F.3d 177 (3d Cir. 2020) .......... 16

*Enwonwu v. Gonzales*,
438 F.3d 22 (1st Cir. 2006) .......... 19

*Fortner v. Eischen*,
170 F.4th 655 (8th Cir. 2026) .......... 11

*Foti v. INS*,
375 U.S. 217 (1963) .......... 24

*Hassoun v. Searls*,
976 F.3d 121 (2d Cir. 2020) .......... 7

*Humphries v. Various Fed. INS Emps.*,
164 F.3d 936 (5th Cir. 1999) .......... 11, 13

*INS v. St. Cyr*,
533 U.S. 289 (2001) .......... 18

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016) .......... 13

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) .......... 9, 10, 15

*Khalil v. President, United States*,
164 F.4th 259 (3d Cir. 2026) .......................................................... 11, 15, 16, 21

*Khalil v. President, United States*,
176 F.4th 295 (3d Cir. 2026) ..........................................................................18

*Kolkevich v. Att'y Gen.*,
501 F.3d 323 (3d Cir. 2007) ...........................................................................19

*Limpin v. United States*,
828 F. App'x 429 (9th Cir. 2020)....................................................................11

*Marks v. United States*,
430 U.S. 188 (1977) .......................................................................................15

*Matter of Sugay*,
17 I&N Dec. 637 (BIA 1981).......................................................................3, 4

*Matter of Valles-Perez*,
21 I&N Dec. 769 (BIA 1997).............................................................................4

*Meraz-Reyes v. Gonzales*,
436 F.3d 842 (8th Cir. 2006) ..........................................................................21

*Mille Lacs Band of Ojibwe v. Madore*,
128 F.4th 929 (8th Cir. 2025)............................................................................8

*Miranda v. Garland*,
34 F.4th 338 (4th Cir. 2022)..............................................................................4

*Mohamed v. Gonzales*,
477 F.3d 522 (8th Cir. 2007) ..................................................................... 18, 19

*Munaf v. Geren*,
553 U.S. 674 (2008) .......................................................................................25

*Nielsen v. Preap*,
586 U.S. 392 (2019) ................................................................................ 4, 5, 15

*Nken v. Holder*,
556 U.S. 418 (2009) .....24

*Ozturk v. Hyde*,
136 F.4th 382 (2d Cir. 2025) .....16

*Ozturk v. Hyde*,
155 F.4th 187 (2d Cir. 2025) .....11

*Panera, LLC v. Dobson*,
999 F.3d 1154 (8th Cir. 2020) .....7

*Panosyan v. Mayorkas*,
854 F. App'x 787 (9th Cir. 2021) .....5

*Parra v. Perryman*,
172 F.3d 954 (7th Cir. 1999) .....24

*Picrin-Peron v. Rison*,
930 F.2d 773 (9th Cir. 1991) .....5

*Preiser v. Rodriguez*,
411 U.S. 475 (1973) .....25

*Puri v. Gonzales*,
464 F.3d 1038 (9th Cir. 2006) .....19

*Reno v. American-Arab Anti-Discriminati*on *Comm.*,
525 U.S. 471 (1999) ..... 2, 9, 10, 20, 22, 23, 24

*Rivera Hernandez v. Noem*,
No. 25-326, 2025 WL 3754434 (E.D. Tex. Dec. 19, 2025) .....26

*Rosales-Garcia v. Holland*,
322 F.3d 386 (6th Cir. 2003) .....5

*Ruiz-Martinez v. Mukasey*,
516 F.3d 102 (2d Cir. 2008) .....19

*SD Voice v. Noem*,
987 F.3d 1186 (8th Cir. 2021) .......... 8

*Silva v. United States*,
866 F.3d 938 (8th Cir. 2017) .......... 12, 13

*Singh v. Mukasey*,
533 F.3d 1103 (9th Cir. 2008) .......... 19

*Skurtu v. Mukasey*,
552 F.3d 651 (8th Cir. 2008) .......... 19

*Stone v. INS*,
514 U.S. 386 (1995) .......... 24

*Suri v. Trump*,
No. 25-1560, 2025 WL 1806692 (4th Cir. July 1, 2025) .......... 16

*Tazu v. Att'y Gen.*,
975 F.3d 292 (3d Cir. 2020) .......... 12, 14

*DHS v. Thuraissigiam*,
591 U.S. 103 (2020) .......... 26

*Trump v. J. G. G.*,
604 U.S. 670 (2025) .......... 26

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
513 U.S. 18 (2021) .......... 7, 8

*United States v. Martinez-Fuerte*,
428 U.S. 543 (1976) .......... 24

*United States v. Munsingwear*,
340 U.S. 36 (1950) .......... 1, 7

*Wong Wing v. United States*,
163 U.S. 228 (1896) .......... 10

## Statutes

6 U.S.C. §557 .......... 4

8 U.S.C. §1103(g)(2) .......... 7

8 U.S.C. §1201(i) .......... 2, 20

8 U.S.C. §1225 .......... 16

8 U.S.C. §1225(b)(2)(A) .......... 16

8 U.S.C. §1226(b) .......... 3, 6

8 U.S.C. §1226(c) .......... 15

8 U.S.C. §1226(e) .......... 20, 21

8 U.S.C. §1252(a)(2)(D) .......... 18

8 U.S.C. §1252(a)(5) .......... 12, 13

8 U.S.C. §1252(b)(9) .......... 13, 18

8 U.S.C. §1252(g) .......... 8, 9, 12

## Regulations

8 C.F.R. §236.1(c)(9) .......... 3

8 C.F.R. §1003.1(a)(1) .......... 7

8 C.F.R. §1003.1(d)(1) .......... 7

8 C.F.R. §1236.1(c)(9) .......... 3

# INTRODUCTION

Nothing in Petitioner-Appellee Mohammed Hoque's answering brief undermines Respondents-Appellants' ("the Government") arguments for why this Court should grant their motion to vacate the district court order and dismiss the case as moot under *United States v. Munsingwear*, 340 U.S. 36 (1950). There is no longer any live dispute over the detention of Hoque for the remainder of his removal proceedings due to the intervening decision of the Board of Immigration Appeals ("BIA"), affirming on the merits the Immigration Judge's ("IJ") determination to release Hoque from detention on bond. Unless circumstances change, such as Hoque's reinvolvement with the criminal justice system, the BIA's decision precludes the Department of Homeland Security ("DHS") from re-detaining Hoque.

If the Court declines to apply the mootness doctrine, it should vacate the district court's decision on jurisdictional grounds. Congress has made it clear that district courts do not have jurisdiction to review the Executive's authority to commence removal proceedings against an alien or the merits of any factual and legal questions that may be raised in those proceedings. Regardless of how Hoque attempts to characterize his claims, the substance of his claims targets the decision of DHS to commence removal proceedings based on the Department of State's decision to revoke his nonimmigrant student visa. Through the Immigration and Nationality Act ("INA"), Congress has barred district courts from reviewing claims,

like Hoque's, challenging the commencement and merits of removal proceedings. *See* 8 U.S.C. §§1201(i), 1226(e), 1252(a)(5), 1252(b)(9), 1252(g). Hoque must channel his claims through the process that Congress created. Therefore, even if this Court declines to grant the Government's motion to vacate the district court's order and dismiss the case as moot under *Munsingwear*, the Court should nevertheless vacate the district court's order for lack of subject-matter jurisdiction.

Alternatively, assuming the district court had jurisdiction, it erred by granting Hoque's habeas petition. Despite Hoque's insistence that a "retaliatory claim" is distinct from a "selective-enforcement claim," the district court granted relief on what amounted to a selective enforcement claim—without even attempting to reconcile its outcome or analysis with the Supreme Court's clear instruction in *Reno v. American-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471 (1999), that such selective enforcement claims in the immigration context are generally not cognizable. Because Hoque's First and Fifth Amendment claims (and APA claim) merely repackage the same retaliatory government action claim, they all fail under *AADC*. Finally, Hoque's APA claim relating to his SEVIS termination fails for another reason: it has no relation to the cause of his detention, so it cannot be the basis for habeas relief. Accordingly, this Court should vacate the district court's decision and remand with instruction to dismiss this habeas petition for lack of jurisdiction. Alternatively, the Court should vacate the decision on the merits.

## ARGUMENT

### I. The Court should dismiss this appeal as moot and vacate the district court's decision under *Munsingwear*.

#### A. This appeal is moot.

Hoque's habeas case is moot because no live dispute exists over his detention for the remainder of his removal proceedings due to the intervening BIA decision, which affirmed on the merits the IJ's decision to release him from detention. *See* Appellants' Mot. to Vacate & Dismiss ("Appellants' Mot."); Appellants' Reply in support of Mot. to Vacate & Dismiss ("Appellants' Reply"); Appellants' Opening Br. ("OB.") 16-19; *Already, LLC v. Nike, Inc*, 568 U.S. 85, 90-91, 13 (2013).

Hoque counters that this case is not moot because the Government may re-detain him "at any time" under 8 U.S.C. §1226(b). *See* Appellee's Answering Br. ("AB.'") 12-14. That is plainly false. As the Government argued, the BIA's intervening order precludes DHS from re-detaining Hoque for the remainder of his removal proceedings, *absent changed circumstances*. *See* OB.17; Appellants' Mot. 9-10; Appellants' Reply 2-7. Pursuant to §1226(b), DHS "at any time may revoke a bond" and rearrest and detain an alien, but DHS regulations allow revocation only under established procedures.[1] *See* 8 C.F.R. §§236.1(c)(9), 1236.1(c)(9); *Matter of*

[1] Under the Homeland Security Act of 2002 ("HSA"), Pub. L. No. 107–296, 116 Stat. 2135, as amended, the references to the "Attorney General" in the INA also encompass the DHS Secretary, either solely or additionally, with respect to statutory authorities vested in the Secretary in the HSA or subsequent legislation, including

*Sugay*, 17 I&N Dec. 637, 639 (BIA 1981) (finding "without merit [the alien's] counsel's argument that the District Director was without authority to revoke bond once an alien has had a bond redetermination hearing"); *Matter of Valles-Perez*, 21 I&N Dec. 769, 772 (BIA 1997) ("[T]he regulations presently provide that when an alien has been released following a bond proceeding, a district director has continuing authority to revoke or revise the bond, regardless of whether the IJ or this Board has rendered a bond decision."). These established procedures include, for example, when circumstances come to light justifying a change in custody status after the IJ or the BIA has rendered a decision. *See, e.g.*, *Matter of Sugay*, 17 I&N Dec. at 640 ("While we recognize counsel's argument that where a previous bond determination has been made by an immigration judge, no change should be made by a District Director *absent a change of circumstance*[.]") (emphasis added).

Hoque does not contest the statutory and regulatory framework, nor the case law, that provides for DHS's re-detention upon changed circumstances (*see* AB.12-15). Instead, he cites cases with distinguishable facts: *Nielsen v. Preap*, 586 U.S. 392, 404 (2019), and *Miranda v. Garland*, 34 F.4th 338, 357 n.7 (4th Cir. 2022), rejected the mootness argument because of the preliminary nature of the release. Hoque says *Nielsen* is controlling, but the point in *Nielsen* was that "unless the preliminary injunction was made permanent and was not disturbed on appeal,

---

in relation to immigration proceedings before DHS. 6 U.S.C. §557.

these individuals faced the threat of re-arrest and mandatory detention." 586 U.S. at 403. By contrast, Hoque's release *was* made permanent on appeal to the BIA. *See* Appellants' Mot., Exhibit B. Further, in *Bello-Reyes v. Gaynor*, 985 F.3d 696, 699 n.3 (9th Cir. 2021), and *Rosales-Garcia v. Holland*, 322 F.3d 386, 395 (6th Cir. 2003), the release orders imposed conditions that significantly confined and restrained the petitioners' freedom such that they were effectively still "in custody." Notably, none of those cases involved an IJ release order affirmed by the BIA.

Here, unlike in those cases, the IJ released Hoque on a bond and imposed no conditions that confined or restrained his liberty; the BIA affirmed. *See* Appellants' Mot., Exhibit B. Unless circumstances change—such as Hoque's reinvolvement with the criminal justice system—the BIA's decision affirming the IJ's bond order precludes DHS from re-detaining Hoque, and that BIA decision consequently renders it impossible for this Court to grant "any effectual relief whatever" to the Government on appeal. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992); *see, e.g.*, *Picrin-Peron v. Rison*, 930 F.2d 773, 776 (9th Cir. 1991) (declining to apply the voluntary-cessation exception when the Court was satisfied, through the Government's declaration, that the alleged wrong would not recur and dismissing the appeal of the habeas petition because the alien had been released, as requested); *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) (dismissing the appeal where the Court was satisfied that the alleged wrongful

detention would not recur absent changed circumstances and because release with supervision was an action that mooted a habeas petition).

Against all this, Hoque insists this appeal remains live because the Government may re-detain him "at any time" under 8 U.S.C. §1226(b), as it did in January 2026 (AB.12-14). But the Government has repeatedly acknowledged that Hoque's re-detention was in error, which is why DHS promptly released Hoque that same day upon discovering the error. *See* OB.17 n.1 (citing *Hoque v. Trump*, No. 25-1576 (D. Minn.), ECF 50-51, Resp. Memo and Decl. (filed Jan. 30, 2026)); *see also Hoque*, No. 25-1576 (D. Minn.), ECF 50 at 4 ("Throughout its pleadings, the United States makes clear its position that it does not have authority to re-detain Hoque. The arresting officers' actions were clearly inconsistent with the United States' position and its undisputed obligation and thus were quickly remedied.").

### B. The Court should vacate the decision below under *Munsingwear*.

Vacatur of the district court's order is appropriate. *See* OB.18-19; Appellants' Mot. 13; Appellants' Reply 10-11. Hoque argues that vacatur is not appropriate because "the source of the supposed mootness here—the BIA's affirmance of the Bond Order—is directly attributable to the Government," as the BIA is located within the Executive Office of Immigration Review ("EOIR") in the Department of Justice (a defendant here) (AB.15-16). But neither the BIA nor EOIR are parties, and the BIA cannot be treated as such just because the Department of Justice is a

defendant. The BIA is required by law to carry out its duties as an impartial and independent administrative appellate body. *See* 8 U.S.C. §1103(g)(2); 8 C.F.R. §1003.1(a)(1), (d)(1). Hoque's case proves as much. Although he accuses the Government of having a policy of retaliating against aliens through detention and removal proceedings (AB.2), both the IJ and the BIA *ruled in his favor*.

Accordingly, the BIA's decision was not a unilateral voluntary action by a party, but rather an event of "happenstance" rendering the case moot through no fault of the Government defendants here. *Munsingwear*, 340 U.S. at 39-40. This is not a case in which the Government has "obtain[ed] a favorable judgment, take[n] voluntary action that moots the dispute, and then [seeks to] retain the benefit of the judgment." *Azar v. Garza*, 584 U.S. 726, 728 (2018). Rather, the "vagaries of the circumstances" have now frustrated the Government's efforts to obtain appellate review. *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (2021). Vacating the district court order enables the parties to litigate their issues on a clean slate in other cases. *Panera, LLC v. Dobson*, 999 F.3d 1154, 1158 (8th Cir. 2020); *see also Hassoun v. Searls*, 976 F.3d 121, 133 (2d Cir. 2020) (noting that, "as a repeat player before the courts," the Government "has an institutional interest in vacating adverse rulings of potential precedential value") (citation omitted).

The public interest weighs in favor of vacatur because the "vagaries of circumstances" have frustrated the Government's efforts to obtain appellate review

of the district court's adverse ruling, and "fairness" counsels that the Government should not "be forced to acquiesce in [that] judgment." *Bancorp*, 513 U.S. at 25. This is not a case where the public interest defeats vacatur because the district court's order "works to protect … core political speech where First Amendment protection is at its zenith," *SD Voice v. Noem*, 987 F.3d 1186, 1190-91 (8th Cir. 2021) (cleaned up), or "benefits … litigants and the public [through] the resolution of legal questions," *Bancorp*, 513 U.S. at 27. Instead, the district court here mischaracterized the facts of Hoque's case and misconstrued decisions of the Supreme Court and this Court to permit review of claims that are squarely barred by the INA. *Cf. Mille Lacs Band of Ojibwe v. Madore*, 128 F.4th 929, 942 (8th Cir. 2025). The Court should thus follow its "normal practice" and vacate the district court's decision and remand with directions for the district court to dismiss the case as moot.

## II. The district court lacks jurisdiction over Hoque's habeas petition.

### A. 8 U.S.C. §1252(g) barred the district court's review of DHS's decisions to commence removal proceedings.

The INA—8 U.S.C. §1252(g)—precludes district courts from "hear[ing] any cause or claim" by an alien "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders" against the alien. The Executive's decision to detain Hoque is part-and-parcel of its decision to commence removal proceedings and inextricably intertwined with it. Hoque's challenge is thus barred by §1252(g), and he cannot avoid the clear import

of §1252(g) by seeking to bifurcate DHS's decision to commence removal proceedings against him and the decision to detain him. *See* OB.19-21.

**1.** Hoque's argument that §1252(g) is narrowly tethered to only three discrete actions misses the point (AB.21-24). When an alien challenges his detention on the ground that he should not be removed in the first place, it is in substance a challenge to his removal. And when an alien challenges being detained in the process of being removed, that suit is one that "aris[es] from the decision … to commence [removal] proceedings." 8 U.S.C. §1252(g). Indeed, by precluding review under "any … habeas corpus provision," §1252(g) makes clear its goal to preclude challenges to the decision to detain.

In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), aliens raised prolonged-detention claims challenging the Government's authority to detain them during removal proceedings. The Supreme Court concluded that the INA, specifically §1252(b)(9), did not bar the Court from considering the aliens' prolonged-detention claim because the aliens were "not challenging the decision to detain them in the first place" or "challenging any part of the process by which their removability will be determined." *Id.* at 294-95 (citing *AADC*, 525 U.S. at 482-83). In order words, if those challenges were made, they would have fallen within the INA's jurisdictional-stripping provisions. As Justice Thomas explained, (b)(9) covers all claims relating to an alien's challenge to *the fact* of his detention (an action taken in

pursuit of the lawful objective of removal) because *AADC* said that (b)(9) "covers all claims arising from deportation proceedings and the many decisions or actions that may be part of the deportation process." *Id.* at 319 (Thomas, J., concurring in part and concurring in the judgment) (citing *AADC*, 525 U.S. at 482).

**2.** Trying to avoid the clear implication of §1252(g)'s explicit exclusion of habeas challenges, Hoque relies on the Conference Report that accompanied the REAL ID Act for its statement that the law "would not preclude habeas review over challenges to detention that are independent of challenges to removal orders." AB.24-25 (quoting H.R. Rep. 109-72, at 175 (2005)). But such snippets of legislative history cannot overcome clear statutory text. *See Azar v. Allina Health Servs.*, 587 U.S. 566, 581 (2019). In any event, Hoque's argument rests on the false premise that his *initial* detention is "independent of [a] challenge[] to" the commencement of his removal proceedings. H.R. Rep. 109-72, at 175. It is no such thing. But for the decision to commence removal proceedings against Hoque, DHS would not have detained him. The two decisions go together, because "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003) (citing *Wong Wing v. United States*, 163 U.S. 228, 234 (1896) ("We think it clear that detention, or *temporary* confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens would be valid.") (emphasis added)). Indeed, the

chronological facts, the applicable law, and Hoque's own allegations show that DHS "did not detain [Hoque] for any reason independent of its decision to commence removal proceedings. It detained [him precisely] because of those proceeding," and he has not "alleged a reason for his … detention that is not also the reason for the government's decision to commence removal proceedings." *Ozturk v. Hyde*, 155 F.4th 187, 189-90 (2d Cir. 2025) (Menashi, J., concurring in reh'g denial). If Hoque had challenged the validity or length of his detention (or conditions thereof), consistent with the Conference Report, habeas would be the proper avenue. *See Fortner v. Eischen*, 170 F.4th 655, 658 (8th Cir. 2026).

Yet Hoque's challenges are not so; his challenges in the federal district court would eliminate his removal proceedings full stop, which means that this suit falls within the heartland of §1252(g). *See, e.g.*, *Limpin v. United States*, 828 F. App'x 429, 429 (9th Cir. 2020); *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016); *Humphries v. Various Fed. INS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999); *accord Khalil v. President, United States*, 164 F.4th 259, 276 (3d Cir. 2026). By adding the habeas-stripping provisions to multiple provisions within §1252, Congress clearly recognized that detention at times would be a sufficient predicate for aliens to raise certain challenges—such as challenges to the duration or conditions of confinement—but the mere fact of being detained would not escape the

jurisdictional bars. *See Tazu v. Att'y Gen.*, 975 F.3d 292, 298-99 (3d Cir. 2020) (holding that §1252(g) bars detention claim when executing a removal order).

**3.** Shifting gears, Hoque asserts that §1252(g) does not bar challenges to the "very authority" of the Executive's actions, rather than challenges to the "discretionary decision to detain" (AB.27-28). "The statute, however, makes no distinction between discretionary and nondiscretionary decisions." *Silva v. United States*, 866 F.3d 938, 940 (8th Cir. 2017). Rather, it prohibits "*any* cause or claim … arising from the decision *or* action by the Attorney General to commence proceedings." 8 U.S.C. §1252(g) (emphasis added). A claim that the Executive lacks authority to commence removal proceedings (and to detain as part of that commencement) plainly "aris[es] from" the "action" of the Executive to "commence [those] removal proceedings." *Id*. The distinction between discretionary and nondiscretionary decisions is thus artificial: the statute's "plain language … includes no such limitation." *Silva*, 866 F.3d at 941; *see also Camarena v. Director, ICE*, 988 F.3d 1268, 1272 (11th Cir. 2021); *Tazu*, 975 F.3d at 297–98.

**4.** Hoque attempts to distinguish *Silva* on the theory that it "involved a direct challenge to the execution of removal orders, not unlawful detention" (AB.26-27). That misses the point. *Silva* addressed the bounds of §1252(g) and rejected a plaintiff's attempt to artfully plead around the jurisdictional bar: Silva and his supporting *amici* attempted to evade §1252(g) by asserting that Silva's "claims do

not arise from a decision or action to execute a removal order, but rather from a violation of the stay of removal proceedings." 866 F.3d at 940. This Court rejected that characterization and instead held that a "'claim that is connected directly and immediately' to a decision to execute a removal order [like Silva's claims] arises from that decision." *Id.* (citing *Humphries*, 164 F.3d at 943). Here, like there, this Court should reject Hoque's artificially narrow characterization of his claim that DHS arrested and detained him pursuant to a retaliatory government policy in violation of the First and Fifth Amendments and the APA. *See* App. 30-42, R. Doc. 1 at 19-31. Instead, the direct catalyst for DHS's decision to arrest and detain Hoque was its decision to commence removal proceedings. *See* OB.26-28. His claims are thus barred by §1252(g).

### B. 8 U.S.C. §1252(a)(5) and (b)(9) channeled Hoque's claims to the PFR process and thus further barred the district court's review.

The INA—8 U.S.C. §1252(a)(5) and (b)(9)—channels "all questions of law and fact … arising from any action taken or proceeding brought to remove an alien" through a petition for review filed with the appropriate court of appeals. 8 U.S.C. §1252(b)(9). "Taken together, §1252(a)(5) and §1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition for review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphases in original). *See* OB.31-41.

**1.** Hoque asserts that §1252(a)(5) and (b)(9) are inapplicable because they only apply after there is a final order of removal (AB.28-31). Not true. Section 1252(b)(9) channels "[j]udicial review of all questions of law and fact" arising from a removal proceeding to "judicial review of a final order," and §1252(a)(5) mandates that review occur in the court of appeals through the PFR process. Nothing in that language suggests that district courts may nonetheless adjudicate issues "arising from any action taken or proceeding brought to remove an alien" while removal proceedings are ongoing and up until a final order of removal is entered. That rule would make no sense: It would mean a district court could lose jurisdiction midway through a case once the parallel immigration proceedings produced a final order. Such chaos is precisely what Congress intended to prevent by channeling "all questions of law and fact" to the court of appeals. *See Tazu*, 975 F.3d at 296 (emphasizing the additions of §§1252(b)(9) and (g) were meant to "prevent removal proceedings from becoming fragmented, and hence prolonged") (cleaned up).

The Supreme Court rejected that reading of §1252(b)(9) in *Jennings*. *See* OB.40-41 & n.5. There, a controlling plurality of the Justices recognized that §1252(b)(9)'s channeling comes into play *before* a final order is issued and unequivocally bars review of the decision to detain an alien in the first place. Hoque does not seriously dispute that the logic of the *Jennings* plurality is incompatible with his view that (b)(9) only applies after there is a final order of removal, but he

argues that language is mere dicta (AB.30-31). That is false. As the Third Circuit recognized, the plurality opinion in *Jennings* is controlling under *Marks v. United States*, 430 U.S. 188 (1977). *See Khalil*, 164 F.4th at 277-78. Moreover, the Supreme Court's subsequent discussions of §1252(b)(9) confirm that the *Jennings* plurality embodies the Court's holding on the scope of (b)(9). In *Nielsen*, the Supreme Court addressed whether (b)(9) barred claims brought by aliens challenging their mandatory detention under 8 U.S.C. §1226(c). *See* 586 U.S. at 395-96. The same three Justices from the *Jennings* plurality applied the reasoning of that plurality opinion to hold that (b)(9) did not preclude the aliens' challenge, including because they were not "challenging the decision to detain them in the first place or to seek removal." *Id*. at 402 (quoting *Jennings*, 583 U.S. at 402). Justices Thomas and Gorsuch adhered to their view from *Jennings* that (b)(9) bars all such challenges to detention. *Id*. at 423-24 (Thomas, J., concurring in part and concurring in the judgment). By definition, the three-Justice plurality in *Nielsen* is the narrowest opinion finding jurisdiction, so it controls under *Marks*.

**2.** Recognizing the weakness of his position, Hoque pivots to a broader stance, asserting that this Court "has not questioned a district court's jurisdiction to hear constitutional challenges to detention pending removal proceedings" (AB.30, 32). But the question for purposes of the INA's jurisdictional bar is not whether the claim involves a constitutional issue; instead, it is whether the claim is "inextricably

linked to" either a final order of removal or the removal process that precedes any removal order, thereby requiring that claim to be brought through the PFR process, and consequently prohibiting it from being brought in separate actions before a district court. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011).

The claims raised in *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), and *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), are different in kind from that raised by Hoque. *Banyee* involved whether an alien's length of confinement violated the due process clause, 115 F.4th at 930, while *Avila* involved a challenged to the scope of the Government's power to detain aliens under 8 U.S.C. §1225, and specifically, whether the government could detain Avila without bond under §1225(b)(2)(A), 170 F.4th at 1132-37. Such claims do not "arise from" removal proceedings. *See Khalil*, 164 F.4th at 277; *E.O.H.C. v. DHS*, 950 F.3d 177, 186 (3d Cir. 2020). And the other decisions Hoque cites—*Ozturk v. Hyde*, 136 F.4th 382 (2d Cir. 2025), and *Suri v. Trump*, No. 25-1560, 2025 WL 1806692 (4th Cir. July 1, 2025) (unpub.)—merely "denied stays" pending appeals and are not even binding in those circuits.

**3.** Hoque makes a number of other unpersuasive arguments along the same vein: he complains that his free speech and due process rights are being violated now, that subjecting him to retaliatory detention censors and deters his and others' protected speech, and that requiring him to wait until the end of the PFR process would render his First and Fifth Amendment injuries unreviewable and allow the

Government to accomplish the unlawful object of his detention (AB.33). But Hoque's claims are inextricably "intertwined with or embedded in matters on which" the immigration officials are expert; he should thus pursue his challenges through the scheme Congress created. *See Axon Enterprise Inc. v. FTC*, 598 U.S. 175, 195 (2023). Despite Hoque's insistence on keeping his claims outside the administrative system (AB.34-35), the availability of review of constitutional questions in the court of appeals is all that is needed to require an alien to follow the administrative process. *See Adorers of the Blood of Christ v. FERC*, 897 F.3d 187, 195-96 (3d Cir. 2018) ("Finally, although the constitutional claims may be outside of FERC's expertise, this is tempered by the court of appeals' review, which regularly resolves constitutional issues.") (citation omitted). Indeed, by arguing that relief would come later, Hoque concedes that some review would in fact be available to him. That relief may come later than desired does not make it a "now-or-never claim" (AB.32-34).

**4.** Turning to "now-or-never claims," Hoque spills much ink attempting to distinguish the Third Circuit's decision in *Khalil* (AB.34-39), arguing first that Khalil "directly challenged *both* his detention and his removal in his habeas case," whereas he did not. But Hoque's artful pleading cannot mask that his retaliation claims under the Constitution and the APA challenge the legality of DHS's decision to detain him *for purpose of his removal proceedings*, thus meaning that any legal

question regarding that challenged detention decision arose from the Government's efforts to remove him based on the revocation of his student visa. *See* 8 U.S.C. §1252(b)(9). Hoque also insists that *Khalil* departed from Third Circuit precedent and misinterpreted the *Jennings* plurality (AB.36-39), but the Third Circuit has denied Khalil's petition for rehearing en banc and accordingly rejected these same arguments. *See Khalil v. President, United States*, 176 F.4th 295 (3d Cir. 2026) (denying sur petition for rehearing); *see also id.*, ECF 138 (Pet. for Rehearing En Banc (filed Mar. 31, 2026)), 153 (Govt's Opp. to Pet. for Rehearing En banc (filed May 4, 2026)). This Court should do so as well.

**5.** As a last-ditch effort, Hoque argues that the Government's interpretation of §1252(b)(9) and (g) does not provide an adequate alternative to habeas and thus violates the Suspension Clause (AB.39-41). This Court has held that the REAL ID Act of 2005 is an adequate substitute to habeas. In *Mohamed v. Gonzales*, 477 F.3d 522, 526 (8th Cir. 2007), this Court recognized that 8 U.S.C. §1252(a)(2)(D) vests in the Court the power to "review all constitutional claims and questions of law in the removal order" and that Congress, through the REAL ID Act, has "created a remedy as broad in scope as a habeas petition." Consequently, the Court found that the REAL ID Act "is an adequate and effective substitute to test the legality of a person's detention." *Id.* (citing *INS v. St. Cyr*, 533 U.S. 289, 314 n.38 (2001) ("As to the question of timing and congruent means of review, we note that Congress

could, without raising any constitutional questions, provide an adequate substitute [to replace habeas proceedings for aliens resisting a removal order] through the courts of appeals."); *see Skurtu v. Mukasey*, 552 F.3d 651, 659 (8th Cir. 2008) (following *Mohamed*). Other circuits agree. *See, e.g.*, *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 114 (2d Cir. 2008); *Singh v. Mukasey*, 533 F.3d 1103, 1106-08 (9th Cir. 2008); *Kolkevich v. Att'y Gen.*, 501 F.3d 323 (3d Cir. 2007); *Alexandre v. U.S. Att'y Gen.*, 452 F.3d 1204, 1206 (11th Cir. 2006).

This Court's decisions, and these circuit precedents, categorically foreclose Hoque's argument that §1252(b)(9) and (g) "do[] not provide a meaningful way to challenge an unconstitutional detention" (AB.41). It makes no difference whether Hoque is challenging his detention, as well as his removal (AB.40). In *Mohamed*, this Court found that Mohamed's proffer of his commitment order on appeal, and his failure to make a motion to introduce the new evidence to the BIA, or otherwise introduce the commitment order until the appeal, "[did] not make the remedy inadequate or ineffective as a matter of law." 477 F.3d at 526 (citing *Puri v. Gonzales*, 464 F.3d 1038, 1041-42 (9th Cir. 2006) (Act upheld against Suspension Clause challenge where petitioner offered new evidence in reconsideration motion), and *Enwonwu v. Gonzales,* 438 F.3d 22, 32-33 (1st Cir. 2006) (petitioner's motion to reopen rejected as untimely, but presented only questions of law and not of fact;

in dicta court stated that "the Act encompasses at least the same review and the same relief as to Enwonwu as were available under prior habeas law.")).

Nor can Hoque escape this Court's precedent foreclosing his Suspension Clause argument because he raises a First Amendment claim (AB.41-42). Notably, Justice Ginsburg's concurrence from *AADC*, on which Hoque relies, concluded that the PFR process *was* "sufficient" even for review of First Amendment challenges to removal proceedings. *AADC*, 525 U.S. at 494-95 (Ginsburg, J., concurring in part and concurring in the judgment). Subsections 1252(a)(5) and (b)(9) thus channeled Hoque's claims to the PFR process and further barred the district court's review.

### C. 8 U.S.C. §1201(i) deprived the district court of jurisdiction to review the State Department's discretionary decision to revoke Hoque's student visa.

Although Hoque is not challenging his visa revocation (AB.19-20), §1201(i) nonetheless bolsters the Government's argument that the only avenue for judicial review of Hoque's detention- and removal-related challenges (and any visa revocation) is channeled through the PFR process. *See* OB.42-43.

### D. 8 U.S.C. §1226(e) deprived the district court of jurisdiction to review DHS's discretionary decision to detain Hoque.

Contrary to Hoque's claim (AB.20-21), he is challenging his initial detention, regardless of how he styles it in constitutional garb; thus, this suit falls within the ambit of §1226(e) barring district court review of DHS's discretionary decision to detain him. *See* OB.43-44. Section 1226(e) provides that the Secretary of Homeland

Security's "discretionary judgment" regarding, among other things, the decision to arrest and detain an alien pending a decision on removal, "shall not be subject to review." 8 U.S.C. §1226(e). The Supreme Court has construed §1226(e), however, to permit constitutional challenges to statutes authorizing the detention of aliens. *See Demore*, 538 U.S. at 517 ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail."). That is, the Court found that the aliens' constitutional challenge to the statutory scheme was not an attack on a discretionary judgment or on a decision made by the Secretary regarding detention, and that §1226(e) did not bar habeas review. *See id.* at 516-17. But here, unlike there, the *Demore* "clear text" exception does not apply because Hoque is challenging the Secretary's discretionary decision to detain and initiate removal proceedings against him and that that decision was motivated by unconstitutional reasons. In no shape or form has Hoque raised a claim that DHS does not have the statutory authority to detain him. Because this is so, neither the district court nor Hoque were permitted to circumvent this jurisdictional bar by cloaking his objection in constitutional and legal garb. *See Khalil*, 164 F.4th at 277; *Meraz-Reyes v. Gonzales*, 436 F.3d 842, 843 (8th Cir. 2006) (explaining that the "petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an [unreviewable] argument in [reviewable] garb.").

In sum, multiple INA provisions stripped the district court of jurisdiction over Hoque's claims, and this Court should vacate the district court's decision and remand with instruction to dismiss this habeas petition for lack of jurisdiction.

## III. In the alternative, the district court erred in granting Hoque's habeas petition on the merits of his claims.

Even assuming that the district court had jurisdiction, it erred in finding that the Government violated the First Amendment, Fifth Amendment, and the APA, in deciding to detain Hoque for his removal proceedings. *See* OB.45-49.

**A.** Hoque attempts to distinguish *AADC* by labeling the case a selective-enforcement case, and not a First Amendment retaliation case (AB.45-46). That is a distinction without a difference. In *AADC*, the aliens sued the Government for "allegedly targeting them for deportation because of their affiliation with a politically unpopular group," 525 U.S. at 472, and thus were "selectively enforcing immigration laws against them in violation of their First and Fifth Amendment rights," *id.* at 474. In other words, the aliens there alleged that the Government initiated deportation proceedings as retaliation for their First Amendment activity. *See id.* at 472. Here, like there, Hoque is asserting that the Government is targeting him—that is, retaliating against him through selective enforcement of the immigration laws—for supporting Palestinian human rights in violation of his First and Fifth Amendment rights (AB.2, 43-44; App. 32, 37-40; R. Doc. 1 at 21, 26-29). Although Hoque attempts to frame his claims as only challenging his detention, this

argument ignores that Hoque's ultimate goal in raising his Constitutional and APA claims is to halt his removal proceedings full stop (*see* AB.45).

Hoque also invokes the never-yet-applied "outrageous conduct" exception alluded to in *AADC* (AB.46). But he never alleged this theory in his habeas petition, the district court did not address it, and he cannot present a new theory for the first time on appeal. *See Bethea v. Levi Strauss & Co.*, 916 F.2d 453, 455 (8th Cir. 1990) ("A federal appellate court's scope of review is limited to issues raised both below and on appeal.") (citations omitted). Even if he could, there is a high bar for outrageous conduct, and *AADC* makes clear that standard is not met even when the Government *concedes* it is targeting an alien based on First Amendment-protected activity. *AADC*, 525 U.S. at 475, 488 n.10, 491-92.

**B.** Despite Hoque's insistence (AB.47-48), and the district court's accepting his characterization (*see* App. 835-43; R. Doc. 31-39), his Fifth Amendment claim is a mere repackaging of his First Amendment claim: the crux of both claims is the Government's commencement of removal proceedings (including the decision to detain) based on Hoque's speech-related activities. *See* OB.47. Both claims fail for the same reason.

Hoque asserts that his detention is unrelated and excessive to any legitimate government interest (AB.47-50), but he ignores that the Government has a legitimate interest in enforcing its immigration laws, and detention during removal proceedings

is part-and-parcel of that interest. *See, e.g.*, *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *Nken v. Holder*, 556 U.S. 418, 435 (2009). Indeed, there is always a public interest in the prompt execution of removal orders: the continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings established and "permit[s] and prolong[s] a continuing violation of United States law." *AADC*, 525 U.S. at 490; *see Stone v. INS*, 514 U.S. 386, 399 (1995) (recognizing Congress's objective "to abbreviate the process of judicial review … in order to frustrate certain practices … whereby persons subject to deportation were forestalling departure by dilatory tactics in the courts" (quoting *Foti v. INS*, 375 U.S. 217, 224 (1963))).

In *Banyee*, this Court unequivocally held that "[d]ue process imposes no time limit on detention pending deportation" proceedings. 115 F.4th at 930. "What matters is that detention pending deportation has a definite termination point—deporting or releasing the alien—making it materially different from the potentially permanent confinement authorized by other statutes." *Id.* at 932 (cleaned up); *see also Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (noting that a detained alien "has the keys in his pocket" and can "end[] his detention immediately" by "withdraw[ing] his defense ... and return[ing] to his native land"). "The *why*, in other words, is more important than *how long*." *Banyee*, 115 F.4th at 932 (citation omitted) (alteration in original). Here, the *why* for Hoque's detention is DHS's

decision to initiate removal proceedings. Indeed, all of the decisions by the Executive Branch—from DHS's discretionary decision to commence removal proceedings based on the State Department's discretionary revocation of Hoque's student visa to DHS's decision to arrest and detain him—occurred within only five days of each other. *See* OB.26-27.

**C.** Finally, Hoque's APA claim fails because it is unrelated to the cause of his detention. *See* OB.48-29; *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention.") (citation omitted). Detainees may seek habeas relief based on challenges to "the validity of the fact or length of their confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973). "[T]he purpose of [the writ of habeas corpus] is not to redress civil injury, but to release the applicant from unlawful physical confinement." *Allen v. McCurry*, 449 U.S. 90, 104 (1980). But the termination of Hoque's SEVIS record was not the legal or factual cause for his detention; instead, his detention was caused by the State Department's discretionary decision to revoke his student visa and DHS's decision to commence removal proceedings based on that revocation. *See* App. 353-54, R. Doc. 20 at 2-3; App. 358, R. Doc. 20-1 at 2; App. 372, R. Doc. 20-3; App. 374-79, R. docs. 20-4, 20-5, 20-6.

Hoque does not dispute this fact but instead asserts that both his SEVIS-termination challenge and his detention challenge arise from the Government's

decision to unlawfully retaliate against him for protected speech (AB.51). But that is beside the point. That Hoque's SEVIS-termination and detention claims both allegedly arise from the Government's decision to retaliate against him does not mean that his SEVIS-termination claim arises from his detention. Indeed, Hoque fails to raise any argument that his SEVIS-termination arose from his detention (AB.50-52). Accordingly, the district court had no authority under habeas to adjudicate the lawfulness of the SEVIS termination. *Cf. DHS v. Thuraissigiam*, 591 U.S. 103, 119 (2020) (reversing a habeas grant where the alien did "not want simply release but, ultimately, the opportunity to remain lawfully in the United States" and recognizing that such relief fell "outside the scope of the writ as it was understood when the Constitution was adopted").

In any event, all of Hoque's claims are intertwined with his detention (and removal proceedings), and they must be brought through habeas, not through the APA. *See Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) ("Regardless of whether the detainees formally request release from confinement, because their claims for relief 'necessarily imply the invalidity' of their confinement and removal under the [Alien Enemies Act], their claims fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas.") (citations omitted). The district court's alternative APA basis for granting habeas relief was thus erroneous. *See, e.g.*, *Rivera Hernandez v. Noem*, No. 25-326, 2025 WL 3754434, *4 (E.D. Tex. Dec. 19, 2025).

## CONCLUSION

For the foregoing reasons and the reasons provided in the Government's opening brief, the Court should vacate the district court's decision and remand with instruction to dismiss the habeas petition. Alternatively, the Court should vacate the decision on the merits.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

BENJAMIN HAYES
Senior Counsel to the Assistant
Attorney General

ERNESTO H. MOLINA
Deputy Director
Office of Immigration Litigation

*/s/ Alanna T. Duong*
ALANNA T. DUONG
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-7040
alanna.duong@usdoj.gov

June 24, 2026

Attorneys for Appellants

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Eighth Circuit Rule 28A, I hereby certify that the foregoing is proportionally spaced using Times New Roman typeface, has a typeface of 14 points, and contains 6468 words.

*/s/ Alanna T. Duong*
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice

June 24, 2026

## CERTIFICATE OF SERVICE

I certify that on June 24, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eight Circuit using the CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished through that system.

*/s/ Alanna T. Duong*
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice